LINDA D. FRIEDMAN (pro hac vice to be requested)
DANIEL LEWIN (pro hac vice to be requested)
JARED A. CALVERT (pro hac vice to be requested)
STOWELL & FRIEDMAN LTD.
303 W. Madison St., Suite 2600
Chicago, Illinois 60606
(312) 431-0888
Lfriedman@sfltd.com

Sam Sani (SBN 273993)
SANI LAW, APC
15720 Ventura Blvd., Suite 405
Encino, CA 91436
Telephone:      (310) 935-0405
Facsimile:      (310) 935-0409
ssani@sanilawfirm.com

Attorneys for Plaintiff
CHRISTOPHER WILLIAMS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| CHRISTOPHER WILLIAMS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A. and WELLS FARGO & CO.,<br><br>Defendants. | CASE NO:<br><br>**COMPLAINT**<br><br>Class Action<br><br>Jury Trial Demanded |

## COMPLAINT
### CLASS ACTION

Plaintiff Christopher Williams ("Williams"), on behalf of himself and all others similarly situated, by and through his attorneys, hereby files this Complaint against Defendants Wells Fargo Bank, N.A. and Wells Fargo & Co. (collectively "Wells Fargo" or the "Firm"), and states as follows:

COMPLAINT

462878

## JURISDICTION, VENUE, AND DIVISIONAL ASSIGNMENT

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343. In addition, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000, Plaintiff is a citizen of Georgia, and neither Defendant is a citizen of Georgia. Defendant Wells Fargo & Co. is incorporated in Delaware and its principal place of business is in San Francisco, California, as set forth further below. Defendant Wells Fargo Bank, N.A. is a national banking association chartered in South Dakota and with its principal place of business in San Francisco, California.

2.      Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b) because both Defendants reside in this District and a substantial part of the events or omissions giving rise to the claim occurred in this district, as the discriminatory policies emanated and were executed from Wells Fargo's headquarters in this District.  Venue is proper in the San Francisco Division of the Northern District of California because a substantial part of the events or omissions giving rise to the claims occurred in the county of San Francisco.

## PARTIES

3.      Defendant Wells Fargo & Co., is a publicly-traded, global financial services firm and Fortune 500 corporation incorporated in Delaware and has its principal place of business in San Francisco, California. As of December 31, 2020, Wells Fargo has assets of approximately $1.9 trillion, loans of $887.6 billion, deposits of $1.4 trillion and stockholders' equity of $185 billion.[1] Wells Fargo provides a wide variety of financial products and services to its global and domestic clients, who include corporations, governments, financial institutions and individuals, including

---

[1] https://www.wellsfargo.com/assets/pdf/about/investor-relations/sec-filings/2020/10k.pdf

home mortgages. Wells Fargo claims to serve at least one out of three households in the United States.[2]

4.      Defendant Wells Fargo Bank, N.A. is a national banking association chartered in South Dakota with its principal place of business in San Francisco, California, and a subsidiary of Wells Fargo & Co.

5.      Plaintiff Christopher Williams is African American and a citizen of Georgia.  As described below, Williams applied for a home mortgage with Wells Fargo and was discriminated against on the basis of his race in the mortgage lending process by Wells Fargo.

## FACTUAL ALLEGATIONS

6.      As stated above, Wells Fargo is one of the largest banks in the country and one of the top residential mortgage providers in the United States. Across the country, Wells Fargo applies mortgage origination and underwriting policies and practices that intentionally and disproportionately discriminate against and harm African American home loan applicants. Williams was one of the many victims of Wells Fargo's racially discriminatory residential mortgage policies and practices.

7.      Wells Fargo has a long history of discriminating against African Americans and maintains a corporate culture replete with harmful racial stereotypes and biased views about African American customers. While Wells Fargo has long advertised its willingness to symbolically support racial equality in banking, such as making investments to black owned

---

[2] https://newsroom.wf.com/English/news-releases/news-release-details/2021/Wells-Fargo-launches-Banking-Inclusion-Initiative-to-accelerate-unbanked-households-access-to-affordable-transactional-accounts/default.aspx#:~:text=Wells%20Fargo%20%26%20Company%20(NYSE%3A,of%20banking%2C%20investment%20and%20mortgage

banks,[3] it has not and will not meaningfully redress its systematic discrimination against its Black and African American customers, borrowers, and mortgage applicants.

