BENJAMIN L. CRUMP (Pro hac vice to be requested)
BEN CRUMP, PLLC
633 Pennsylvania Avenue Northwest
Floor 2
Washington D.C. 20004
(800) 713-1222
court@bencrump.com

LINDA D. FRIEDMAN (Appearing pro hac vice)
SUZANNE E. BISH (Pro hac vice to be requested)
STOWELL & FRIEDMAN LTD.
303 W. Madison St.
Suite 2600
Chicago, Illinois 60606
(312) 431-0888
Lfriedman@sfltd.com

SAM SANI (SBN 2733993) (Local Counsel)
SANI LAW, APC
15720 Ventura Blvd.
Suite 405
Encino, CA 91436
Telephone:     (310) 935-0405
Facsimile:     (310) 935-0409
ssani@sanilawfirm.com

Attorneys for Plaintiffs
CHRISTOPHER WILLIAMS, SAM ALBURY, AND SHAIA BECKWITH SIMMONS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| CHRISTOPHER WILLIAMS, SAM ALBURY, and SHAIA BECKWITH SIMMONS, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> WELLS FARGO BANK, N.A. and WELLS FARGO & CO., <br><br> Defendant. | CASE NO: 3:22-cv-00990-JD <br><br> **AMENDED COMPLAINT** <br><br> Class Action <br><br> Jury Trial Demanded <br><br> Hon. James Donato |

AMENDED
COMPLAINT

464456

# AMENDED COMPLAINT
## CLASS ACTION

Plaintiffs Christopher Williams ("Williams"), Sam Albury ("Albury"), and Shaia Beckwith Simmons ("Simmons"), on behalf of themselves and all others similarly situated, by and through their attorneys, hereby file this Amended Complaint against Defendants Wells Fargo Bank, N.A. and Wells Fargo & Co. (collectively "Wells Fargo" or the "Firm"), and state as follows:

## JURISDICTION, VENUE, AND DIVISIONAL ASSIGNMENT

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343. In addition, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(d), as the amount in controversy exceeds $5,000,000, and at least one member of the class is a citizen of a different state than any defendant. Plaintiff Williams is a citizen of Georgia, Plaintiff Albury is a citizen of Nevada, Plaintiff Simmons is a citizen of Florida, and neither Defendant is a citizen of Georgia, Nevada, or Florida. Defendant Wells Fargo & Co. is incorporated in Delaware and its principal place of business is in San Francisco, California, as set forth further below. Defendant Wells Fargo Bank, N.A. is a national banking association chartered in South Dakota and with its principal place of business in San Francisco, California.

2. Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b) because both Defendants reside in this District and a substantial part of the events or omissions giving rise to the claim occurred in this District, as the discriminatory policies emanated and were executed from Wells Fargo's headquarters in this District. Venue is proper in the San Francisco Division of the Northern District of California because a substantial part of the events or omissions giving rise to the claims occurred in the county of San Francisco.

# PARTIES

3. Defendant Wells Fargo & Co. is a publicly-traded, global financial services firm and Fortune 500 corporation incorporated in Delaware and has its principal place of business in San Francisco, California. As of December 31, 2020, Wells Fargo has assets of approximately $1.9 trillion, loans of $887.6 billion, deposits of $1.4 trillion and stockholders' equity of $185 billion.[1] Wells Fargo provides a wide variety of financial products and services to its global and domestic clients, who include corporations, governments, financial institutions and individuals, including home mortgages. Wells Fargo claims to serve at least one out of three households in the United States.[2]

4. Defendant Wells Fargo Bank, N.A. is a national banking association chartered in South Dakota with its principal place of business in San Francisco, California, and a subsidiary of Wells Fargo & Co.

5. Plaintiff Christopher Williams is African American and a citizen of Georgia. As described below, Williams applied for a home mortgage with Wells Fargo and was subjected to racial discrimination in Wells Fargo's mortgage lending process.

6. Plaintiff Sam Albury is African American and a citizen of Nevada. As described below, Albury applied for a home mortgage with Wells Fargo and was subjected to racial discrimination in Wells Fargo's mortgage lending process.

