ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP
Dennis S. Ellis (State Bar No. 178196)
  dellis@egcfirm.com
Trent B. Copeland (State Bar No. 136890)
  tcopeland@egcfirm.com
Ryan Q. Keech (State Bar No. 280306)
  rkeech@egcfirm.com
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

FRANK SIMS & STOLPER LLP
Jason Frank (State Bar No. 190957)
  jfrank@lawfss.com
Scott H. Sims (State Bar No. 234148)
  ssims@lawfss.com
Andrew D. Stolper (State Bar No. 205462)
  astolper@lawfss.com
19800 MacArthur Blvd., Suite 855
Irvine, California 92612
Telephone: (949) 210-2400
Facsimile: (949) 201-2405

(Additional Counsel on Signature Page)

Attorneys for Plaintiffs Aaron Braxton, Gia Gray,
Bryan Brown, Paul Martin, on behalf of
themselves and all others similarly situated

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| AARON BRAXTON, GIA GRAY, BRYAN BROWN AND PAUL MARTIN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>WELLS FARGO BANK, N.A., a Delaware corporation; WELLS FARGO HOME MORTGAGE, INC., a Delaware corporation; WELLS FARGO & CO., a Delaware corporation,<br><br>Defendants. | **Case No. 3:22-cv-01748-JD**<br>*(Related to 3:22-cv-00990-JD)*<br><br>Honorable James Donato<br><br>**JOINT STATEMENT REGARDING CONSOLIDATION** |

| | |
|---|---|
| CHRISTOPHER WILLIAMS,<br><br>    Plaintiff,<br><br>    vs.<br><br>WELLS FARGO & CO., WELLS FARGO BANK, N.A.,<br><br>    Defendants. | **Case No. 3:22-cv-00990-JD**<br>*(Related to 3:22-cv-01748-JD; 3:22-cv-03455-JD; 3:22-cv-01793-JD; 3:22-cv-02535-JD)*<br><br>Honorable James Donato |
| ALFRED POPE,<br><br>    Plaintiff,<br><br>    vs.<br><br>WELLS FARGO & COMPANY, WELLS FARGO BANK, N.A.,<br><br>    Defendants. | **Case No. 3:22-cv-01793-JD**<br>*(Related to 3:22-cv-00990-JD; 3:22-cv-01931-JD)*<br><br>Honorable James Donato |
| IFEOMA EBO, TERAH KUYKENDALL-MONTOYA<br><br>    Plaintiffs,<br><br>    vs.<br><br>WELLS FARGO BANK, N.A., WELLS FARGO & COMPANY,<br><br>    Defendants. | **Case No. 3:22-cv-02535-JD**<br>*(Related to 3:22-cv-00990-JD)*<br><br>Honorable James Donato |
| ELRETHA PERKINS, LARONICA JOHNSON,<br><br>    Plaintiffs,<br><br>    vs.<br><br>WELLS FARGO HOME MORTGAGE, INC., WELLS FARGO, N.A.,<br><br>    Defendants. | **Case No. 3:22-cv-03455-JD**<br>*(Related to 3:22-cv-00990-JD)*<br><br>Honorable James Donato |

| | |
|---|---|
| WINFRED THOMAS, MICHELLE SIMS. | **Case No. 3:22-cv-1931-JD**<br>*(Related to 3:22-cv-01793-JD)* |
| Plaintiffs, | Honorable James Donato |
| vs. | |
| WELLS FARGO & COMPANY, WELLS FARGO BANK. N.A., | |
| Defendants. | |

# I. INTRODUCTION

The parties in *Williams at al. v. Wells Fargo Bank, N.A. and Wells Fargo & Co.*, Case No. 3:22-cv-00990-JD ("*Williams*"); *Braxton et al. v. Wells Fargo Bank, N.A., Wells Fargo Home Mortgage, Inc. and Wells Fargo & Co.*, Case No. 3:22-cv-01748-JD ("*Braxton*"); *Pope v. Wells Fargo Bank, N.A. and Wells Fargo & Company*, Case No. 3:22-cv-01793-JD ("*Pope*"); *Ebo v. Wells Fargo Bank, N.A.*, Case No. 3:22-cv-02535-JD ("*Ebo*"); *Perkins et al. v. Wells Fargo Bank, N.A. and Wells Fargo Home Mortgage, Inc.*, Case No. 3:22-cv-3455-JD ("*Perkins*"); *Thomas, et al. v. Wells Fargo Bank, N.A. and Wells Fargo and Company*, Case No. 3:22-cv-01931-JD ("*Thomas*"), hereby submit this joint statement regarding the Court's October 20, 2022, order and their respective positions on consolidation of the putative class actions.

