UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE WELLS FARGO MORTGAGE DISCRIMINATION LITIGATION | Master File No. 3:22-cv-00990-JD<br><br>**ORDER RE CONSOLIDATION AND INTERIM LEAD COUNSEL** |

Plaintiffs in six putative class actions have sued defendants Wells Fargo Bank, N.A., Wells Fargo & Co., and Wells Fargo Home Mortgage, Inc. (Wells Fargo) on allegations of discrimination with respect to residential mortgage and refinance practices. Each putative class action brings claims against Wells Fargo for violations of the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.*, and the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, among other related federal and state law claims that vary by complaint. *See Williams v. Wells Fargo Bank, N.A.*, No. 3:22-cv-00990-JD, Dkt. No. 22; *Braxton v. Wells Fargo Bank, N.A.*, No. 3:22-cv-01748-JD, Dkt. No. 14; *Pope v. Wells Fargo Bank, N.A.*, No. 3:22-cv-01793-JD, Dkt. No. 6; *Thomas v. Wells Fargo & Co.*, No. 3:22-cv-01931-JD, Dkt. No. 1; *Ebo v. Wells Fargo Bank, N.A.*, No. 3:22-cv-02535-JD, Dkt. No. 42; *Perkins v. Wells Fargo, N.A.*, No. 3:22-cv-03455-JD, Dkt. No. 1.

The first case to be filed, *Williams*, seeks to represent a class of "Black and/or African American applicants or borrowers who applied for, received, or maintained credit from [Wells Fargo] related to residential real estate and who were subjected to discrimination by [Wells Fargo] due to their race." *Williams*, Dkt. No. 22 ¶ 44. The second case, *Braxton*, focuses on discrimination in refinance transactions. *See Braxton*, Dkt. No. 14 ¶ 146. The other cases also allege discriminatory practices against racial minorities for home loan origination and/or refinance. *See, e.g.*, *Pope*, Dkt. No. 6 ¶ 34; *Perkins*, Dkt. No. 1 ¶ 56.

Wells Fargo proposed a consolidation of the cases on the grounds that they are "predicated on the same basic common questions of law and fact: namely, whether plaintiffs can prove disparate treatment . . . or disparate impact . . . and if they can, whether that conduct violates federal or California law." *Williams*, Dkt. No. 63 at 1. Some plaintiffs opposed Wells Fargo's motion to consolidate, *see Williams*, Dkt. Nos. 70, 82, some indicated their support for Wells Fargo's motion, *see Perkins*, Dkt. No. 38, and others made their own proposals for consolidation, *see, e.g.*, *Pope*, Dkt. No. 28. The Court held a hearing to discuss the matter, which confirmed that consolidation would serve judicial efficiency and promote a fair resolution of this litigation. *Williams*, Dkt. No. 93. Plaintiffs were directed "to meet and confer with each other, and then with Wells Fargo, to discuss how to consolidate these cases." *Id.* at 2.

Plaintiffs now jointly propose filing two complaints. The first would be "on behalf of a class of Black applicants and borrowers, including origination and refinance mortgages." *Williams*, Dkt. No. 101 at 7. The second would be "on behalf of a class of non-Black protected minorities, including both loan origination and refinance applicants." *Id.* They justify this two-complaint approach by pointing to "the extent of discrimination suffered by Black applicants and the bias specific to Black applicants." *Id.* at 8. Wells Fargo opposes plaintiffs' proposal, and suggests that there be one consolidated complaint "with subclasses for the various groups as Plaintiffs see fit to allege," as well as "consolidated discovery" and "consolidated motion practice." *Id.* at 13.

The cases will be consolidated into a single action with one amended complaint. The reasons for this are straightforward. All of the complaints allege the same theory, namely that Wells Fargo discriminated against non-white customers with respect to residential mortgages and refinances. It may be, as plaintiffs suggest, that some plaintiffs experienced more discriminatory conduct and impacts than others, but that is a difference of degree and not substance. The record indicates that the documentary evidence and witnesses will likely be the same for all plaintiffs. The legal claims are basically the same. Differences among plaintiffs in treatment and impact can be readily managed in a variety of ways at class certification and other proceedings. If it turns out that the interests between plaintiff groups diverge so much that "independent representation" is

warranted, *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999), the matter may be raised with the Court as appropriate.

Consequently, these cases are ordered to be consolidated into a single action as follows.

**CONSOLIDATION OF RELATED CASES**

1. This order applies to these cases:

    a. 3:22-cv-00990-JD

    b. 3:22-cv-01748-JD

    c. 3:22-cv-01793-JD

    d. 3:22-cv-01931-JD

    e. 3:22-cv-02535-JD

    f. 3:22-cv-03455-JD

2. Pursuant to Federal Rule of Civil Procedure 42(a), these cases are consolidated into Civil Action No. 22-990 for all pretrial proceedings before this Court. All filings and submissions from here on will be captioned: "*In re Wells Fargo Mortgage Discrimination Litigation*" under the 3:22-cv-00990-JD case number. Plaintiffs will file one amended, consolidated complaint.

