**BEN CRUMP, PLLC**
BENJAMIN L. CRUMP (Appearing pro hac vice)
NABEHA SHAER (Appearing pro hac vice)
633 Pennsylvania Avenue Northwest, Floor 2
Washington D.C. 20004
(800) 713-1222
court@bencrump.com

**STOWELL & FRIEDMAN LTD.**
LINDA D. FRIEDMAN (Appearing pro hac vice)
SUZANNE E. BISH (Appearing pro hac vice)
303 W. Madison St., Ste. 2600
Chicago, Illinois 60606
(312) 431-0888
Lfriedman@sfltd.com

**SANI LAW, APC**
SAM SANI (SBN 2733993) (Local Counsel)
595 E. Colorado Blvd., Ste. 522
Pasadena, CA 91101
(310) 935-0405
ssani@sanilawfirm.com

*Attorneys for Plaintiffs Williams, Albury, Simmons, individually
and on behalf of all others similarly situated*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re Wells Fargo Mortgage Discrimination Litigation* | CASE NO: 3:22-cv-0990-JD <br><br> **MOTION FOR APPOINTMENT AS INTERIM LEAD COUNSEL** <br><br> Hearing Date: March 23, 2023 <br> Time: 10:00 AM <br> Location: Courtroom 11, Phillip Burton Federal Building & U.S. Courthouse, 450 Golden Gate Ave., San Francisco, CA 94102 <br> **Accompanying Papers** <br> 1. Notice of Motion <br> 2. Memo. In Support of Motion <br> 3. Decls. Of Linda Friedman, Benjamin Crump, Christopher Williams, and Cathy Bender <br> 4. [Proposed] Order |

1

## NOTICE OF MOTION AND MOTION

2       PLEASE TAKE NOTICE that on March 23, 2023, Plaintiffs Christopher Williams, Sam

3   Albury, and Shaia Beckwith Simmons ("Plaintiffs"), will move the Court pursuant to the Court's

4   January 18 order (Dkt. 102) for appointment as interim lead counsel for a putative class

5   consisting of Black and/or African American and minority applicants or borrowers who applied

6   for, received, or maintained credit from Defendants Wells Fargo Bank and Wells Fargo & Co.

7   (collectively "Defendants" or "Wells Fargo") related to residential real estate, including

8   refinanced mortgages, and who were subjected to discrimination by Defendants due to their race.

9       Pursuant to Rule 23(g)(3) of the Federal Rules of Civil Procedure, Plaintiffs move for the

10  appointment of Benjamin Crump of Ben Crump, PLLC, and Linda D. Friedman of Stowell &

11  Friedman Ltd. to serve as interim lead counsel on behalf of the Putative Class.

12      Plaintiffs' motion is based on this notice, the memorandum of points and authorities

13  listed in their *Memorandum In Support Of Williams Counsel's Application For Appointment As*

14  *Interim Lead Counsel* that follows, the accompanying Declarations of Linda D. Friedman,

15  Benjamin L. Crump, Cathy Bender, and named Plaintiff and putative class representative

16  Christopher Williams, the proposed order, the pleadings on file herein, and such other matters as

17  the Court may consider.

18      Plaintiffs previously filed their Motion on September 1, 2022 (Dkt. 79), along with an

19  accompanying memorandum points and authorities brief.

20

21                                          Respectfully submitted,
                                            BEN CRUMP, PLLC

22

23                                          By: */s/ Benjamin Crump*
                                            BENJAMIN CRUMP (Appearing pro hac vice)

24                                          633 Pennsylvania Avenue Northwest, Fl. 2
                                            Washington D.C. 20004

25                                          (800) 713-1222
                                            court@bencrump.com

26

27                                          STOWELL & FRIEDMAN, LTD.

28                                          By: */s/ Linda D. Friedman*

-1-

LINDA D. FRIEDMAN (Appearing pro hac vice)
SUZANNE E. BISH (Appearing pro hac vice)
303 W. Madison St., Ste. 2600
Chicago, IL 60606
(312) 431-0888
Lfriedman@sfltd.com

Attestation under N.D. Cal. L.R. 5-1: the ECF filer of this document attests that all of the other signatories have concurred in the filing of the document, which shall serve in lieu of their signatures on the document.

SANI LAW, APC

By: _/s/ Sam Sani_____
          SAM SANI (local counsel)
595 E. Colorado Blvd., Ste. 522
Pasadena, CA 91101
(310) 935-0405
ssani@sanilawfirm.com

*Attorneys for Plaintiffs Williams, Albury, Simmons, individually and on behalf of all others similarly situated*

**BEN CRUMP, PLLC**
BENJAMIN L. CRUMP (Appearing pro hac vice)
NABEHA SHAER (Appearing pro hac vice)
633 Pennsylvania Avenue Northwest, Floor 2
Washington D.C. 20004
(800) 713-1222
court@bencrump.com

**STOWELL & FRIEDMAN LTD.**
LINDA D. FRIEDMAN (Appearing pro hac vice)
SUZANNE E. BISH (Appearing pro hac vice)
303 W. Madison St., Ste. 2600
Chicago, Illinois 60606
(312) 431-0888
Lfriedman@sfltd.com

**SANI LAW, APC**
SAM SANI (SBN 2733993) (Local Counsel)
595 E. Colorado Blvd., Ste. 522
Pasadena, CA 91101
(310) 935-0405
ssani@sanilawfirm.com

*Attorneys for Plaintiffs Williams, Albury, Simmons, individually
and on behalf of all others similarly situated*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| *In re Wells Fargo Mortgage Discrimination Litigation* | CASE NO: 3:22-cv-0990-JD<br><br>**MEMORANDUM IN SUPPORT OF *WILLIAMS* COUNSEL'S RENEWED MOTION FOR APPOINTMENT AS INTERIM LEAD COUNSEL** |