8.     Wells Fargo's racial bias is illustrated by racial redlining and other discriminatory practices against customers of color, as illustrated in a number of recent lawsuits and settlements. For example, in 2011, a jury found Wells Fargo guilty of systematically discriminating against minority home buyers by using a computer software for minority homeowners which resulted in them paying more for their home loans than white borrowers. *Opal Jones, et. al v. Wells Fargo Bank, N.A., et al.*, Case No. BC337821 (Los Angeles Superior Court) ($3.5 million verdict). Wells Fargo has also paid hundreds of millions of dollars to avoid litigating its discriminatory home lending practices.  Indeed, Wells Fargo agreed to a settlement valued at over $440 million of a lawsuit challenging the Firm's redlining practices that resulted in a disproportionate number of foreclosures in African American neighborhoods in Shelby County and the City of Memphis. *City of Memphis and Shelby County, et al. v. Wells Fargo Bank, N.A., et al.*, Case No. 2:09-CV-02857 (W.D. Tenn.).   Wells Fargo also settled a lawsuit for $37 million led by the National Fair Housing Alliance alleging that Wells Fargo took better care of foreclosed properties that it owned in white neighborhoods than those in African American and Latino communities. *National Fair Housing Alliance, et al. v. Wells Fargo Bank N.A., et al*, HUD Case No. 09-12-0708-8 (U.S. Department of Housing & Urban Development Office of Fair Housing & Equal Opportunity). Wells Fargo has also faced and settled numerous lawsuits challenging its "reverse redlining" practices of charging higher rates and imposing less favorable terms for minority home borrowers than for white home borrowers. For instance, in 2013, Wells Fargo paid $175 million to settle a lawsuit brought by the United States Department of Justice alleging that the Firm charged higher rates to its African

---

[3] https://www.foxbusiness.com/markets/wells-fargo-announces-investments-in-six-black-owned-banks

American and Latino borrowers. *United States v. Wells Fargo Bank, NA*, Case No. 1:12-cv-01150 (D.D.C.).

9.      In 2019, Wells Fargo paid $10 million to settle a similar claim brought by the City of Philadelphia. *City of Philadelphia v. Wells Fargo & Co., et al.*, No. 2:17-cv-02203-AB (E.D. Pa. 2019). Philadelphia alleged that Wells Fargo simply swapped the evil of redlining—refusing to lend to minority communities—for the similarly pernicious reverse redlining—lending to minority borrowers, but only saddling them with more expensive loans with worse terms than those extended to white borrowers. *City of Philadelphia v. Wells Fargo & Co., et al.*, No. 2:17-cv-02203-AB (E.D. Pa. 2019), Dkt. 1 (Complaint) ¶¶ 5–21. Philadelphia alleged that "since at least 2004 . . . Wells Fargo has systematically engaged in a continuous and unbroken discriminatory pattern and practice of issuing higher cost or more onerous mortgage loans to minority borrowers in Philadelphia when more favorable and less expensive loans were being offered to similarly situated non-minority borrowers." *Id.* ¶ 5 (E.D. Pa.). Philadelphia's statistical analysis revealed that African American borrowers were more than twice as likely to "receive a high-cost or high-risk loan" than a white borrower even when controlling for credit score. *Id.* ¶ 14. Indeed, the discrimination worsened as the credit score increased—especially creditworthy "African-Americans with FICO scores over 660 were 2.570 times more likely to receive a high-cost or high-risk loan from Wells Fargo as a white borrower." *Id.* The predictable result of Wells Fargo's foisting high-cost, high-risk loans on African Americans was an explosion of foreclosures in minority communities, where loans were "4.710 times more likely to result in foreclosure than is a loan in a predominantly white neighborhood." *Id.* ¶ 12. This precipitated what "many leading commentators describe[d] as the 'greatest loss of wealth for people of color in modern US history.'" *Id.* ¶ 18.