7. Plaintiff Shaia Beckwith Simmons is African American and a citizen of Florida. As described below, Plaintiff Simmons obtained a home mortgage with Wells Fargo and was subjected to racial discrimination in Wells Fargo's mortgage lending process.

---

[1] https://www.wellsfargo.com/assets/pdf/about/investor-relations/sec-filings/2020/10k.pdf
[2] https://newsroom.wf.com/English/news-releases/news-release-details/2021/Wells-Fargo-launches-Banking-Inclusion-Initiative-to-accelerate-unbanked-households-access-to-affordable-transactional-accounts/default.aspx#:~:text=Wells%20Fargo%20%26%20Company%20(NYSE%3A,of%20banking%2C%20investment%20and%20mortgage

AMENDED
COMPLAINT
- 3 -

## FACTUAL ALLEGATIONS

8. As stated above, Wells Fargo is one of the largest banks in the country and one of the top residential mortgage providers in the United States. Across the country, Wells Fargo applies mortgage origination, approvals, interest rate determinations, fees, costs, refinancing, underwriting, deferment, forbearance, default, and foreclosure policies and practices that intentionally and disproportionately discriminate against and harm Black and/or African American home loan applicants and home mortgage borrowers. Williams, Albury, and Simmons were injured by Wells Fargo's racially discriminatory residential mortgage policies and practices.

9. Wells Fargo has a long history of racial discrimination and maintains a corporate culture replete with harmful racial stereotypes and biased views about Black and/or African American customers.

10. Wells Fargo discriminates against Black and/or African American customers throughout its lending process, from application—where Wells Fargo disproportionately denies credit to Black and/or African American applicants—to origination—where Wells Fargo disproportionately charges higher interest rates, imposes higher fees and costs, and offers worse terms to Black and/or African Americans compared to non-Black, non-African Americans—to refinancing—where Wells Fargo disproportionately denies Black and/or African Americans the opportunity to modify or lower their interest rates—and servicing—where Black and/or African American borrowers are subjected to additional racial discrimination.

11. Wells Fargo engages in redlining by approving white applicants for mortgage loans at substantially higher rates than Black and/or African American applicants. In 2020, for instance, according to an analysis of nationwide data published under the Home Mortgage Disclosure Act, Wells Fargo approved approximately 67.1% of white borrowers who applied for a mortgage, compared to only 51.8% of Black and/or African American applicants.

12. When evaluating statistical disparities like the one described above, statisticians use a tool called the "standard deviation" to assess the likelihood that the disparity is due to chance. The more standard deviations, the more the observed result deviates from the expected result and the less likely that the disparity is due to random chance. Courts and statisticians consider a disparity "statistically significant"—that there is a 95% level of confidence that random chance did not cause the disparity—at 1.96 standard deviations. In this case, the difference in approvals is statistically significant at *over 29 standard deviations*.

13. When Wells Fargo approves Black and/or African American borrowers' mortgage applications, it does so on substantially worse terms than offered to non-Black, non-African American borrowers. Nationwide, in 2020, the average interest rate Wells Fargo charged to Black and/or African American borrowers was 3.34%, versus 3.23% to white borrowers. The difference is statistically significant at over 17 standard deviations.

14. Wells Fargo also imposes higher costs on Black and/or African American borrowers relative to the size of their loans. In 2020, Black and/or African American borrowers nationwide had to spend, on average, 2.0% of their Wells Fargo loan value on costs and fees, versus 1.7% for white borrowers. The disparity is statistically significant at 9 standard deviations.