# II. PROCEDURAL AND FACTUAL BACKGROUND

On February 17, 2022, the *Williams* lawsuit was filed before this Court on behalf of a putative class of African Americans who applied for credit related to residential real estate at Wells Fargo Bank, N.A.[1]  Dkt. 1 [Williams].  The other class actions alleging racial discrimination in lending against Wells Fargo were then filed and moved to this Court after Wells Fargo moved to deem them related (Dkt. 34 [Williams]) and then for consolidation (Dkt. 63 [Williams]): *Braxton* on March 18, 2022; *Pope* on March 21, 2022; *Thomas* on March 26, 2022; *Ebo* on April 5, 2022; and *Perkins* on June 10, 2022.

On October 20, 2022, the Court heard preliminary argument on Wells Fargo's motion to consolidate, which the *Braxton* and *Williams* Plaintiffs opposed and other Plaintiffs' counsel supported.  Dkt. 93 [Williams].  The Court noted its preference to consolidate the six discrimination in lending cases:

> THE COURT:  I want one complaint or as close as we can get to one complaint, one motion to dismiss, one set of discovery, one class certification motion, one summary judgment motion.  You understand what I'm saying.  So one is a goal.  If it is two, I can live with two.  I'm open to two if the two make sense and everybody

---

[1] As used in this Joint Statement Regarding Consolidation, "Wells Fargo" as used herein refers to the entities for which Wells Fargo has appeared in the cases identified above.

is on board with it; okay. And if you are not on board with it, I'm just going to have to make a decision. All I'm giving you is an opportunity to tell me how you want me to guide my thinking. That's what I'm suggesting.

10.20.22 Hr. Tr. at 30:11-20. At the conclusion of the hearing, the Court ordered the parties to meet and confer and file a joint statement regarding consolidation by November 4, 2022. *See id*. at 29:3-11; *see also* Dkt. 93 [Williams].

Counsel for the parties participated in a phone conference on November 3, and Plaintiffs' counsel asked for additional time. Plaintiffs' counsel filed an unopposed motion requesting a brief one-week extension of the deadline to submit the joint statement. Dkt. 98 [Williams]. The Court granted the motion and ordered that the statement be filed by November 18, 2022. Dkt. 100 [Williams]. The parties submit their positions below.

### III. JOINT PLAINTIFFS' POSITIONS ON CONSOLIDATION

During the hearing on October 20, 2022, the Court noted its preference to consolidate the six discrimination in lending cases, and that it was willing to "live" with two separate complaints if the parties were on "board" with that approach. A disagreement among Plaintiffs' Counsel was apparent at the hearing, as is reflected by the transcript, which has since been resolved.

THE COURT: Well, let's stop on that. Is that going to be a problem if I do – that's what I'm trying to figure out. Is that going to be a problem – if we split it by vehicle, okay, is that going to be a problem for going forward?

MR. CRUMP: We think it is, Judge, only in this sense here. Our clients include refinance and mortgages origination, and it is only for African Americans and Blacks because we believe ***the algorithm that exists with Wells Fargo perpetually discriminates against African Americans and Blacks***. And so when we first filed – and we were the original filers even before the newspaper articles came out – because we studied this. We are trying to fix the problem. We are not just trying to say "let's get fees" or anything like that. This is what we do every day in and out because we don't want Blacks to continue to have the wealth gap increase in

1  America. This was a historic opportunity for Blacks to finally makeup the wealth
2  gap during the pandemic when they had historic low interest rates and maybe, just
3  maybe, we could close that gap with white Americans; but then *you had Wells*
4  *Fargo denying Blacks this opportunity and we missed out*. And so we are saying
5  we specifically want to look at African Americans as it related to mortgages,
6  refinances and every aspect of what Wells Fargo was doing, so –
7  THE COURT: That's just African Americans?
8  MR. CRUMP: Just African Americans. And the only distinguishing point between
9  Mr. Ellis, my learned colleague, who I appreciate all his arguments, is just the fact
10  that when we first filed, we knew about the refinancing issues. We also knew that
11  there were problems with home origination mortgages as well.
12  THE COURT: Well, it makes sense to me that, you know, the allegations would be
13  for both.