3. All other underlying cases will be administratively closed by the Clerk of Court.

4. If a related action is subsequently filed in or transferred to this District, it will be consolidated into this action for all pretrial purposes. This order will apply to every new related action, without further order of the Court. A party that objects to consolidation, or to any other provision of this order, may file an application for relief within 14 days after an order relating cases is filed.

5. This order is entered without prejudice to the rights of any party to apply for severance of any claim or action, for good cause shown.

6. Pretrial consolidation does not mean that the actions will necessarily be consolidated for trial. That issue will be decided later in the case. It also does not have the effect of making any entity a party in any action in which he, she, or it has not been named, served, or added in accordance with the Federal Rules of Civil Procedure.

## MASTER DOCKET

7. The docket in Civil Action No. 22-990 will constitute the master docket, and the file in that action will be the master file for every action in the consolidated action.

8. When a pleading applies to some, but not all, of the member actions, the document must list the case number for each individual action to which the document applies immediately under the master caption. Any document not identified in that way will be presumed to apply to all member cases.

9. The parties must promptly file a motion to relate pursuant to Civil Local Rule 3-12 whenever a case that should be consolidated into this action is filed in, or transferred to, this District. If the Court determines that the case is related, the Clerk of the Court is requested to:

    a. file a copy of this order in the separate file for such action;

    b. serve on plaintiff's counsel in the new case a copy of this order;

    c. direct that this order be served upon defendants in the new case; and

    d. make the appropriate entry in the master docket sheet (No. 3:22-cv-00990-JD).

10. If there are any disputes about whether a new action should be related to this consolidated action, they must promptly be brought to the Court's attention or any objection may be deemed waived.

## INTERIM LEAD COUNSEL

11. Pursuant to Federal Rule of Civil Procedure 23(g)(3), several law firms have separately requested appointment as interim lead counsel to represent the putative class of plaintiffs. *Williams*, Dkt. No. 78; *Braxton*, Dkt. No. 45; *Pope*, Dkt. No. 29; *Perkins*, Dkt. No. 39. Wells Fargo filed an opposition to the appointment of interim lead counsel. *Williams*, Dkt. No. 80 at 1.

12. The Court declines to appoint interim lead counsel pending further proceedings. Interim counsel is warranted for this consolidated action, but the current applications did not have an opportunity to address who that should be now that consolidation will be into a single case. Plaintiffs may file a renewed proposal.

13. The renewed proposal should incorporate the following guidelines. The Court's goal is that any party seeking fees at the end of this litigation will be able to present to the Court clear and definitive records that were prepared as the fees and costs were incurred. A prolonged forensic accounting exercise or mini-trial on fees and costs is to be avoided. To that end:

   a. At the close of each calendar month, interim lead counsel will make sure that all time has been entered by all timekeepers in final form. By 14 days after each month's end, interim lead counsel will ensure that a bill for the prior month is finalized, reflecting lead counsel's review of the billing records and any write-downs or write-offs by interim lead counsel for inefficiencies, duplication of effort, misjudgments in staffing, and the like. These final bills will be kept by lead counsel for each month, and may not be altered. Only these records, prepared contemporaneously with the expenditures, may be used for a fees and costs motion.

   b. Time will be recorded in one-tenths of an hour.

   c. Block-billing time records are not permitted. Time must instead be recorded by task. For example, an attorney may not record "7.8 hours" for "work on motion to dismiss opposition." Instead, the attorney must break out the 7.8 hours specifying the amount of time spent for each specific task performed, e.g., "review and analyze motion to dismiss brief (1.3); team meeting regarding arguments for opposition (.8); legal research re X argument (3.3); draft X section of opposition brief (2.4)."

   d. Interim lead counsel are free to make staffing decisions as they deem appropriate, but the Court will not permit fees to be recovered for multiple attorneys performing duplicative work. For example, barring an unusual circumstance, only one lawyer should attend a deposition when defending it, and no more than two lawyers should attend when taking a deposition. The Court will not permit the recovery of fees for every attorney from every firm to review each discovery request and response, motion, letter, e-mail, etc. in the

5

case. While each attorney should stay informed about the litigation, only the attorneys designated by interim lead counsel to review or summarize pleadings, orders, and communications are working for the common benefit of the putative class, and only their time will be considered for possible payment at the conclusion of this case.

e. The Court rarely finds that designation of multiple committees, *e.g.*, separate discovery, "liaison," "executive" committees, and so on, is useful or in the best interests of the putative class. A proposed committee or similar structure should be supported by good reasons.

f. Air travel of less than six hours should be in coach class. Travel exceeding six hours of flight time may be booked in business class. In all cases, flights should be booked at the lowest available fare.

g. When overnight travel is necessary, counsel should be mindful in selecting reasonable hotel accommodations and restaurants. Per diem expenses for travel days should not exceed $125 per person exclusive of lodging and transportation.

h. Failure to adhere to these guidelines -- or the spirit animating them -- will result in the exclusion of consideration for the relevant fee or cost request.

14. A renewed application for appointment of interim lead counsel must be filed by February 13, 2023. Wells Fargo may file a response by February 20, 2023. No other party may file an opposition without the Court's prior approval. The Court will set a date for the filing of the consolidated complaint after the appointment of interim lead counsel.

**IT IS SO ORDERED.**

Dated: January 18, 2023

JAMES DONATO
United States District Judge