# TABLE OF CONTENTS

I.   RELEVANT BACKGROUND ..................................................................................1

II.   ARGUMENT ..........................................................................................................4

   A.   THE FACTORS GOVERNING APPOINTMENT OF INTERIM COUNSEL FAVOR *WILLIAMS*'S COUNSEL ..................................................................................4

     1.   *Williams* Counsel Have Done an Enormous Amount of Work to Identify and Investigate the Potential Claims in this Action ....................................................................6

     2.   *Williams* Counsel Are Plaintiffs Civil Rights Lawyers Who Have Devoted Their Careers to Successfully Pursuing the Types of Claims at Issue Here ...........................6

     3.   *Williams* Counsel Have Excellent Knowledge of the Law .........................................1212

     4.   *Williams* Counsel Have, and Will, Invest the Necessary Resources..............................13

     5.   Other Factors ...............................................................................................................14

     6.   The Court Is Appointing Interim Lead Counsel............................................................14

III.   CONCLUSION......................................................................................................15

1

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Biondo v. City of Chicago*, 382 F.3d 680 (7th Cir. 2004) ................................................... 7

*Bland et al. v. Edward D. Jones & Co., L.P., et al.*, 18-cv-3673 ........................................ 7

*Cadena v. American Honda Motor Co.*, No. 20-cv-0511, 2020 WL 3107798 (C.D. Cal. June 9, 2020) .......................................................................................................... 12

*Case v. Merlin Ents. Grp. U.S. Holdings Inc.*, No. 20-cv-01049, 2021 WL 1195813 (S.D. Cal. Mar. 30, 2021) ...................................................................................................... 6

*Creighton v. MetLife*, No. 15-cv-8321 (S.D.N.Y.) ............................................................ 7

*Daly v. W. Monroe Partners, Inc.*, No. 21-cv-6805, 2022 WL 2159843 (N.D. Ill. June 15, 2022) 5

*Harris v. Amgen, Inc.*, No. CV 07-5442 PSG (PLAx), 2009 U.S. Dist. LEXIS 143153 (C.D. Cal. Oct. 13, 2009) ...................................................................................................... 12

*In re Apple Inc. Shareholder Derivative Litig.*, No. 19-cv-05153, 2020 WL 3507426 (N.D. Cal. June 29, 2020) ...................................................................................................... 5

*In re Stubhub Refund Litig.*, No. 20-md-02951, 2020 WL 8669823 (N.D. Cal. Nov. 18, 2020) . 14

*Lowery v. Spotify USA, Inc.*, No. 15-cv-09929, 2016 WL 6818756 (C.D. Cal. May 23, 2016) ... 12

*Martens v. Smith Barney, Inc.*, 181 F.R.D. 243 (S.D.N.Y. 1998) ...................................... 7

*Senegal v. JPMorgan Chase Bank, N.A.*, No. 18-cv-6006 (N.D. Ill.) .............................. 7

*Slaughter v. Wells Fargo*, No. 13-cv-6368 (N.D. Ill.) ...................................................... 7

*Smallman v. MGM Resorts Int'l*, No. 2:20-cv-00376, 2021 WL 326135 (D. Nev. Feb. 1, 2021 ... 4

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ..................................................... 5

*Xu v. FibroGen, Inc.*, No. 21-cv-02623, 2021 WL 3861454 (N.D. Cal. Aug. 30, 2021) ........... 14

**Rules**                                                                                              **Page**

FED. R. CIV. P. 23(g)(1)(A ................................................................................................... 4

FED. R. CIV. P. 23(g)(1)(B ................................................................................................... 4

FED. R. CIV. P. 23(g)(2) ...................................................................................................... 4

Before the Court are the requests to serve as interim lead counsel of this consolidated action challenging Wells Fargo's home lending practices as racially discriminatory. While the attorneys competing for lead counsel undoubtedly possess impressive records in defense or class action mass tort litigation, other than Linda D. Friedman of Stowell & Friedman, Ltd. and Benjamin L. Crump of Ben Crump Law ("BCL") (collectively, "*Williams* Counsel"), none have more than minimal experience successfully prosecuting racial discrimination class action lawsuits. Because this is a racial discrimination lawsuit, the interests of the class members are best served by lead counsel with substantial experience and success prosecuting racial discrimination class actions and who were selected by their clients based on their records and career-long civil rights commitment. (Williams Decl., ¶ 4). This subject matter expertise is not only necessary for class certification and trial but also essential to crafting meaningful programmatic relief. *Williams* Counsel offer decades of experience successfully prosecuting race discrimination cases, including class actions, and have achieved historic results and meaningful reforms on behalf of their clients, including against Wells Fargo itself. (Friedman Decl., ¶¶ 5–16; Crump Decl., ¶¶ 9–12; Williams Decl., ¶ 8; Bender Decl., ¶¶ 3-12). For this reason and others set forth below, *Williams* Counsel distinguish themselves and request that the Court appoint Ben Crump and Linda Friedman as interim lead counsel, to be supported by the strengths of the other lawyers.

## I.    RELEVANT BACKGROUND

On February 17, 2022, after an exhaustive investigation and fact-gathering process that uncovered, among other things, Wells Fargo's use of a discriminatory "unique scoring model" to evaluate credit applications, Chris Williams and *Williams* Counsel filed a class-action complaint challenging Wells Fargo's racially discriminatory lending practices. (*Williams v. Wells Fargo, N.A.*, 22-cv-00990, Dkt. 1; Friedman Decl., ¶¶ 28–30; Crump Decl., ¶ 15–17; Williams Decl., ¶ 5).