10.      Wells Fargo discriminates against its African American employees just as readily as it does its customers. In 2016, Wells Fargo was charged with systemic discrimination against

minority Financial Advisors including by African American Financial Advisors in the class action lawsuit *Slaughter v. Wells Fargo Advisors*, 14-cv-06368 (N.D Ill. 2014). Wells Fargo eventually settled the *Slaughter* litigation for over $35 million. *Slaughter v. Wells Fargo Advisors*, 14-cv-06368 (N.D Ill. 2014), Dkt. 99-1 (Settlement Agreement), 29

11.     Rather than earnestly trying to address and remedy the problems raised by these numerous lawsuits, Wells Fargo has worked to circumvent and diminish fair housing and credit laws, including delaying and appealing multiple fair housing lending lawsuits brought by municipalities across the Country so that it could continue to discriminate against black borrowers.[4] Wells Fargo's discrimination in lending against African Americans has therefore continued unbated.

12.     Specifically, in determining home loans, interest rates, points, etc., Wells Fargo intentionally uses factors to determine eligibility for home loan rates, terms, and conditions that facilitate redlining and reverse redlining against and disfavor African American borrowers. Specifically, Wells Fargo's uniform, nationwide policies and practices related to mortgage approvals, interest rate determinations, fees, and costs that intentionally discriminate against African Americans and have a disparate impact on African Americans. These policies and practices include but are not limited to:

(a)     placing black borrowers in predatory and higher costs loans even though they qualify for prime loans on better terms;

(b)     failing to underwrite loans based on traditional underwriting criteria such as debt-to-income ratio, loan-to-value ratio, FICO score, and work history and instead utilizing factors that intentionally discriminate and/or have a disparate impact on black borrowers;

(c)     subjective surcharges on minority borrowers of additional points, fees, and other credit and servicing costs over and above an otherwise objective risk-based financing rate for such loan products;

---

[4] *See* generally, *Oakland v. Wells Fargo,* 15-cv-04321 (N.D. Cal.); *Sacramento v. Wells Fargo*, 18-cv-00416 (E.D. Cal.); *Miami v. Wells Fargo*, 13-cv-24508, (S.D. Fla.).

462878

1         (d)      charging excessive points and fees that are not associated with any increased
benefits to black borrowers;

2

3         (e)      failing to adequately monitor the Bank's policies and practices regarding
mortgage loans, including but not limited to originations, marketing, sales, and risk management;

4         (f)      Reverse redlining;

5         (g)      and Redlining;

6        13.     The racially discriminatory policies and practices at Wells Fargo are uniform and

7  national in scope and create an artificial, arbitrary, and unnecessary barrier to fair housing

8  opportunities for Black or African American borrowers. Class members are relying on Plaintiff to

9  protect their rights applied for loans at Wells Fargo offices across the country and were harmed by

10  these same policies and practices.  Wells Fargo's policies are practices are implemented with

11  discrimination intent and/or disproportionately impact Black of African Americans borrowers.

12

13  **PLAINTIFF WAS INJURED BY DEFENDANT'S**
**DISCRIMINATORY POLICIES AND PRACTICES**

14

15        14.     Williams is African American. Williams was a well-qualified African American

16  home borrower. When he applied for his mortgage, Williams maintained a FICO score of over 750.

17  Based on this, Williams believed he should have qualified for Wells Fargo's prime interest rate,

18  which would have saved him substantial money over time on his home mortgage. However,

19  consistent with Wells Fargo's pattern of discrimination against African American borrowers, Wells

20  Fargo offered Williams an interest rate nearly three points higher than the prime interest rate offered

21  by Wells Fargo, which is disproportionately and discriminatorily offered to white applicants.

22

23        15.     Believing it to be a mistake, Williams spoke to Wells Fargo's home lending

24  department to have his credit report rechecked and for his interest rate to be lowered. Instead, the

25  Firm refused to reconsider his credit score or his interest rate.

26        16.     Williams agreed to revisit its refusal to extend the loan to Williams on favorable

27  terms.  However, in a letter dated September 5, 2019, Wells Fargo finally articulated for the first

28

462878

time, that it did not use solely FICO credit scores to determine home interest rates, but instead used "a unique scoring model, which considers more than credit scores to evaluate applications."

17.     Indeed, the "other" factors used by Wells Fargo to determine interest rates for home loans serve to intentionally exclude Black or African American borrowers from affordable and lower-risk loans, force African American borrowers to pay higher interest rates and other fees that similarly situated white borrowers, and have a disparate impact based on race.  Williams applied for and received a home loan from another bank at its prime interest rate.