15. Wells Fargo has faced a number of recent lawsuits and settlements challenging these practices and disparities. For example, in 2011, a jury found Wells Fargo guilty of systematically discriminating against minority home buyers by using a computer software for minority homeowners which resulted in them paying more for their home loans than white borrowers. *Opal Jones, et. al v. Wells Fargo Bank, N.A., et al.*, Case No. BC337821 (Los Angeles Superior Court) ($3.5 million verdict). Wells Fargo has also paid hundreds of millions of dollars to avoid litigating its discriminatory home lending practices. Indeed, Wells Fargo agreed to a settlement valued at over $440 million of a lawsuit challenging the Firm's redlining practices,

resulting in a disproportionate number of foreclosures in African American neighborhoods in Shelby County and the City of Memphis. *City of Memphis and Shelby County, et al. v. Wells Fargo Bank, N.A., et al.*, Case No. 2:09-CV-02857 (W.D. Tenn.). Wells Fargo also settled a lawsuit for $37 million led by the National Fair Housing Alliance alleging that Wells Fargo took better care of foreclosed properties that it owned in white neighborhoods than those in African American and Latino communities. *National Fair Housing Alliance, et al. v. Wells Fargo Bank N.A., et al.*, HUD Case No. 09-12-0708-8 (U.S. Department of Housing & Urban Development Office of Fair Housing & Equal Opportunity).

16. Wells Fargo has also faced and settled numerous lawsuits challenging its "reverse redlining" practices of charging higher rates and imposing less favorable terms for minority home borrowers than for white home borrowers. For instance, in 2013, Wells Fargo paid $175 million to settle a lawsuit brought by the United States Department of Justice alleging that the Firm charged higher rates to its African American and Latino borrowers. *United States v. Wells Fargo Bank, NA*, Case No. 1:12-cv-01150 (D.D.C.).

17. In 2019, Wells Fargo paid $10 million to settle a similar claim brought by the City of Philadelphia. *City of Philadelphia v. Wells Fargo & Co., et al.*, No. 2:17-cv-02203-AB (E.D. Pa. 2019). Philadelphia alleged that Wells Fargo simply swapped the evil of redlining—refusing to lend to minority communities—for the similarly pernicious reverse redlining—lending to minority borrowers, but saddling them with more expensive loans with worse terms than those extended to white borrowers. *City of Philadelphia v. Wells Fargo & Co., et al.*, No. 2:17-cv-02203-AB (E.D. Pa. 2019), Dkt. 1 (Complaint) ¶¶ 5–21. Philadelphia alleged that "since at least 2004 . . . Wells Fargo has systematically engaged in a continuous and unbroken discriminatory pattern and practice of issuing higher cost or more onerous mortgage loans to minority borrowers in Philadelphia when more favorable and less expensive loans were being offered to similarly

situated non-minority borrowers." *Id.* ¶ 5 (E.D. Pa.). Philadelphia's statistical analysis revealed that African American borrowers were more than twice as likely to "receive a high-cost or high-risk loan" than a white borrower even when controlling for credit score. *Id.* ¶ 14. Indeed, the discrimination worsened as the credit score increased—especially creditworthy "African-Americans with FICO scores over 660 were 2.570 times more likely to receive a high-cost or high-risk loan from Wells Fargo as a white borrower." *Id.* The predictable result of Wells Fargo's foisting high-cost, high-risk loans on African Americans was an explosion of foreclosures in minority communities, where loans were "4.710 times more likely to result in foreclosure than is a loan in a predominantly white neighborhood." *Id.* ¶ 12. This precipitated what "many leading commentators describe[d] as the 'greatest loss of wealth for people of color in modern US history.'" *Id.* ¶ 18.

18.   Wells Fargo has found new avenues to discriminate against Black and/or African American customers with recent changes to the home mortgage market. Nationwide, homeowners have had the opportunity to take advantage of historically low interest rates through refinancing, which occurs when a homeowner applies for credit related to their residential real estate to change the terms of an earlier loan. Over the last two years, U.S. homeowners refinanced almost $5 trillion in mortgages, generating untold savings.[3] This could have been an opportunity for African American homeowners to build wealth and secure their families' futures.

19.   Wells Fargo, however, systematically and intentionally shut Black and/or African American customers out of this major wealth event. According to an analysis of 2020 Home Mortgage Disclosure Act data, Wells Fargo approved 33.7% of refinancing applications from Black and/or African American applicants, compared with 49.1% from white applicants. Wells

---

[3] https://www.bloomberg.com/graphics/2022-wells-fargo-black-home-loan-refinancing/

Fargo denied Black and/or African Americans borrowers' applications outright 36.1% of the time, versus 20.3% of the time for white borrowers. These disparities are statistically significant at over 31 standard deviations.