*   *   *

15  THE COURT: Okay. Here is what I would like to do: I want all of you, both
16  sides, to sit down and have a meet-and-confer. And, Plaintiffs, before you do that
17  with your colleagues across the – across the table there, you might want to have
18  your own internal meeting – but I would like to hear within a week, if you can do
19  it, maybe two weeks if you need more time – I want to get this moving. I don't
20  want this to sit around – I just want greater clarity on the issues I have asked about;
21  okay.

*   *   *

23  THE COURT: You need to tell me: *Do you want it by Plaintiff group? Do you*
24  *want it by product – credit vehicle? How do you want to do it; okay?*
25  10.20.22 Hr. Tr. at 27:19-29:19 (emphasis added).
26      As ordered by the Court, Plaintiffs' counsel met and conferred beginning on October 20,
27  2022, right after the hearing. As the Court suggested, this first meeting was just the start of many

by the various Plaintiffs' counsel. *Id*. at 29:5-7. Counsel for the Plaintiffs continued to meet and confer, in good faith, to discuss a mutually agreeable approach, with each party proposing an alternative they hoped would be accepted by all, almost daily thereafter up to and including November 15, 2022.

Plaintiffs listened carefully to this Court's initial preference for consolidation of the cases for purposes of discovery and willingness to accept two complaints if the Plaintiffs' counsel reach agreement. 10.20.22 Hr. Tr. at 29:16, 30:16-17. At the Court's direction, Plaintiffs' counsel have conferred extensively and reached agreement on a proposal consistent with the Court's preference and that will allow this case to proceed fairly and expeditiously with minimum burden on the Court and Defendants. Plaintiffs propose filing two complaints: (1) a consolidated complaint, filed by the *Braxton/Williams* group, on behalf of a class of Black applicants and borrowers, including origination and refinance mortgages, and (2) a consolidated complaint, filed by the *Pope/Ebo/Thomas/Perkins* group, on behalf of a class of non-Black protected minorities, including both loan origination and refinance applicants. These two complaints will be coordinated for purposes of discovery.

Wells Fargo's discrimination against minorities has been extensively documented in the courts. *See e.g. City of Oakland v. Wells Fargo Bank, N.A*., 3:15-cv-04321, Dkt. No. 1, at 2 (N.D. Cal. Sept. 21, 2015) (alleging that, controlling for these factors, "an African-American borrower is 2.583 times more likely to result in foreclosure than a more favorable and less expensive loan issued to a [W]hite borrower in Oakland"); *City of Memphis and Shelby County, et al. v. Wells Fargo Bank, N.A., et al.*, Case No. 2:09-CV-02857 (W.D. Tenn.) (challenging Wells Fargo's redlining practices, resulting in a disproportionate number of foreclosures in African American neighborhoods in Shelby County and the City of Memphis); *National Fair Housing Alliance, et al. v. Wells Fargo Bank N.A., et al.*, HUD Case No. 09-12-0708-8 (alleging that Wells Fargo took better care of foreclosed properties that it owned in white neighborhoods than those in African American and Latino communities); and *Cty. of Cook, Illinois v. Wells Fargo & Co*., 14-C-9548-

GF (N.D. Ill.) (alleging predatory lending practices to strip minority homeowners of the equity from their homes).

"Wells Fargo has a long history of racial discrimination and maintains a corporate culture replete with harmful racial stereotypes and biased views about Black and/or African American customers."  Dkt. 22 at 9 [Williams].  As Senators Elizabeth Warren and Ron Wyden stated, "Wells Fargo's treatment of Black borrowers is deeply concerning, no matter how one looks at the data."[2]  Complaints filed by Plaintiffs capture the extent to which Black homeowners suffered discrimination at a rate exceeding that of other minorities.  For loan origination applicants,

> Wells Fargo approves Black and/or African Black and/or African American borrowers' mortgage applications, *it does so on substantially worse terms than offered to non-Black, non-African American borrowers*.  Nationwide, in 2020, *the average interest rate Wells Fargo charged to Black and/or African American borrowers was 3.34%, versus 3.23% to white borrowers*.  The difference is statistically significant at over 17 standard deviations.