As Wells Fargo correctly understood and represented to this Court, the *Williams* lawsuit, by its terms, included potential borrowers who applied for refinancing mortgages, which are "credit related to residential real estate." (Dkt. 63 at 7–9; *Braxton v. Wells Fargo*, 3:22-cv-01748,

MEMO. IN SUPP. OF MOT. FOR
APPT. AS INTER. LEAD COUNSEL
3:22-cv-0990-JD

Dkt. 39, at 7–9.) After filing, *Williams* Counsel continued its exhaustive investigation by interviewing over 200 class members across the United States and engaging in a thorough statistical analysis of Wells Fargo's own lending data provided to and published by the federal government. (Dkt. 1, at ¶ 30; Friedman Decl., ¶ 30; Crump Decl., ¶ 15). The *Williams* lawsuit was reported in various newspapers and trade industry publications.

Almost one month after the *Williams* lawsuit was filed, on March 10, 2022, Bloomberg published an exposé focused on Wells Fargo's industry-worst racial disparity in approving refinanced mortgages for Black borrowers. The article described Wells Fargo's discriminatory refinancing practices, revealing that Wells Fargo approved only 47% of Black borrowers' refinancing applications, as compared to 72% of white borrowers. Shawn Donnan et al., *Wells Fargo Rejected Half Its Black Applicants in Mortgage Refinancing Boom*, BLOOMBERG (Mar. 10, 2022), https://www.bloomberg.com/graphics/2022-wells-fargo-black-home-loan-refinancing. A cascade of new lawsuits followed shortly after the Bloomberg article was published, relying almost entirely on the article and allegations in the *Williams* lawsuit. *See Braxton v. Wells Fargo Bank, N.A.*, 22-cv-01748 (filed Mar. 18, 2022); *Pope v. Wells Fargo Bank, N.A.*, 22-cv-01793 (filed Mar. 21, 2022); *Ebo v. Wells Fargo Bank, N.A.*, 22-cv-02535 (filed Mar. 26, 2022); *Perkins v. Wells Fargo, N.A.*, 22-cv-03455 (filed June 10, 2022). The law firms filing the new lawsuits drew their "factual" support from the Bloomberg article, which, for example, was cited well over a dozen times in *Braxton*. (*See Braxton* Compl., Dkt. 1, ¶¶ 5-11; 112-119).

On April 14, 2022, *Williams* Counsel filed an amended complaint to expand on their allegations based on their ongoing investigation. (*See Williams v. Wells Fargo, N.A.*, 22-cv-00990, Dkt. 22) The amended complaint added two new class representatives and presented the results of Williams's own thorough statistical analysis of the disparities between Black and white borrowers and applicants for all kinds of residential real estate credit at Wells Fargo. (*Id.* at ¶¶ 8, 10, 18-21, 24-25, 61, 66, 72) Relying on the statistical analysis *Williams* Counsel performed with their experts—and not simply parroting the Bloomberg article, the amended complaint presented stark and statistically significant disparities between Black and white applicants for original and refinance mortgages. *Williams* alleged: "Wells Fargo approved 33.7% of refinancing applications

MEMO. IN SUPP. OF MOT. FOR
APPT. AS INTER. LEAD COUNSEL
3:22-cv-0990-JD

from Black and/or African American applicants, compared with 49.1% from white applicants" and denied Black refinancing applications outright 36.1% of the time, versus 20.3% of the time for white borrowers, disparities statistically significant at over 31 standard deviations. (*Id.* at ¶ 19.) Similarly, Wells Fargo approved approximately 67% of white borrowers' mortgage applications, compared to only 51% of Black borrowers. (*Id.* at ¶ 11.) *Williams* also alleged that Black refinancing borrowers were charged higher interest rates and higher fees and costs, at a statistically significant level. (*Id.* at ¶ 13, 14, 20.)

Recognizing that the new lawsuits were subsumed within the first-filed and more expansive *Williams* lawsuit, Wells Fargo moved to deem them "related" to the *Williams* lawsuit under Local Rule 3-12, and this Court granted that motion. In addition, Wells Fargo moved to dismiss *Braxton* under the "first to file" rule because *Braxton* was filed after the *Williams* lawsuit. (*See Braxton*, Dkt. 39.) The briefing on that motion was not served on *Williams* Counsel, and they did not have an opportunity to weigh in on the issues presented. While the motion was styled a motion to "dismiss or stay," the briefing focused almost entirely on whether the later-filed matters should be dismissed in their entirety. (*Id.* at 5–9) In a brief order, this Court denied the motion to dismiss, writing that the "cases are sufficiently similar for purposes of relation under the District's local rules, but not so similar that *Braxton* is subsumed in *Williams*." (*Braxton*, Dkt. 44).

On July 29, 2022, *Braxton* Counsel filed a Motion requesting that the Court break off part of the *Williams* lawsuit and appoint *Braxton* Counsel as lead counsel of a smaller putative refinancing mortgage class. (*Braxton*, Dkt. 45). On August 26, 2022, *Williams* Counsel and other attorneys in the follow-on lawsuits filed their motions for appointment as interim class counsel. The Court held a hearing on October 20, 2022 regarding consolidation and appointment of interim lead counsel. At the Court's request, the parties thereafter submitted a proposal for the case to proceed.  Plaintiffs in the various cases proposed that the case be divided into two cases to coordinate common discovery and other matters for: (1)  Black applicants and borrowers to be represented by *Williams* and *Braxton* Counsel; and (2) other minorities to be represented by *Perkins* Counsel (Gustafson Gluek PLLC, Scott Hirsch Law Group PLLC) and *Ebo* Counsel

MEMO. IN SUPP. OF MOT. FOR
APPT. AS INTER. LEAD COUNSEL
3:22-cv-0990-JD

1  (Dann Law Firm, Milberg Coleman Bryson Phillips Grossman, PLLC, Zimmerman Law Offices,

2  P.C.). Ultimately, on January 18, 2023, the Court issued an order rejecting *Braxton* Counsel's

3  earlier proposal and the proposal for two separate complaints. The Court explained that it was

4  not ruling on whether subclasses would be appropriate to address any potential conflicts. (Dkt.