18.     Williams did identify his race to Wells Fargo during the application process.

## CLASS ALLEGATIONS

19.     Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and a class of African Americans who applied for credit related to residential real estate and who were subjected to discrimination by Defendants due to their race. Plaintiff seeks certification of a liability and injunctive and declaratory relief class under Rule 23(b)(2) and 23(c)(4), and/or certification of a broader class under Rule 23(b)(3).  All requirements of class certification are met by the proposed class.

20.     The class of African Americans who applied for credit related to residential real estate is so numerous that joinder of all members is impracticable. Fed. R.Civ.P. 23(a)(1).

21.     There are questions of law and fact common to the class, and those questions can and should be resolved in a single proceeding that furthers this litigation. Fed. R.Civ.P. 23(a)(2).

22.     The claims alleged by Plaintiff are typical of the claims of the class. Fed. R.Civ.P. 23(a)(3).

23.     Plaintiff will fairly and adequately represent and protect the interests of the class. Fed. R.Civ.P. 23(a)(4).

462878

24.     The issue of determining liability regarding whether Defendant's policies and practices result in a pattern or practice of intentional discrimination and/or have a disparate impact on African Americans is appropriate for issue certification under Rule 23(c)(4).  Other common issues are also appropriate for certification.

25.     Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate with regard to the class as a whole.  Fed. R.Civ.P. 23(b)(2).

26.     The questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R.Civ.P. 23(b)(3).

<u>**COUNT I**</u>

**EQUAL CREDIT OPPORTUNITY ACT**

27.     Plaintiff, on behalf of himself and all those similarly situated, realleges each and every paragraph above and incorporates them by reference as though fully stated herein.

28.     The Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.*, makes it unlawful for a creditor to discriminate against any applicant with respect to any aspect of a credit transaction on the basis of race.

29.     As described above, Defendants are creditors because they regularly extend, renew, and continue credit, and Plaintiff was an applicant for credit.

30.     Defendants maintained a nationwide set of uniform, discriminatory mortgage loan origination and underwriting practices and engaged in a pattern or practice of systemic race discrimination against African American mortgage loan applicants that constitutes illegal intentional race discrimination in violation of the Equal Credit Opportunity Act.

462878

31.     Plaintiff and all those similarly situated were subjected to and harmed by Defendant's systemic and individual discrimination.

32.     Defendants' unlawful conduct resulted in considerable harm to Plaintiff and all those similarly situated.

33.     On behalf of himself and the class he seeks to present, Plaintiff requests the relief set forth below.

<u>COUNT II</u>

**RACE DISCRIMINATION IN VIOLATION**
**OF 42 U.S.C. § 1981**

34.     Plaintiff realleges each and every paragraph above and incorporates them by reference as though fully stated herein.

35.     Under 42 U.S.C. § 1981, persons of all races are guaranteed the same right to make and enforce contracts, regardless of race.  The term "make and enforce" contracts includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

36.     Defendants maintained a nationwide set of uniform, discriminatory mortgage loan origination and underwriting practices and engaged in a pattern or practice of systemic race discrimination against African American mortgage loan applicants that constitutes illegal intentional race discrimination in the making and modification of contracts in violation of 42 U.S.C. § 1981.

37.     Plaintiff and all those similarly situated were subjected to and harmed by Defendants' systemic and individual discrimination.

38.     On behalf of himself and the class he seeks to present, Plaintiff requests the relief set forth below.

<u>COUNT III</u>

COMPLAINT
- 10 -

462878

**RACE DISCRIMINATION IN VIOLATION**
**OF 42 U.S.C. § 1982**

39.     Plaintiff realleges each and every paragraph above and incorporates them by reference as though fully stated herein.

40.     Under 42 U.S.C. § 1982, all citizens are guaranteed the same right to inherit, purchase, lease, sell, hold, and convey real and personal property, regardless of race.

41.     As set forth above, Defendants maintained a nationwide set of uniform, discriminatory mortgage loan origination and underwriting practices and engaged in a pattern or practice of systemic race discrimination against African American mortgage loan applicants that constitutes illegal intentional race discrimination and disparately impacts African Americans in violation of 42 U.S.C. § 1982.