20. And just as it does with home purchase loans, Wells Fargo charges higher costs and interest rates to Black and/or African American customers who obtain refinancing. In 2020, Wells Fargo charged the average national Black and/or African American refinancing recipient 3.18% versus 3.11% for white refinancing recipients, and charged Black and/or African American customers an average of $5,335 in costs and fees versus $4,193 for white borrowers, for an average cost of borrowing of 2.6% for Black and/or African American customers versus 1.8% for white borrowers. All these disparities are statistically significant.

21. Wells Fargo's failure to extend refinancing and other home loans to Black and/or African American customers has even drawn the attention of members of Congress. Senators Elizabeth Warren and Ron Wyden recently wrote a letter to Wells Fargo's Chief Executive Officer Charles Scharf excoriating the Bank for its "shocking disparity" in its approval ratings of Black and/or African American refinancing applicants.[4] The Senators stated that Wells Fargo's recent actions were consistent with "Wells Fargo's long history of scamming and mistreating consumers of color."[5] Furthermore, the Senators believed "Wells Fargo's treatment of Black borrowers is deeply concerning, no matter how one looks at the data" and concluded, "Wells Fargo appears to be simply unable or unwilling to stop preying upon customers of color."[6]

22. Wells Fargo discriminates against its African American employees just as readily as it does its customers. In 2016, Wells Fargo was charged with systemic discrimination against

---

[4] Letter from Senators Elizabeth Warren and Ron Wyden, March 16, 2022
https://www.warren.senate.gov/imo/media/doc/2022.3.16%20Letter%20to%20Wells%20Fargo%20on%20Refinancing%20Discrimination.pdf
[5] Id.
[6] Id.

minority Financial Advisors including by African American Financial Advisors in the class action lawsuit *Slaughter v. Wells Fargo Advisors*, 14-cv-06368 (N.D Ill. 2014). Wells Fargo eventually settled the *Slaughter* litigation for over $35 million. *Slaughter v. Wells Fargo Advisors*, 14-cv-06368 (N.D Ill. 2014), Dkt. 99-1.

23. In determining home loans, interest rates, points, and other credit and contractual terms, Wells Fargo intentionally uses factors to determine eligibility for home loan rates, terms, and conditions that facilitate redlining and reverse redlining against and disfavor Black and/or African American applicants.

24. Many traditional techniques for determining creditworthiness, such as FICO score, debt-to-income ratio, and work history, have been demonstrated to cause an unlawful disparate impact against Black borrowers and/or African Americans. Wells Fargo, however, employs an even more discriminatory "unique scoring model" that eschews even these traditionally discriminatory origination and underwriting techniques. Wells Fargo thereby intentionally discriminates and creates an unlawful disparate impact against Black and/or African American mortgage applicants, including applicants for refinancing.

25. Additionally, pursuant to its Firm-wide discriminatory culture, Wells Fargo unduly scrutinizes and is unduly skeptical of the application materials submitted by Black and/or African American applicants, causing undue delays and rejections of Black and/or African American mortgage applicants, including applicants for refinancing.

26. In the rare case Wells Fargo offers mortgage loans to Black and/or African American customers on reasonable terms, Wells Fargo engages in predatory lending practices to force Black and/or African American borrowers out of those terms, including pressuring Black and/or African American borrowers to increase their rates by improperly treating Black and/or African American borrowers' loans in default and instituting improper foreclosures.

27. The racially discriminatory policies and practices at Wells Fargo are uniform and national in scope and create an artificial, arbitrary, and unnecessary barrier to fair housing opportunities for Black and/or African American borrowers. Class members who applied for loans at Wells Fargo offices across the country and were harmed by these same policies and practices are relying on Plaintiffs and this lawsuit to protect their rights. Wells Fargo's policies are practices are implemented with discriminatory intent and/or disproportionately impact Black and/or African Americans borrowers.