Dkt. 22 at ¶ 13 [Williams] (emphasis added).  Moreover, for *every single income quintile*, Black refinance applicants were approved at lower rates than other populations.  *See* Dkt. 14 at ¶ 113 [Braxton].  Given the extent of discrimination suffered by Black applicants and the bias specific to Black applicants, Plaintiffs believe that the cases should be divided between Black applicants and other minority applicants.

Meanwhile, other protected minorities also have suffered from Wells Fargo's discriminatory lending practices resulting from redlining.  While those minority groups have different historical experiences, Wells Fargo's denial rates for new and refinanced loan applications by Hispanic and other minority borrowers also are substantially and

---

[2] Letter from Senators Elizabeth Warren and Ron Wyden, March 16, 2022
https://www.warren.senate.gov/imo/media/doc/2022.3.16%20Letter%20to%20Wells%20Fargo%20on%20Refinancing%20Discrimination.pdf.

1   disproportionately higher than Wells Fargo's denial rates for white applicants.  This pattern is
2   observed in nearly every major metropolitan statistical area across the country.
3         Wells Fargo's loan application and loan origination data, which will evidence this
4   discriminatory conduct, tracks borrower race, ethnicity and national origin data points.  The
5   breakdown of this data further supports the Plaintiffs' proposed structure because it will allow the
6   separate lawsuits to better focus on lending disparities between white borrowers and each of the
7   protected classes.  This will further the parties' ability to focus discovery and motion practice in an
8   efficient manner and the Plaintiffs' willingness to coordinate their respective discovery efforts will
9   help alleviate any duplicative burden that Defendants may fear.
10        Plaintiffs' proposal will allow for efficient prosecution and dramatically limit the burden
11  on the Court and Defendants while protecting the rights and interests of the respective classes in
12  the two actions.  Any other iteration or division of the cases—specifically a single, consolidated
13  complaint encompassing all minorities and all loan products—will fail to produce tangible
14  efficiencies and, more importantly, prejudice Plaintiffs and the Plaintiff classes.  Each of the
15  Plaintiff classes deserves to have its own representation and to zealously pursue, without
16  compromise, its own theory of the case.  Requiring Plaintiffs, who filed limited, specifically
17  crafted lawsuits, to participate in discovery, and have their limited discovery devoted to issues that
18  have no relevance to their case, or worse, are inconsistent with their theory of their case, is
19  inefficient and prejudicial and will deprive Plaintiffs the ability to focus on issues most relevant to
20  their own protected class and prosecute their case accordingly.  Efficiency and judicial economy
21  will be served by the Plaintiffs' agreement to coordinate the cases for purposes of discovery.
22        Plaintiffs' proposal to proceed with two complaints—split between Black Plaintiffs and all
23  other minority Plaintiffs—makes the most sense and is the only path that advances judicial
24  efficiency without prejudicing Plaintiffs.  While Plaintiffs' counsel have had some preliminary
25  discussions about potential leadership roles, counsel have not finalized any positions and instead
26  await the Court's guidance on consolidation.  Contrary to Wells Fargo's conjecture, the proposal
27  presented by Plaintiffs has no correlation to any party's desire to serve a particular leadership role.
28

Rather, it is Plaintiffs' counsel's consensus agreement—following weeks of discussion— as to the most efficient way to proceed in this litigation and the most effective way to zealously represent and best serve the interests of the respective classes.

### IV. WELLS FARGO'S POSITION

Plaintiffs' joint "position" is primarily a needlessly inflammatory recitation of the unsupported allegations set forth in Plaintiffs' Complaint—not a proposal for consolidation to promote judicial efficiency, or even relevant to the issue this Court asked the parties to address. Wells Fargo vigorously denies the allegations and mischaracterizations in Plaintiffs' recitation. Wells Fargo is confident that its underwriting practices are consistently applied *regardless of a customer's race or ethnicity*. Moreover, Wells Fargo has a strong history of supporting minorities in achieving their homeownership goals. In fact, over the last decade, Wells Fargo has helped as many Black families purchase homes as the next three largest bank lenders combined. And in 2020, Wells Fargo was the largest bank lender for home mortgages to Black families and helped more Black homeowners refinance their mortgages than any other bank. Wells Fargo looks forward to defending its practices before the Court at the appropriate time.