5  102 at 2.) The Court requested briefing for interim lead counsel "now that consolidation will be

6  into a single case." (Dkt. 102 at 4.)

7  **II.    ARGUMENT**

8      **A.  THE FACTORS GOVERNING APPOINTMENT OF INTERIM COUNSEL**
        **FAVOR *WILLIAMS*'S COUNSEL**
9

10        The factors governing appointment of class counsel plainly establish that *Williams*

11  Counsel should be appointed as interim lead counsel of this consolidated race discrimination

12  class action.

13        Federal Rule of Civil Procedure 23(g)(3) permits courts to "designate interim counsel to

14  act on behalf of a putative class before determining whether to certify the action as a class

15  action." In evaluating potential class counsel, the court "must consider": "(i) the work counsel

16  has done in identifying or investigating potential claims in the action; (ii) counsel's experience in

17  handling class actions, other complex litigation, and the types of claims asserted in the action;

18  (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit

19  to representing the class." *Id.* 23(g)(1). The Court may also "consider any other matter pertinent

20  to counsel's ability to fairly and adequately represent the interests of the class." *Id.*  Where

21  multiple counsel would be adequate, the touchstone of the inquiry is which attorneys would best

22  represent the class: the Court "must appoint the applicant best able to represent the interests of

23  the class." *Id.* 23(g)(2).

24        In addition, as *Braxton* Counsel acknowledged in their initial motion (*Braxton*, Dkt. 45 at

25  8–9, n.4), where the Rule 23(g) factors do not strongly favor any attorney(s) vying for the

26  interim lead counsel position, the first filing attorney should be appointed as lead counsel. *See,*

27  *e.g.*, *Smallman v. MGM Resorts Int'l*, No. 2:20-cv-00376, 2021 WL 326135, at *3 (D. Nev. Feb.

28  1, 2021) (appointing first filing attorney as lead counsel); *In re Apple Inc. Shareholder*

MEMO. IN SUPP. OF MOT. FOR
APPT. AS INTER. LEAD COUNSEL
3:22-cv-0990-JD

*Derivative Litig.*, No. 19-cv-05153, 2020 WL 3507426, at *1–2, n.2 (N.D. Cal. June 29, 2020) (appointing first filing attorney); *Daly v. W. Monroe Partners, Inc.*, No. 21-cv-6805, 2022 WL 2159843, at *2 (N.D. Ill. June 15, 2022) (appointing first filer where later filer "had the advantage of the groundwork laid by [first filer's] counsel, including a filed complaint). Here, *Williams* Counsel were the first to file, and any "tie" should be resolved in their favor.

       *Williams* Counsel anticipate that *Braxton* counsel will assert that *Braxton* was the first-filed notwithstanding the indisputable fact that *Williams* bears a date stamp that is weeks earlier than *Braxton*. To advance this argument, *Braxton* must assert, incorrectly, that the *Williams* initial pleading did not challenge discriminatory practices in refinancing. (Dkt. 104-1 ¶ 3.) In reality, and as Wells Fargo itself acknowledged, the *Williams* complaint included refinancing applicants and was filed weeks before Braxton or anyone else, in February 2022, without the benefit of the Bloomberg exposé. Only after the Bloomberg exposé was published did Braxton file its narrower case. (Dkt. 63, at 7–9; *Braxton v. Wells Fargo*, 3:22-cv-01748, Dkt. 39, at 7–9.)

       There is no responsible reason for *Braxton* to argue that the first-filed *Williams* complaint failed to preserve for class members, at the earlier date on the broadest allegations, claims of discrimination in both mortgage origination and refinancing. Indeed, in their papers advocating for consolidation, and at oral argument (10/20/22 Tr., 10:9-11:23), Wells Fargo acknowledged that mortgage applications and refinancing at Wells Fargo are handled using the same centralized processes and procedures, overseen by the same Wells Fargo employees. (Dkt. 84 at 2; Declaration of Peter Strawser, ¶ 4 (Braxton Dkt. 53-1).) Rather than accept that this acknowledgment (consistent with Williams's pre-filing investigation) was helpful to the consolidated class because it provides the "glue holding the alleged reasons for all decisions together," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 352 (2011)—*Braxton* Counsel resisted the concession because it damaged *Braxton's* contrived argument that it was first-filed. (10/20/22 Tr., 21:4-25:3.) *Williams* was pled to address racial discrimination against all Black borrowers who were subjected to Wells Fargo's discriminatory centralized process and practices. Thus, *Williams*, the first-filed complaint, was the proper and most expeditious way to seek relief for the

MEMO. IN SUPP. OF MOT. FOR
APPT. AS INTER. LEAD COUNSEL
3:22-cv-0990-JD

greatest number of victims, and it left no opening for *Braxton* to walk through and claim first-filed status. (10/20/22 Tr., 21:4-25:3.)

### 1. *Williams* Counsel Have Done an Enormous Amount of Work to Identify and Investigate the Potential Claims in this Action

Prior to filing the first complaint, *Williams* Counsel worked tirelessly, along with named plaintiff and original class representative Chris Williams, to investigate and identify the claims and uncovered, among other things, Wells Fargo's discriminatory use of a unique scoring device that favored white borrowers. (Williams Decl. at 5; Friedman Decl., ¶¶ 28–31, 30; Crump Decl., ¶ 15). As part of their investigation, *Williams* Counsel further interviewed more than 200 potential class members regarding Wells Fargo's discriminatory practices and the claims in this action. In addition, *Williams* counsel performed a thorough statistical analysis of publicly available Wells Fargo data, demonstrating that Wells Fargo discriminated against Black applicants in origination and refinance mortgages, and in their terms and conditions; they pled the results of this analysis in the Amended Complaint. (Friedman Decl., ¶¶ 29–30; Crump Decl., ¶ 15; Williams Decl., ¶ 5).