42.     Plaintiff and all those similarly situated were subjected to and harmed by Defendants' systemic and individual discrimination.

43.     On behalf of himself and the class he seeks to present, Plaintiff requests the relief set forth below.

**COUNT IV**

**RACE DISCRIMINATION IN VIOLATION OF**
**THE FAIR HOUSING ACT OF 1968, 42 U.S.C § 3601 *et seq*.**

44.     Plaintiff realleges each and every paragraph above and incorporates them by reference as though fully stated herein.

45.     The Fair Housing Act, 42 U.S.C. § 3605(a), prohibits any entity whose business includes engaging in residential real estate-related transactions from discriminating against any person in making available such a transaction on the basis of race.

46.     Defendants' business includes engaging in residential real estate-related transactions.

462878

47.     As set forth above, Defendants maintained a nationwide set of uniform, discriminatory mortgage loan origination and underwriting practices and engaged in a pattern or practice of systemic race discrimination against African American mortgage loan applicants that constitutes illegal intentional race discrimination and disparately impacts African Americans in violation of the Fair Housing Act of 1968.

48.     Plaintiff and all those similarly situated were subjected to and harmed by Defendants' systemic and individual discrimination.

49.     On behalf of himself and the class he seeks to present, Plaintiff requests the relief set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court find against Defendants as follows:

a.     Certify this case as a class action;

b.     Designate Plaintiff as a Class Representative and designate Plaintiff's counsel of record as Class Counsel;

c.     Declare that Defendants' acts, conduct, policies and practices are unlawful and violate the Equal Credit Opportunity Act, 42 U.S.C. §§ 1981 and 1982, and the Fair Housing Act;

d.     Declare that Wells Fargo engaged in a pattern and practice of racial discrimination against African Americans;

e.     Order Plaintiff and all others similarly situated offered mortgage loans at non-discriminatory rates, and otherwise make Plaintiff whole;

f.     Award Plaintiff and all others similarly situated compensatory and punitive damages;

462878

i.      Award Plaintiff and all others similarly situated prejudgment interest and attorneys fees, costs and disbursements, as provided by law;

j.      Award Plaintiff and all others similarly situated such other make whole equitable, injunctive and legal relief as this Court deems just and proper to end the discrimination and fairly compensate Plaintiff and all others similarly situated.

k.      Award Plaintiff and all others similarly situated such other relief as this Court deems just and proper.

Respectfully submitted,

STOWELL & FRIEDMAN, LTD.

By:_____
        Linda D. Friedman (pro hac vice to be requested)
        Daniel Lewin (pro hac vice to be requested)
        Jared Calvert (pro hac vice to be requested)
        **STOWELL & FRIEDMAN LTD.**
        303 W. Madison St., Suite 2600
        Chicago, Illinois 60606
        Phone: (312) 431-0888
        Lfriedman@sfltd.com


SANI LAW, APC

By: */s/ Sam Sani*
        Sam Sani
        **SANI LAW, APC**
        15720 Ventura Blvd., Suite 405
        Encino, CA 94612
        Tel: (310) 935-0405
        ssani@sanilawfirm.com

        Attorneys for Plaintiff

COMPLAINT
- 13 -

462878

1

## DEMAND FOR A JURY TRIAL

2

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of

3

Civil Procedure and Civil Local Rule 3-6.

4

STOWELL & FRIEDMAN, LTD.

5

6
By: _____
Linda D. Friedman (pro hac vice to be requested)

7
Daniel Lewin (pro hac vice to be requested)
Jared Calvert (pro hac vice to be requested)

8
**STOWELL & FRIEDMAN LTD.**
303 W. Madison St., Suite 2600

9
Chicago, Illinois 60606
Phone: (312) 431-0888

10
Lfriedman@sfltd.com

11

12
SANI LAW, APC

13
By: */s/ Sam Sani*_____
Sam Sani

14
**SANI LAW, APC**
15720 Ventura Blvd., Suite 405

15
Encino, CA 94612
Tel: (310) 935-0405

16
ssani@sanilawfirm.com

17
Attorneys for Plaintiff

18

19

20

21

22

23

24

25

26

27

28

462878