## PLAINTIFFS WERE INJURED BY DEFENDANTS' DISCRIMINATORY POLICIES AND PRACTICES

**Christopher Williams**

28. Williams is African American. Williams was a well-qualified African American home borrower. When he applied for his mortgage loan, Williams was highly creditworthy, as reflected in his high FICO score of over 750. Based on this, Williams believed he should have qualified for Wells Fargo's prime interest rate, which would have saved him substantial money over time on his home mortgage. However, consistent with Wells Fargo's pattern of discrimination against African American borrowers, Wells Fargo offered Williams an interest rate nearly three points higher than the prime interest rate offered by Wells Fargo, which is disproportionately and discriminatorily offered to white applicants.

29. Believing it to be a mistake, Williams spoke to Wells Fargo's home lending department to have his credit report rechecked and for his interest rate to be lowered. Instead, the Firm refused to reconsider his credit score or his interest rate.

30. Wells Fargo agreed to revisit its refusal to extend the loan to Williams on favorable terms. However, in a letter dated September 5, 2019, Wells Fargo finally articulated for the first time, that it did not use solely FICO credit scores to determine home interest rates, but

AMENDED COMPLAINT
- 10 -

instead used "a unique scoring model, which considers more than credit scores to evaluate applications."

31. Indeed, the "other" factors used by Wells Fargo to determine interest rates for home loans serve to intentionally exclude Black and/or African American borrowers from affordable and lower-risk loans, force Black and/or African American borrowers to pay higher interest rates and other fees that similarly situated white borrowers, and have a disparate impact based on race. Williams applied for and received a home loan from another bank at its prime interest rate.

32. Williams identified his race to Wells Fargo during the application process.

**Sam Albury**

33. Plaintiff Albury is African American. Albury is a well-qualified African American home borrower. When he applied for his mortgage, Albury was gainfully employed, had already owned two properties, and was highly creditworthy. In or around June 2020, Albury agreed to purchase a new home in Las Vegas, Nevada. To do so, Albury agreed to close on the property in 35 days and paid the buyer a considerable amount of earnest money. Despite being warned not to use Wells Fargo by his realtor, Albury believed he would receive a prime mortgage due to his preexisting banking relationship with Wells Fargo.

34. However, consistent with Wells Fargo's pattern of discrimination against Black and/or African American borrowers across the country, Wells Fargo offered Albury an interest rate higher than the prime interest rate offered by Wells Fargo to white applicants. Wells Fargo also unduly scrutinized his application and subjected him to baseless inquiries regarding his finances and work history. Worried that Wells Fargo would not approve his mortgage application in time for the scheduled closing, Albury answered all of Wells Fargo's baseless inquiries.

35. Wells Fargo continued to string Albury along until, just days before his scheduled closing, Wells Fargo denied his application in full. Wells Fargo's actions forced Albury to walk away from his home purchase, thereby forfeiting thousands of dollars in earnest money.

**Shaia Beckwith Simmons**

36. Plaintiff Shaia Beckwith Simmons is a public relations expert, community advocate, and motivational speaker, with a Bachelor's in Business Administration and Management and a Master's in Educational Leadership and Administration from Florida A&M University. She and her husband, the head coach of Florida A&M's Division I football team, are pillars of their local community.

37. Simmons is a well-qualified African American home borrower who obtained a home mortgage loan from Wells Fargo in 2009 and refinanced it for a lower interest rate in 2013.

38. Simmons is a model homeowner and has timely made her monthly payments without incident. During the COVID-19 pandemic, as required by the CARES Act, Wells Fargo offered existing home mortgage borrowers the option to defer their payments. Simmons accepted Wells Fargo's deferment option, which allowed her to restructure her loan to defer monthly payments during the pandemic and instead make those monthly payments at the end of her loan.

39. After several months of approved deferments, Simmons promptly resumed making her mortgage payments in full, as she had done for decades without issue.

40. Yet consistent with its nationwide discriminatory practices, Wells Fargo maliciously and unlawfully instituted foreclosure proceedings against Simmons without prior notice, asserting without justification that Simmons was in default for failure to make mortgage payments during her deferment.