Consistent with the Court's preference, one consolidated master complaint is appropriate,[3] followed by consolidated discovery and consolidated motion practice. 10.20.22 Hr. Tr. at 30:11-15 ("I want one complaint or as close as we can get to one complaint, one motion to dismiss, one set of discovery, one class certification motion, one summary judgment motion."). Plaintiffs' bare-bones proposal—two complaints "split between Black Plaintiffs and all other minority Plaintiffs" followed by undefined "coordinated" but not consolidated discovery—is untenable, would not facilitate efficient administration of these matters, and should not be adopted by the Court.

First, Plaintiffs' proposal will lead to duplicative and inefficient discovery. Wells Fargo's application and underwriting processes, of course, do not differ based on an applicants' race. And

---

[3] Wells Fargo has always asserted that one consolidated master complaint is appropriate, but was amenable to one complaint for refinancing products and one for purchase mortgages as it was at least more efficient than the status quo. Dkt. 99 at 2. Plaintiffs now admit that refinancing products and purchase mortgage can be covered by one complaint.

Plaintiffs do not allege any basis upon which to separate Black applicants from "all other minority" applicants. All borrowers apply for loans in the same basic underlying ways, and all have their applications underwritten by similar criteria applied by Wells Fargo underwriters. And when Wells Fargo conducts its fair lending analyses to look for disparate impacts, it does so across its applicant pool—using the same tools, the same data, the same standards, and it reports the results across the various demographic groups in the same reports. There is no justification for having one set of document requests or Rule 30(b)(6) categories directed to that data or those issues for African-American applicants, and then a likely differently scoped set of requests and categories for that same data for "other minorities." A single set of discovery is the only workable solution. *Brown v. Accellion, Inc.*, 2022 WL 767279, at *3 (N.D. Cal. Mar. 24, 2022) (recognizing that not consolidating overlapping class actions "could create duplicative and overlapping discovery efforts").

Plaintiffs' vague assertion that they seek to "coordinate" discovery does not address duplicative discovery issues and ignores the Court's instructions for "one set of discovery." 10.20.22 Hr. Tr. at 30:13. Federal Rule of Civil Procedure 42 makes no mention of "coordinated" discovery. *See* Manual for Complex Litigation § 11.631 (4th ed.). Rather the rule promotes consolidation. *Id.* And arguing for coordination rather than consolidation does not answer the question the Court posed: *how* should discovery and motion practice in these cases be handled efficiently? Plaintiffs provide no framework for how their proposal for "coordinated" discovery would even be implemented (e.g., the number and timing of discovery requests, who determines the content of discovery requests, how to avoid overlapping or duplicative requests, the form of data production, issues related to individual and corporate representative depositions, etc.). Indeed, Plaintiffs' assurance that they will coordinate discovery is in considerable tension with their (unsupported) argument that consolidated discovery would somehow be prejudicial to them and their clients.

Second, Plaintiffs' bald assertion of potential but unidentified prejudice does not militate against consolidation. In every case, different attorneys may wish to pursue different strategies,

1  but Plaintiffs identify no divergent strategies that actually impact these cases. Nor do they identify
2  divergent interests among minority applicants that would prevent these cases from proceeding on a
3  consolidated basis for both discovery and dispositive motion practice.  They identify no reason
4  why Wells Fargo should field multiple, overlapping yet inconsistent discovery requests solely
5  because their attorneys cannot come to an agreement on litigation strategy.