### 2. *Williams* Counsel Are Plaintiffs Civil Rights Lawyers Who Have Devoted Their Careers to Successfully Pursuing the Types of Claims at Issue Here

The factor that most clearly differentiates *Williams* Counsel Ben Crump and Linda Friedman from the other plaintiffs' attorneys is *Williams* Counsel's vast experience in successfully prosecuting "the types of claims asserted in the action." Fed. R. Civ. P. 23(g)(1)(A)(ii).

<u>*Linda D. Friedman*</u>: Linda D. Friedman has devoted her entire 35-plus year career to representing *plaintiffs* in civil rights discrimination claims and achieved extraordinary results, including groundbreaking class-action cases. (Friedman Decl., ¶¶ 5-16; Bender Decl., ¶¶ 3-12).

Though the path to success in class-action race discrimination claims is often strewn with obstacles, Ms. Friedman has an unmatched record prosecuting such claims, regularly obtaining numerous eight-and nine-figure class settlements in discrimination class actions in the financial industry, including the seminal $160 million settlement on behalf of 1,400 Black financial

MEMO. IN SUPP. OF MOT. FOR
APPT. AS INTER. LEAD COUNSEL
3:22-cv-0990-JD

advisors *McReynolds v. Merrill Lynch*. (Friedman Decl., ¶¶ 9–11; Bender Decl., ¶¶ 3–12). *McReynolds* was settled after eight years of litigation and a Seventh Circuit opinion ordering class certification. (Friedman Decl, ¶ 9); *see also McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 492 (7th Cir. 2012). Similarly, *Cremin v. Merrill Lynch* settled with a claims resolution process and $250 million recovery following a 28-hour statistical evidence hearing in which Ms. Friedman was lead counsel and proved a pattern and practice of discrimination against female financial advisors. (Friedman Decl,, at ¶ 8); *see also Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 259 (S.D.N.Y. 1998) (a $150 million settlement on behalf of female financial advisors). Cases brought by Stowell & Friedman routinely top the list of the largest race discrimination class settlements each year, and it has regularly settled class race discrimination cases against financial services firms for eight-figure amounts. (Friedman Decl., ¶ 12); *see Creighton v. MetLife*, No. 15-cv-8321 (S.D.N.Y.) ($32.5 million settlement for financial advisors at MetLife); *Senegal v. JPMorgan Chase Bank, N.A.*, No. 18-cv-6006 (N.D. Ill.) ($24 million settlement for financial advisors at JPMorgan Chase); *Bland et al. v. Edward D. Jones & Co., L.P., et al.*, 18-cv-3673 ($34 million settlement for financial advisors at Edward Jones).

Stowell & Friedman has even obtained secured a major settlement against Defendant Wells Fargo for race discrimination against its financial advisory workforce. *Slaughter v. Wells Fargo*, No. 13-cv-6368 (N.D. Ill.) ($35.5 million settlement).  Over the years, Stowell & Friedman has recovered over a billion dollars for victims of discrimination. (Friedman Decl., ¶¶ 8, 12, 15).

Ms. Friedman is an accomplished trial lawyer who has successfully tried race discrimination class action cases. (Friedman Decl., ¶ 6); *see e.g.*, *Biondo v. City of Chicago*, 382 F.3d 680 (7th Cir. 2004). Retired Chief Judge Holderman (who presided over *Biondo*) explained that Ms. Friedman's ability to analyze complex facts is "as good as any lawyer I know," and "her ability to communicate with the jury stems from the fact that she thinks like an ordinary person sitting in the jury box . . . on a level that is so understandable, so straightforward, and so credible." (Friedman Decl. ¶ 6). He continued, "whenever she comes into my courtroom, I know

MEMO. IN SUPP. OF MOT. FOR
APPT. AS INTER. LEAD COUNSEL
3:22-cv-0990-JD

1    the case will be handled well and her clients will receive the best representation possible." (*Id.*).

2        Ms. Friedman has deep knowledge of the financial industry, having represented clients

3    who work in every area of the industry: sales assistants, financial advisors, compliance

4    personnel, branch managers, operations, bankers, mortgage loan officers, lending managers,

5    investment bankers, capital markets, and high-level executives. (Friedman Decl., ¶ 7; Bender

6    Decl., ¶¶ 3-12). She leverages that understanding to her clients' benefit, working with world-

7    class experts to prepare critical discovery, analyze data, and pursue meaningful relief and reform

8    for the class. (Friedman Decl., ¶¶ 7–8, 14–15).

9        At the core of Ms. Friedman's success—along with legal acumen, wealth of experience,

10   and passion for racial justice—is sheer doggedness. Several of her most dramatic victories came

11   in cases that took many years, sometimes over a decade, to litigate and involved countless

12   setbacks. (Friedman Decl., ¶¶ 6, 8–9; Bender Decl., ¶ 5). Ms. Friedman was praised in the

13   *McReynolds* case, for example, for "snatch[ing] victory from the jaws of apparent defeat by

14   devising an ingenious stratagem that turned [*Wal-Mart v. Dukes*], to the plaintiffs' advantage."

15   (*Id.* at ¶¶ 9–11). At a fairness hearing in an earlier class case following four jury trials Judge

16   Holderman stated "Your lawyers have done an outstanding job. Linda Friedman has really

17   persevered on your behalf, on everyone's behalf in the class, beyond what any ordinary lawyer

18   could do." (*Id.* at ¶ 6).

19       As a result of Ms. Friedman's tireless and creative efforts, generations of plaintiffs and

20   class members have received life-changing relief in civil rights cases. Ms. Friedman has received

21   countless awards, including the National Law Journal's 2018 Elite Trial Lawyers Award for their

22   work on cases involving race discrimination and employee rights. (*Id.* at ¶¶ 3, 22).