41. Consistent with its nationwide practices of predatory lending to extract wealth from Black and/or African American customers, Wells Fargo presented Simmons with an

ultimatum: she could renegotiate her loan, potentially at a higher interest rate that would cost her many thousands of dollars over the remaining life of the loan, or Wells Fargo would persist with the unjustified foreclosure to take her home away from her and resell it in a booming market.

42. Simmons refused to renegotiate her loan and is resisting the wrongful foreclosure, which remains pending.

43. Wells Fargo's unlawful actions have caused Simmons emotional distress, and the pendency of the wrongful foreclosure and filing of a lis pendens against her property have damaged Simmons's credit rating, causing further injury.

## CLASS ALLEGATIONS

44. Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and a class of Black and/or African American applicants or borrowers who applied for, received, or maintained credit from Defendants related to residential real estate and who were subjected to discrimination by Defendants due to their race. Plaintiffs seek certification of a liability and injunctive and declaratory relief class under Rule 23(b)(2) and 23(c)(4), and/or certification of a broader class under Rule 23(b)(3). All requirements of class certification are met by the proposed class.

45. The class of Black and/or African American participants in Wells Fargo's home lending process is so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1).

46. There are questions of law and fact common to the class, and those questions can and should be resolved in a single proceeding that furthers this litigation. Fed. R. Civ. P. 23(a)(2).

47. The claims alleged by Plaintiffs are typical of the claims of the class. Fed. R. Civ. P. 23(a)(3).

48. Plaintiffs will fairly and adequately represent and protect the interests of the class. Fed. R. Civ. P. 23(a)(4).

49. The issue of determining liability regarding whether Defendant's policies and practices result in a pattern or practice of intentional discrimination and/or have a disparate impact against African Americans is appropriate for issue certification under Rule 23(c)(4). Other common issues are also appropriate for certification.

50. Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate with regard to the class as a whole. Fed. R. Civ. P. 23(b)(2).

51. The questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

## COUNT I

### EQUAL CREDIT OPPORTUNITY ACT

52. Plaintiffs, on behalf of themselves and all those similarly situated, reallege each and every paragraph above and incorporate them by reference as though fully stated herein.

53. The Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.*, makes it unlawful for a creditor to discriminate against any applicant with respect to any aspect of a credit transaction on the basis of race.

54. As described above, Defendants are creditors because they regularly extend, renew, and continue credit, and Plaintiffs were applicants for credit.

55. Defendants maintained a nationwide set of uniform, discriminatory mortgage loan origination, refinancing, and underwriting practices and engaged in a pattern or practice of

systemic race discrimination against Black and/or African American mortgage loan applicants and borrowers that constitutes illegal intentional race discrimination in violation of the Equal Credit Opportunity Act.

56.    Plaintiffs and all those similarly situated were subjected to and harmed by Defendant's systemic and individual discrimination.

57.    Defendants' unlawful conduct resulted in considerable harm to Plaintiffs and all those similarly situated.

58.    On behalf of themselves and the class they seek to present, Plaintiffs request the relief set forth below.

## COUNT II

### RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981

59.    Plaintiffs, on behalf of themselves and all those similarly situated, reallege each and every paragraph above and incorporate them by reference as though fully stated herein.

60.    Under 42 U.S.C. § 1981, persons of all races are guaranteed the same right to make and enforce contracts, regardless of race. The term "make and enforce" contracts includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

61.    Defendants maintained a nationwide set of uniform, discriminatory mortgage loan origination, refinancing, and underwriting practices and engaged in a pattern or practice of systemic race discrimination against Black and/or African American mortgage loan applicants and borrowers that constitutes illegal intentional race discrimination in the making and modification of contracts in violation of 42 U.S.C. § 1981.

62. Plaintiffs and all those similarly situated were subjected to and harmed by Defendants' systemic and individual discrimination.

63. On behalf of themselves and the class they seek to present, Plaintiffs request the relief set forth below.

### COUNT III

### RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1982

64. Plaintiffs reallege each and every paragraph above and incorporate them by reference as though fully stated herein.

65. Under 42 U.S.C. § 1982, all citizens are guaranteed the same right to inherit, purchase, lease, sell, hold, and convey real and personal property, regardless of race.