6  Last, Plaintiffs' proposal also blatantly disregards that some putative class members belong
7  to more than one protected group, leading to easily predictable class member confusion.  For
8  example, it should go without saying that individuals can identify themselves by both racial and/or
9  ethnic background.  Further, because race and ethnicity are mutually inclusive, Hispanic
10 individuals of African descent could identify as Black *and* Hispanic/Latino.  This is just one of the
11 more obvious examples that demonstrate the untenable demarcation that Plaintiffs are trying to
12 force feed this Court.  Two separate lawsuits, one for Black applicants and the other for all other
13 protected groups, would be needlessly confusing to these putative class members.  Multi-racial
14 putative class members, or mixed-race couples, may not know which lawsuit they are part of, or if
15 they are perhaps part of both.  They will not know which case to follow or track, or which set of
16 class counsel claims to represent them.  Proposed subclasses in a single complaint would easily
17 solve this issue.  *Takeda v. Turbodyne Techs., Inc.,* 67 F. Supp. 2d 1129, 1133 (C.D. Cal. 1999)
18 ("Absent class members will best be served by consolidation because they will have just one case
19 to monitor as it proceeds through litigation."); *see also Diaz v. First Am. Home Buyers Protection*
20 *Co*., 2014 WL 12696519, at *2 (S.D. Cal. Sept. 25, 2014) ("Consolidation . . . reduces the
21 confusion and delay that result from prosecuting related class action cases separately.").
22 "[A]llowing the [putative] class members to have their rights determined by one action will be less
23 confusing for them, will be more efficient . . . and will ensure that conflicting decisions do not
24 arise." *Alvarez*, 2016 WL 11751961, at *5.  As this Court noted, "[c]lasses, to the extent they are
25 different—and I think the differences are not overwhelming by any means—can be dealt with,
26 with subclasses or individual classes or some structure for that."  10.20.22 Hr. Tr. at 8:13-16.
27
28

Against this backdrop, the only explanation for Plaintiffs' division of complaints is that they believe it will satisfy their group's own leadership issues. For instance, while the *Braxton* lawyers now insist this is "the ***only*** path that advances judicial efficiency without prejudicing Plaintiffs" [page 10, *supra* (emphasis added)], they argued the opposite at the hearing – offering to represent all racial groups in one complaint divided by product [10.20.22 Hr. Tr. at 24:20-22; 29:20-30:3 ("I will -- I believe -- I agree with everything Mr. Crump said, but -- and I was here to solve the problems and the wealth gap that was created by Wells Fargo's actions with respect to refinance of Black applicants; but I'm a kid from San Diego, California that had a lot of Mexican friends and Latino friends growing up. I want to fix them too. … You give us all minorities refinance, I will gladly accept that.")]. It is obvious that this submission is their attempt to assuage the various interests of counsel they have had to debate during the three weeks and six days they took to agree on this proposal.[4] But this is a ***consolidation*** proposal, and consolidation is about increasing efficiency and decreasing class member confusion. *See Diaz*, 2014 WL 12696519, at *2 ("Consolidation further facilitates discovery, conserves judicial resources, and reduces the confusion and delay that result from prosecuting related class action cases separately."). The way to deal with ***leadership*** issues is through the interim counsel process, which the parties should address once consolidation is decided.

Because Plaintiffs' proposal will not resolve inefficiencies but create more confusion and duplicative discovery, Wells Fargo proposes (1) *one* consolidated complaint, with subclasses for the various groups as Plaintiffs see fit to allege (2) consolidated discovery and (3) consolidated motion practice to promote judicial efficiency and avoid confusion.

---

[4] Segregating minority groups with no evidence or claims of differences in underwriting would also be prejudicial to Wells Fargo. It would imply that there are differences in underwriting that simply do not exist. Simply put, and as set forth in the main motion and exhibits, the underwriting process, and policies that guide the process, is the same for all borrowers. Dkt. 63 (Motion to Consolidate) at 15; Dkt. 84 at 6.

| | | |
|---|---|---|
| DATED: November 18, 2022 | | ELLIS GEORGE CIPOLLONE O'BRIEN ANNAGUEY LLP |

By: _____*/s/ Dennis S. Ellis*_____
    Dennis S. Ellis (SBN 178196)
    Trent B. Copeland (SBN 136890)
    Ryan Q. Keech (SBN 280306)
    Noah S. Helpern (SBN 254023)
    Milin Chun (SBN 262674)
    Stefan Bogdanovich (SBN 324525)
    2121 Avenue of the Stars, 30th Floor
    Los Angeles, California 90067
    Telephone: (310) 274-7100
    Facsimile: (310) 275-5697
    Email:  dellis@egcfirm.com
           tcopeland@egcfirm.com
           rkeech@egcfirm.com
           nhelpern@egcfirm.com
           mchun@egcfirm.com
           sbogdanovich@egcfirm.com

ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP
    Joseph N. Kiefer (admitted *pro hac vice*) (NY Bar No. 5345657)
    157 West 57th Street, Suite 28 S
    New York, New York 10019
    Telephone: (212) 413-2600
    Facsimile: (212) 413-2629
    Email:  jkiefer@egcfirm.com