23       _Benjamin Crump_: There can be no dispute that Ben Crump has a life-long and

24   unwavering commitment to civil rights litigation and fighting race discrimination. Named as one

25   of the Most Influential People of 2021 by Time Magazine, in its TIME100 feature; Ebony

26   Magazine's Power 100 Most Influential African Americans; The National Trial Lawyers Top

27   100 Lawyers; and the 2014 NNPA Newsmaker of the Year, renowned civil rights and personal

28   injury attorney Ben Crump is referred to as "Black America's Attorney General." (Crump Decl.,

MEMO. IN SUPP. OF MOT. FOR
APPT. AS INTER. LEAD COUNSEL
3:22-cv-0990-JD

¶¶ 3–4). Through his steadfast dedication to justice and service, Mr. Crump has established himself as one of the nation's foremost lawyers and advocates for racial and social justice. His legal acumen has ensured that those marginalized in American society are protected by their nation's contract with its constituency. He is the founder and principal owner of Ben Crump Law. (*Id.* at ¶¶ 1–3, 9).

Among dozens of accomplishments, Mr. Crump has been recognized with the NAACP Thurgood Marshall Award, the SCLC Martin Luther King Servant Leader Award, the American Association for Justice Johnnie Cochran Award, and the Alpha Kappa Alpha Eleanor Roosevelt Medallion for Service. (*Id.* at 4). In 2023, St. Thomas University College of Law, one of the most diverse law schools in the nation, was renamed the Benjamin L. Crump Law School at St. Thomas University, in recognition of Mr. Crump's decades long work supporting civil rights and social justice. (*Id.*).  Mr. Crump possesses deep experience and an unimpeachable track record of success in prosecuting race discrimination claims. The class would, undoubtedly, benefit from having lead counsel with such unprecedented success representing plaintiffs in race discrimination claims.

Mr. Crump has earned this acclaim through his decades of tireless and historic work as a skilled trial attorney who has worked on numerous trials and obtained large and historic results for his clients. Mr. Crump and his firm have been involved in numerous high-profile race discrimination cases, including those concerning Tyre Nichols, Trayvon Martin, Michael Brown, Breonna Taylor, Ahmaud Arbery, George Floyd, Henrietta Lacks, Brianna Grier, the victims of the Buffalo mass shooting, and the Bronx apartment fire. (*Id.* at ¶ 10). Recently, Mr. Crump obtained one of the largest verdicts in history for a virtual trial when he obtained a $411 million verdict for Duane Washington. (*Id.* at ¶ 11).

Mr. Crump also has substantial expertise representing African Americans in discrimination lawsuits against the financial industry. Indeed, Mr. Crump has achieved more than $200 million in confidential settlements in "banking while Black" cases. (*Id.* at ¶ 12). Mr. Crump has significant experience prosecuting civil rights class actions and has achieved remarkable results. For example, Mr. Crump represented residents of Flint, Michigan who were

MEMO. IN SUPP. OF MOT. FOR
APPT. AS INTER. LEAD COUNSEL
3:22-cv-0990-JD

affected by the city's toxic water supply, helping to achieve a landmark $641 million settlement. (*Id.* at ¶ 11).

Mr. Crump has served as lead counsel in several class action lawsuits, including a recent appointment as co-lead counsel in *In re Astroworld Litigation*, No. 2021-79885 (Harris Cty., Tex. [11th Dis.]) to represent those injured at the Astroworld music festival, a significant number of whom are Black or African American. *(Id.* at ¶ 13). Mr. Crump put himself forward to serve as lead counsel because given that so many of the victims were African American, he was in the best position to get the proverbial "pulse" of the Astroworld Plaintiffs' community, provide the Court with necessary updates, and serve as the spokesperson for—and be the face of—the Plaintiffs' litigation team. (*Id.*) Mr. Crump also currently co-counsels with Stowell & Friedman representing Black and African American employees in two pending putative class action employment discrimination lawsuits. *Curley v. Google, LLC*, 22-cv-01735 (N.D. Cal.); *Williams v. State Farm Mutual Automobile Insurance Co.*, No. 20-cv-1121 (N.D. Ill.). Mr. Crump has also been named co-lead counsel in *In Re: Moore et. al. v. Gopher Resource, LLC & Envirofocus Technologies LLC*, No. 21-CA-4494 (Hillsborough Cty. Ct. 2021); In re: Weed, California Fire.

## *The Class Deserves Representation From Unconflicted Plaintiffs' Civil Rights Lawyers*

While other plaintiffs are represented by impressive lawyers, none of them are subject matter experts in pursuing race discrimination claims for plaintiffs. *Braxton* Counsel's biographies contain minimal information about race discrimination cases, and it does not appear they have successfully prosecuted class-action race discrimination cases, let alone achieved the monumental relief for Black clients that *Williams* Counsel have attained. *See Braxton* Motion, Dkt. 60 at 5–6 (highlighting counsel's expertise in "representing international celebrities, cosmetic companies" and "consumer class action defense practice.") Other attorneys practices focus primarily on cases unrelated to discrimination, such as consumer, mass tort, and securities litigation. *See, e.g.*, *Perkins v. Wells Fargo Bank, N.A.*, No. 3:22-cv-3455 (N.D. Cal.), Dkt. 39 at 10; *Pope v. Wells Fargo Bank, N.A.*, 22-cv-01793 (N.D. Cal), Dkt. 29 at 16–22. No other attorneys seeking appointment as lead counsel have, like *Williams* Counsel, devoted their entire professional careers to seeking justice for victims of race discrimination.