66. As set forth above, Defendants maintained a nationwide set of uniform, discriminatory mortgage loan origination, refinancing, and underwriting practices and engaged in a pattern or practice of systemic race discrimination against Black and/or African American mortgage loan applicants and borrowers that constitutes illegal intentional race discrimination and disparately impacts Black and/or African American applicants and borrowers in violation of 42 U.S.C. § 1982.

67. Plaintiffs and all those similarly situated were subjected to and harmed by Defendants' systemic and individual discrimination.

68. On behalf of themselves and the class they seek to present, Plaintiffs request the relief set forth below.

# COUNT IV

## RACE DISCRIMINATION IN VIOLATION OF
## THE FAIR HOUSING ACT OF 1968, 42 U.S.C § 3601 *et seq.*

69. Plaintiffs reallege each and every paragraph above and incorporate them by reference as though fully stated herein.

70. The Fair Housing Act, 42 U.S.C. § 3605(a), prohibits any entity whose business includes engaging in residential real estate-related transactions from discriminating against any person in making available such a transaction on the basis of race.

71. Defendants' business includes engaging in residential real estate-related transactions.

72. As set forth above, Defendants maintained a nationwide set of uniform, discriminatory mortgage loan origination, refinancing, and underwriting practices and engaged in a pattern or practice of systemic race discrimination against Black and/or African American mortgage loan applicants and borrowers that constitutes illegal intentional race discrimination and disparately impacts Black and/or African American mortgage loan applicants and borrowers in violation of the Fair Housing Act of 1968.

73. Plaintiffs and all those similarly situated were subjected to and harmed by Defendants' systemic and individual discrimination.

74. On behalf of themselves and the class they seek to present, Plaintiffs request the relief set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court find against Defendants as follows:

a. Certify this case as a class action;

b.  Designate Plaintiffs as Class Representatives and designate Plaintiffs' counsel of record as Class Counsel;

c.  Declare that Defendants' acts, conduct, policies and practices are unlawful and violate the Equal Credit Opportunity Act, 42 U.S.C. §§ 1981 and 1982, and the Fair Housing Act;

d.  Declare that Wells Fargo engaged in a pattern and practice of racial discrimination against Black and/or African American applicants and borrowers;

e.  Order Plaintiffs and all others similarly situated offered mortgage loans at non-discriminatory rates, and otherwise make Plaintiffs whole;

f.  Award Plaintiffs and all others similarly situated compensatory and punitive damages;

i.  Award Plaintiffs and all others similarly situated prejudgment interest and attorneys fees, costs and disbursements, as provided by law;

j.  Award Plaintiffs and all others similarly situated such other make whole equitable, injunctive and legal relief as this Court deems just and proper to end the discrimination and fairly compensate Plaintiffs and all others similarly situated.

k.  Award Plaintiffs and all others similarly situated such other relief as this Court deems just and proper.

AMENDED COMPLAINT
- 18 -

**DEMAND FOR A JURY TRIAL**

Plaintiffs hereby demand a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure and Civil Local Rule 3-6.

Respectfully submitted,

BEN CRUMP, PLLC

BENJAMIN CRUMP (Pro hac vice to be requested)
633 Pennsylvania Avenue Northwest
Floor 2
Washington D.C. 20004
Tel: (800) 713-1222
court@bencrump.com

STOWELL & FRIEDMAN, LTD.

By: */s/ Linda D. Friedman*
LINDA D. FRIEDMAN (Appearing pro hac vice)
SUZANNE E. BISH (Pro hac vice to be requested)
**STOWELL & FRIEDMAN LTD.**
303 W. Madison St.
Suite 2600
Chicago, Illinois 60606
Phone: (312) 431-0888
Lfriedman@sfltd.com

SANI LAW FIRM

SAM SANI (local counsel)
**SANI LAW FIRM**
15720 Ventura Blvd.
Suite 405
Encino, CA 94612
Tel: (310) 935-0405
ssani@sanilawfirm.com

*Attorneys for Plaintiffs Williams, Albury, Simmons, individually and on behalf of all others similarly situated*