Attorneys for Plaintiffs Aaron Braxton, Gia Gray, Bryan Brown, Paul Martin and all others similarly situated

DATED: November 18, 2022    FRANK, SIMS & STOLPER LLP
    Jason M. Frank (SBN 190957)
    Scott H. Sims (SBN 234148)
    Andrew D. Stolper (SBN 205462)

By: _____*/s/ Jason Frank*_____
    Jason Frank

Attorneys for Plaintiffs Aaron Braxton, Gia Gray, Bryan Brown, Paul Martin and all others similarly situated

| | |
|---|---|
| DATED:  November 18, 2022 | BEN CRUMP, PLLC<br>  Benjamin Crump<br>  Nabeha Shaer<br><br>By:  _____*/s/ Benjamin Crump*_____<br>  Benjamin Crump<br>  Nabeha Shaer<br>Attorneys for Plaintiff Christopher Williams, et al. |
| DATED:  November 18, 2022 | STOWELL & FRIEDMAN, LTD.<br>  Linda D. Fiedman<br>  Suzanne E. Bish<br><br>By:  _____*/s/ Suzanne E. Bish*_____<br>  Linda D. Fiedman<br>  Suzanne E. Bish<br>Attorneys for Plaintiff Ifeoma Ebo |
| DATED:  November 18, 2022 | MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PPLC<br>  Alex R. Straus<br><br>By:  _____*/s/ Alex R. Strauss*_____<br>  Alex R. Straus<br>Attorneys for Plaintiffs Alfred Pope and Terah Kykendall-Montoya |
| DATED:  November 18, 2022 | EVANGELISTA WORLEY, LLC<br>  James M. Evangelista (admitted *pro hac vice*)<br>By:  _____*/s/ James M. Evangelista*_____<br>  James M. Evangelista<br>  500 Sugar Mill Road, Ste. 245A<br>  Atlanta, GA 30350<br>  Telephone:  (404) 205-8400<br>  Email:  jim@ewlawllc.com<br>Attorneys for Plaintiffs Alfred Pope |

| | | |
|---|---|---|
| DATED: November 18, 2022 | | DANN LAW FIRM<br> Marc E. Dann<br> Marita Rameriez (pro hac anticipated) |

By:   */s/ Marc E. Dann*
    Marc E. Dann
Attorneys for Plaintiff Ifeoma Ebo and Terah Kuykendall-Montoya

DATED: November 18, 2022   ZIMMERMAN LAW OFFICES, P.C.
                 Thomas A. Zimmerman, Jr.

By:   */s/ Thomas A. Zimmerman, Jr.*
    Thomas A. Zimmerman, Jr.
Attorneys for Plaintiff Ifeoma Ebo and Terah Kuykendall-Montoya

DATED: November 18, 2022   GUFTAFSON GLUEK PLLC
                 Abou Amara, Jr.
                 Amanda M. Williams

By:   */s/ Amanda Williams*
    Abou Amara, Jr.
    Amanda M. Williams
Attorneys for Plaintiffs Elretha Perkins, Laronica Johnson

DATED: November 18, 2022   MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PPLC
                 Jennifer S. Czeisler

By:   */s/ Jennifer S. Czeisler*
    Jennifer S. Czeisler
Attorneys for Plaintiffs Alfred Pope, Winfred Thomas, Michele Sims, and Terah Kuykendall-Montoya

DATED: November 18, 2022          WINSTON & STRAWN
                                                          Amanda L. Groves
                                                          Kobi Kennedy Brinson

                                                  By:    ___/s/ Amanda L. Groves___
                                                          Amanda L. Groves
                                                          Kobi Kennedy Brinson
                                                  Attorneys for Defendant Wells Fargo

DATED: November 18, 2022          MCGUIREWOODS LLP
                                                          Alicia A. Baiardo
                                                          Ava Lias-Booker

                                                  By:    ___/s/ Alicia A. Baiardo___
                                                          Alicia A. Baiardo
                                                          Ava Lias-Booker
                                                  Attorneys for Defendant Wells Fargo

**ATTORNEY ATTESTATION**

Pursuant to Civil L.R. 5-1(h)(3), I hereby attest that concurrence in the filing of this document has been obtained from each of the other signatories.

*/s/Dennis S. Ellis*
Dennis S. Ellis