MEMO. IN SUPP. OF MOT. FOR
APPT. AS INTER. LEAD COUNSEL
3:22-cv-0990-JD

1        It is especially important that counsel for the class be attorneys who exclusively represent

2   plaintiffs, and not large corporations, to ensure that the class receives the most vigorous and

3   unconflicted representation possible. (Friedman Decl., ¶ 16; Crump Decl., ¶ 6). In seeking to

4   split up the class and be appointed lead counsel, *Braxton* Counsel emphasized their extensive

5   defense-side work, writing that they would proceed cautiously in pursuing claims on behalf of

6   the class because they are aware of the "pitfalls and limitations of their putative plaintiffs'

7   theory." (*Braxton* Motion, Dkt. 60, at 11.) They argued they should be selected as lead class

8   counsel because they chose a narrower theory and declined to seek relief on behalf of Black

9   borrowers or applicants outside of the refinancing context yet now seek to represent a different

10  class.  (*Braxton* Motion, Dkt. 60, at 12.) Unlike counsel whose clients are primarily large

11  corporations, *Williams* Counsel do not need to worry about large corporate clients being upset

12  because they did their jobs too well, obtained a record-breaking settlement, or made good law for

13  plaintiffs. Their interest is in pursuing all possible relief for the class, and combating

14  discrimination wherever it is found—nothing less. (Friedman Decl., ¶ 16; Crump Decl., ¶ 6, 9–

15  10).

16       Relatedly, it does not appear that any other counsel seeking to serve as lead has

17  negotiated or drafted programmatic relief, designed both to rectify discrimination that has

18  already occurred, and to prevent it going forward. This work often continues long after the cases

19  are settled.  (Friedman Decl., ¶¶ 9, 12, 15; Crump Decl., ¶ 10–12; Bender Decl., ¶¶ 8-10).

20  Indeed, in *McReynolds*, despite the settlement being reached nearly 10 years ago, Stowell &

21  Friedman has remained an "active partner with current African American employees and

22  implementing programmatic relief" and are still involved to this date. (Bender Decl., ¶¶ 8-10).

23  For example, during the *McReynolds* fairness hearing, Judge Gettleman commended Stowell &

24  Friedman on the "extraordinary job" the firm did in litigating the case and in negotiating

25  programmatic relief that could serve as "a good model for the entire industry, and it's certainly a

26  good model for our country that recognizes the past vestiges of discrimination are something that

27  we constantly have to be vigilant about combatting and providing appropriate remedies." Bender

28  Decl., ¶ 9).

In cases like this one—where there is an obvious difference in the subject matter expertise of the competing attorneys—courts regularly award the interim lead counsel role to the attorneys who have experience with representing plaintiffs in the types of claims at issue. In *Lowery v. Spotify USA, Inc.*, for example, cited in *Braxton* Counsel's initial motion, a firm with substantial defense-side experience made the same argument as *Braxton* Counsel, arguing their defense-side experience better situated them to prosecute the claims. No. 15-cv-09929, 2016 WL 6818756, at *4 (C.D. Cal. May 23, 2016). The court rejected that argument, concluding that the competing attorneys who had experience pursuing those kinds of claims *for plaintiffs* would be better able to represent the interests of the class. *Id.* Similarly, in *Cadena v. American Honda Motor Co.*, also cited by *Braxton* Counsel in their initial motion, one firm had "significant experience representing plaintiffs in class actions, including class actions involving automotive defects" whereas the other firm could not provide "any instance where they have resolved an automotive defect action on a classwide basis." No. 20-cv-0511, 2020 WL 3107798, at *4 (C.D. Cal. June 9, 2020). While recognizing that both firms were capable, the court elected to appoint the attorneys with subject matter experience because they would be better able to represent the interests of the class. *Id*; *see also Harris v. Amgen, Inc.*, No. 07-cv-5442, 2009 U.S. Dist. LEXIS 143153, at *7 (C.D. Cal. Oct. 13, 2009) (appointing firm that filed first and had more subject matter expertise).

In sum, Ms. Friedman and Mr. Crump —as the attorneys with the most knowledge of and successful experience pursuing race discrimination cases and class actions involving the financial industry—are "best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2).

Ms. Friedman and Mr. Crump also welcome the opportunity to work with any other law firm. As explained in their prior filings and in open court, there may be a need for subclassing with respect to race and national origin. Should that be the case, they would welcome the opportunity to work with other law firms to coordinate discovery and lessen the burden on the Court and Wells Fargo of the consolidated litigation.

### 3. *Williams* Counsel Have Excellent Knowledge of the Law

Further, due to their vast experience prosecuting complex and emotionally sensitive race

discrimination cases, Williams Counsel recognize these cases require a mix of "soft" and "hard" skills that require empathy and experience with the subject matter. To effectively prosecute a class race discrimination claim, counsel must build trust with class members, where class members feel comfortable and heard, and know that their lawyers understand that race discrimination is real, pervasive, and can have devastating effects on the class members' lives. (Friedman Decl., ¶ 32; Crump Decl., ¶ 13; Bender Decl., ¶¶ 7-8). Having dedicated their careers to pursuing racial justice, and having dealt with countless similar cases, *Williams* Counsel can best serve in this role.

Discrimination class actions require analysis of complex data sets and sophisticated work with experts to use statistical evidence to demonstrate intent or disparate impact. *Williams* Counsel has decades of experience conducting such analyses and working with experts to develop proof of discriminatory intent or disparate impact, to successfully prosecute such claims. (Friedman Decl., ¶¶ 14–15, 30). Questions of intent, or the task of isolating the effect of very specific policies and practices, differs markedly from the standard mass tort case, where the primary question is simply: did a defect cause the harm? (Friedman Decl., ¶ 18). *Williams* Counsel have the most experience with the specific kinds of data analyses and expert work required here.

### 4. *Williams* Counsel Have, and Will, Invest the Necessary Resources

As experienced and successful race discrimination and class action lawyers, *Williams* Counsel understand and are prepared to commit the significant resources required to achieve relief for the class. *Williams* Counsel have gone up against and defeated the largest corporations represented by esteemed lawyers from the largest defense firms. They have a track record of investing fully and doing everything that is necessary, over the course of many years, to achieve groundbreaking success and relief for the class. (Friedman Decl., ¶¶ 6–16; Crump Decl., ¶¶ 10–14; Bender Decl., ¶¶ 3-11). *Williams* Counsel also understands, based on their extensive experience litigating race discrimination claims, that good faith, frank discussion with defendants is often the path to an expeditious and substantial recovery for victims of discrimination. *Braxton* Counsel criticized *Williams* Counsel's efforts to engage in preliminary, good-faith discussions

MEMO. IN SUPP. OF MOT. FOR
APPT. AS INTER. LEAD COUNSEL
3:22-cv-0990-JD

with Wells Fargo. (Dkt. 83 at 13). But inviting defendants for an early, educated discussion is part of *Williams* Counsel's standard practice, and has resulted in hundreds of millions of dollars paid to victims of discrimination, in addition to meaningful programmatic relief. (Friedman Decl., ¶ 12, 22). While *Williams* Counsel has done, and will do, whatever it takes to litigate this case aggressively to achieve the best possible results for the class, it also recognizes that delay and uncertainty can harm the class, and that obtaining a prompt and fair resolution is preferable, when it is possible. Stowell & Friedman has earned praise for its pragmatic and dogged approach to both litigating and resolving class race discrimination claims. As SDNY Judge Pauley said, when approving the parties' settlement in *Creighton v. MetLife*:

> **The parties here, in my view, did an outstanding job in managing this litigation and allowing it not to spin out of control which it could easily have done. I think that [Friedman and her firm], in their treatment, the resources they put into the case, appropriately handled the litigation in a way that winds up to be in the best interests of the class.** (Friedman Decl., ¶ 12)

### 5.  Other Factors

*Williams* Counsel run women-owned and Black-owned law firms with decades of commitment to and success in civil rights cases. (Friedman Decl., ¶ 1–2; Crump Decl., ¶ 9). As reported in a recent study, women are dramatically underrepresented in lead counsel roles. *First Chairs at Trial, More Women Need Seats at the Table,* Stephanie Scarf & Roberta D. Liebenberg, American Bar Foundation, https://www.americanbar.org/content/dam/aba/ administrative/women/first_chairs_final.pdf. The diversity of Ms. Friedman and Mr. Crump, and the prominent role of female and Black attorneys on their team, is one factor the Court may consider in appointing interim lead counsel. *See, e.g., Xu v. FibroGen, Inc.,* No. 21-cv-02623, 2021 WL 3861454, at *11 (N.D. Cal. Aug. 30, 2021) (noting firm appointed class counsel was women and minority-owned); *In re Stubhub Refund Litig.,* No. 20-md-02951, 2020 WL 8669823, at *1–2 (N.D. Cal. Nov. 18, 2020) ("diverse team" relevant factor in support of appointment of counsel).

### 6.  The Court Is Appointing Interim Lead Counsel

Appointing *Williams* Counsel as interim lead counsel would allow coordination on any

- 14 -

subclasses, if needed, for claims other than for Black borrowers. (*E.g.*, Dkt. 101 at 5–7.) As Williams counsel previously explained to the Court, worse outcome for Black borrowers might result in the need for different programmatic relief, statistical analysis, arguments, and monetary awards. Because we have not exhaustively studied the issue and lack a full data set, we agree with the Court that the issue of subclasses should remain an option, and an interim appointment would allow coordination on that issue.

If the need for subclasses arise, *Williams* Counsel would be pleased to work with Amanda Williams and Abou Amara, who could lead the national origin subclass. We continue to believe that consolidated discovery would avoid additional cost and burden to Wells Fargo and prove expeditious and to the benefit of putative class members.

## III.   CONCLUSION

For all the reasons stated above, the Court should appoint Linda D. Friedman and Benjamin L. Crump as interim lead counsel for the putative plaintiff class.

DATED: February 13, 2023                     Respectfully submitted,

                                             BEN CRUMP, PLLC

                                             By: */s/ Benjamin Crump*
                                             BENJAMIN CRUMP (Appearing pro hac vice)
                                             633 Pennsylvania Avenue Northwest, Fl. 2
                                             Washington D.C. 20004
                                             (800) 713-1222
                                             court@bencrump.com

                                             STOWELL & FRIEDMAN, LTD.

                                             By: */s/ Linda D. Friedman*
                                             LINDA D. FRIEDMAN (Appearing pro hac vice)
                                             SUZANNE E. BISH (Appearing pro hac vice)
                                             303 W. Madison St., Ste. 2600
                                             Chicago, Illinois 60606
                                             (312) 431-0888
                                             Lfriedman@sfltd.com

                                             Attestation under N.D. Cal. L.R. 5-1: the ECF filer
                                             of this document attests that all of the other

MEMO. IN SUPP. OF MOT. FOR
APPT. AS INTER. LEAD COUNSEL
3:22-cv-0990-JD

signatories have concurred in the filing of the document, which shall serve in lieu of their signatures on the document.

SANI LAW, APC

By: _/s/ Sam Sani_____
SAM SANI (local counsel)
595 E. Colorado Blvd., Ste. 522
Pasadena, CA 91101
(310) 935-0405
ssani@sanilawfirm.com

*Attorneys for Plaintiffs Williams, Albury, Simmons, individually and on behalf of all others similarly situated*

MEMO. IN SUPP. OF MOT. FOR
APPT. AS INTER. LEAD COUNSEL
3:22-cv-0990-JD

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that on February 13, 2023, I electronically filed the foregoing document

3    entitled **PLAINTIFFS' RENEWED MOTION FOR APPOINTMENT AS INTERIM LEAD**

4    **COUNSEL** with the Clerk of the Court for the United States District Court, Northern District of

5    California using the CM/ECF system and served a copy of same upon all counsel of record via

6    the Court's electronic filing system.

7

8    Dated: February 13, 2023                    By: */s/ Linda D Friedman*
                                                          Linda Friedman
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28