1 | ELLIS GEORGE LLP
Dennis S. Ellis (State Bar No. 178196)
2 |   dellis@ellisgeorge.com
2121 Avenue of the Stars, 30th Floor
3 | Los Angeles, California 90067
Telephone: (310) 274-7100
4 | Facsimile: (310) 275-5697

5 | *Interim Lead Class Counsel*

6

7

8 | **UNITED STATES DISTRICT COURT**

9 | **NORTHERN DISTRICT OF CALIFORNIA**

10 | Case No. 3:22-cv-00990-JD

11 | *In re Wells Fargo Mortgage Discrimination Litigation.* | Honorable James Donato

12 | **PLAINTIFFS' OPPOSITION TO WELLS FARGO BANK, N.A.'S MOTION TO DISQUALIFY PLAINTIFFS' EXPERT**

13

14 | Date: May 23, 2024
Time: 10:00 a.m.
15 | Courtroom: 11

16 | [Declarations of Dennis S. Ellis, Trent Copeland, and Dante Jackson in Support
17 | Thereof; and Objections to Evidence filed and served concurrently herewith]

18

19

20

21

22

23

24

25

26

27

28

2405062

# TABLE OF CONTENTS

**Page**

I.      STATEMENT OF ISSUES TO BE DECIDED ..................................................................1

II.     PRELIMINARY STATEMENT ......................................................................................1

III.    RELEVANT FACTUAL BACKGROUND .....................................................................2

        A.      Plaintiffs' Expert Dante Jackson ......................................................................2

        B.      Wells Fargo's Eleventh Hour Cancellation of Mr. Jackson's Deposition .................3

IV.     LEGAL STANDARD ......................................................................................................5

V.      WELLS FARGO'S MOTION IS PROCEDURALLY DEFECTIVE. ...................................5

VI.     THE COURT SHOULD DENY WELLS FARGO'S FRIVOLOUS MOTION. ..................6

        A.      Mr. Jackson Did Not Enter Into a Confidential Relationship with Wells
                Fargo, Nor Did Wells Fargo Disclose any Purported Confidential
                Information to Mr. Jackson Relevant to this Case. ....................................................6

        B.      Policy Concerns Also Weigh In Favor of Denying Wells Fargo's Motion. ..............9

        C.      Any Purported Bias Determination is the Sole Provenance of the Jury...................12

VII.    WELLS FARGO'S DISCOVERY ABUSE AND THE FILING OF A PATENTLY
        FRIVOLOUS MOTION IS SANCTIONABLE. .............................................................13

VIII.   CONCLUSION ..............................................................................................................15

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Alien Technologies Corp. v. Intermec, Inc.*,
    No. 3:06-CV-51, 2007 WL 4261972 (D.N.D. Nov. 30, 2007) ....................................................8

*Bayer v. City of San Francisco*,
    22-cv-07440-AMO (N.D. Cal. Mar. 7, 2024) ..............................................................................5

*Brown v. Am. Airlines, Inc.*,
    285 F.R.D. 546 (C.D. Cal. 2011) ...............................................................................................12

*EMW Women's Surgical Center, P.S.C. v. Friedlander*,
    978 F.3d 418 (6th Cir. 2020)................................................................................................2, 13

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) ...................................................................................................................10

*Hewlett-Packard Co. v. EMC Corp.*,
    330 F. Supp. 2d 1087 (N.D. Cal. 2004) ...........................................................................5, 6, 7, 9

*Hingson v. Pacific Sw. Airlines*,
    743 F.2d 1408 (9th Cir. 1984).....................................................................................................12

*In re Arris Cable Modem Consumer Litig.*,
    327 F.R.D. 334 (N.D. Cal. 2018) .................................................................................................2

*In re First Am. Corp. ERISA Litig.*,
    258 F.R.D. 610 (C.D. Cal. 2009) ...........................................................................................1, 11

*In re JDS Uniphase Corp. Securities Litigation*,
    No. C-02-1486 CW (EDL), 2006 WL 2845212 (N.D. Cal. Sept. 29, 2006)................................7

*Jones v. Metropolitan Life Ins. Co.*,
    No. C-08-03971-JW (DMR), 2010 WL 4055928 (N.D. Cal. 2010) .............................................6

*Just Film, Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017)......................................................................................................11

*Krell v. Prudential Ins. Co. of Am.*,
    148 F.3d 283 (3d Cir. 1998) ........................................................................................................12

*Lam Rsch. Corp. v. Deshmukh*,
    157 F. App'x 26 (9th Cir. 2005 ....................................................................................................8

*Meek v Skywest, Inc.*,
    562 F. Supp. 3d 488 (N.D. Cal. 2021) .........................................................................................11

1

## TABLE OF AUTHORITIES
### (Continued)

2
Page

3  *Myrette-Crosley v. Ditech Home Loans, et al.,*
    No. 3:17-cv-05528-JD (N.D. Cal. Apr. 16, 2020) ........................................................5

4

5  *Nelson v. SeaWorld Parks & Ent., Inc.,*
    No. 15-CV-02172-JSW, 2021 WL 8134398 (N.D. Cal. July 9, 2021) ....................................14

6  *NHL v. Metro. Hockey Club, Inc.,*
    427 U.S. 639 (1976) ..................................................................................13

7

8  *O'Connor v. Boeing N. Am., Inc.,*
    180 F.R.D. 359 (C.D. Cal. 1997) ....................................................................12

9

10  *Optyl Eyewear Fashion Int'l Corp. v. Style Companies,*
    760 F.2d 1045 (9th Cir. 1985) .......................................................................14

11  *Packet Intel. LLC v. Juniper Networks Inc.,*
    No. 19-CV-04741-WHO, 2020 WL 4001460 (N.D. Cal. July 15, 2020) ...................................5

12

13  *Parsons v. Ryan,*
    754 F.3d 657 (9th Cir. 2014) ........................................................................11

14

15  *Rwhat obichaud v. Speedy PC Software*, No. C 12 04730 LB, 2013 WL 818503, at *8
    (N.D. Cal. Mar. 5, 2013) .............................................................................10

16  *Space Sys./Loral v. Martin Marietta Corp.,*
    No. CIV. 95-20122 SW, 1995 WL 686369 (N.D. Cal. Nov. 15, 1995)...........................2, 7, 8

17

18  *TV Interactive Data Corp. v. Sony Corp.,*
    929 F. Supp. 2d 1006 (N.D. Cal. 2013) ..............................................................12

19

20  *U.S. Commodity Future Trading Com'n v. Paron Capital Management, LLC,*
    No. 11-cv-04577 CW (NC), 2012 WL 5389912 (N.D. Cal. 2012)...........................................6

21  *U.S. v. Bonilla-Guizar,*
    729 F.3d 1179 (9th Cir. 2013) .......................................................................12

22

23  *U.S. v. Kail,*
    No. 18-CR-00172-BLF-1, 2021 WL 242921 (N.D. Cal. 2021) ...............................................12

24

25  *Veazey v. Hubbard,*
    No. CIV. 08-00293 HG-LEK, 2008 WL 5188847, at *7-8 (D. Haw. Dec. 11, 2008) ..............10

26  *Wade v. Kirkland,*
    118 F.3d 667 (9th Cir. 1997)........................................................................10

27

28

## TABLE OF AUTHORITIES
### (Continued)

**Page**

*Wyle v. R.J. Reynolds Indus., Inc.,*
709 F.2d 585 (9th Cir. 1983) ...................................................................................13

*Ziptronix, Inc. v. Omnivision Techs., Inc.,*
No. C -10-05525 SBA EDL, 2013 WL 146413, at *1 (N.D. Cal. Jan. 14, 2013) ...................1, 6

**STATE CASES**

*Sierra Club v. San Joaquin Local Agency Formation Comm'n.,*
21 Cal. 4th 489 (1999) ..............................................................................................9

**FEDERAL STATUTES**

15 U.S.C. § 1631 ...........................................................................................................15

28 U.S.C. § 1927 ...........................................................................................................14

**STATE STATUTES**

Cal. Bus. & Prof. Code § 16600(a) ..............................................................................9

**RULES**

Fed. R. Civ. P. 26(c) .....................................................................................................13

Fed. R. Civ. P. 37 ..........................................................................................................13

Fed. R. Civ. P. 37(b)(2)(C) ...........................................................................................13

Fed. R. Civ. P. 37(d)(1)(A)(i) .......................................................................................13

Fed. R. Civ. P. 37(d)(2) .................................................................................................13

Fed. R. Civ. P. 37(d)(3) .................................................................................................13

Fed. R. Evid. 702 ...........................................................................................................13

Local Rule 7-4(a)(3) .....................................................................................................5, 6

Local Rule 7-8 ...............................................................................................................1

Local Rule 37(d) ............................................................................................................13

**OTHER AUTHORITIES**

https://www.law360.com/articles/1502264?utm_source=ios&utm_medium=ios&utm_c
ampaign=ios-shared?copied=1 (April 26, 2024) ........................................................10

1

## <u>TABLE OF AUTHORITIES</u>
### (Continued)

2
**Page**

3
https://www.law360.com/articles/1830166?utm_source=ios&utm_medium=ios&utm_c
ampaign=ios-shared (April 26, 2024) ..........................................................................10

4

5
When and Why to Leave a Job Off Your Resume, https://www.indeed.com/career-
advice/resumes-cover-letters/leaving-jobs-off-
resume#:~:text=In%20the%20case%20of%20short,relevant%20to%20the%20new

6
%20position (June 24, 2022).........................................................................................3

7
Wright, Miller & Kane § 1764, at 235-41 .....................................................................12

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    <u>STATEMENT OF ISSUES TO BE DECIDED</u>

Whether Wells Fargo has met its burden to obtain the disqualification of Plaintiffs' rebuttal expert, Dante Jackson.

## II.    <u>PRELIMINARY STATEMENT</u>

Wells Fargo is correct on one thing: it is rare to disqualify an expert witness.  In fact, it does not happen under the circumstances Wells Fargo alleges support disqualification of Plaintiffs' expert, Dante Jackson, the lone racial and ethnic minority designated as an expert witness in this significant discrimination litigation.  Plaintiffs disclosed their rebuttal expert Mr. Jackson on March 22, 2024, and Wells Fargo noticed his deposition for April 11, 2024.  Wells Fargo waited until the evening of April 10, 2024, to accuse Mr. Jackson of impropriety and bias and then unilaterally ***cancelled his deposition after Plaintiffs' counsel travelled from Los Angeles, California to Charlotte, North Carolina***.  Not only should this Court deny Wells Fargo's procedurally defective Motion, but it should issue monetary sanctions in the amount of $32,253.71 for its discovery abuse and frivolous Motion brought in bad faith and for an improper purpose.[1]

***First***, Wells Fargo and Mr. Jackson were not in a confidential relationship merely because Mr. Jackson signed general employment documents.[2]  *See, e.g.*, *Ziptronix, Inc. v. Omnivision Techs., Inc.*, No. C -10-05525 SBA EDL, 2013 WL 146413, at *1 (N.D. Cal. Jan. 14, 2013) (denying motion to disqualify expert as a signed non-disclosure agreement alone was insufficient to establish a confidential relationship).  Wells Fargo points to nothing but employee handbooks two decades (2004) and one decade old (2013) and a promise not to disclose trade secrets as the alleged confidential information at issue here, but does nothing to tie that information to anything at issue in the case.  (*See* ECF No. 198, ¶¶ 6, 7, 14 and 16.)  Even assuming Mr. Jackson was availed of material confidential information during his tenure at Wells Fargo, the bank's relevant policies and procedures are not the same; the old versions and iterations are simply not (to coin a phrase) of

---

[1] Pursuant to Local Rule 7-8, concurrently filed herewith is Plaintiffs' Motion for Sanctions, set for hearing on June 13, 2024; the first available date.

[2] (ECF No. 198-1, Exs. A-G.)

"practical significance," and thus disqualification is improper. *See, e.g.*, *Space Sys./Loral v. Martin Marietta Corp.*, No. CIV. 95-20122 SW, 1995 WL 686369, at *2-3 (N.D. Cal. Nov. 15, 1995).

**Second**, Mr. Jackson's subjective and personal opinions—which he says are unbiased (Declaration of Dante Jackson ("Jackson Decl."), ¶ 16)—about Wells Fargo are for the jury to consider when determining the weight to give his testimony and have nothing to do with the **admissibility** of his expert opinions. *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 372 (N.D. Cal. 2018) ("[B]ias goes to the weight of the expert's opinion, not its admissibility.").

**Third**, Wells Fargo has filed this motion in bad faith and its actions warrant sanctions. Even assuming Wells Fargo had a legitimate basis for disqualifying Mr. Jackson (it does not), it did not even raise these issues until **nearly three weeks after Mr. Jackson was disclosed as a rebuttal expert**. Wells Fargo's first complaint about Mr. Jackson—besides trying to get more time from the Court to depose him—was the day before his scheduled deposition, after the deposition was confirmed the day before and after Plaintiffs' counsel had already travelled from California to North Carolina. (Declaration of Trent Copeland ("Copeland Decl.") ¶¶ 7-8.) Instead of taking Mr. Jackson's scheduled deposition and resolving purported concerns with his previous employment at the bank, Wells Fargo chose to cancel the deposition and file this motion. This is an abuse of the discovery process warranting compensation to Plaintiffs in the form of sanctions against Wells Fargo. *See EMW Women's Surgical Center, P.S.C. v. Friedlander*, 978 F.3d 418, 446-48 (6th Cir. 2020) (affirming monetary sanctions for $21,140.25 where counsel flew from California to Kentucky for a deposition that the defendant canceled).

## III.   RELEVANT FACTUAL BACKGROUND[3]

### A.   Plaintiffs' Expert Dante Jackson

Plaintiffs retained Dante Jackson, an African-American with nearly 30 years of experience in banking and loan underwriting, as a consultant in the matter and, on March 22, 2024, designated him as a rebuttal expert. (Jackson Decl. ¶ 3.) Specifically, Mr. Jackson was designated as an expert witness to rebut Dr. Marsha Courchane's opinions regarding Wells Fargo's underwriting policies

---

[3] A full statement of facts regarding the underlying litigation may be found at ECF No. 204.

1    and procedures, including as to the proposed class members.  (*Id.* ¶ 4.)[4]

2         As stated in his curriculum vitae, Mr. Jackson previously was employed by Wells Fargo as

3    an underwriter between 2004 and 2006, and as a risk management manager in credit policy and

4    performance between 2006 to 2007.  (Jackson Decl., Ex. A, App. B.) ████████████████

5    ████████████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████████████

7    ████████████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████████

19   ████████████████         Mr. Jackson has not shared any confidential information during the course of his

20   work as an expert witness, as he was instructed by Plaintiffs' counsel not to do.  (*Id.*)

21        **B.    <u>Wells Fargo's Eleventh Hour Cancellation of Mr. Jackson's Deposition</u>**

22        From the start of discussions regarding the scheduling of expert depositions, Wells Fargo

23   ─────────────────────

24   [4] On March 4, 2024, Wells Fargo filed an Administrative Motion to extend the expert rebuttal and
     expert discovery deadlines (ECF Nos. 185, 189), which this Court denied (ECF No. 193).  In prior

25   meet-and-confers, Wells Fargo specifically requested that they be permitted to depose Mr. Jackson
     after the original expert discovery cut-off.  (Declaration of Dennis Ellis ("Ellis Decl.") ¶ 3.)

26   [5] When and Why to Leave a Job Off Your Resume, https://www.indeed.com/career-advice/resumes-

27   cover-letters/leaving-jobs-off-
     resume#:~:text=In%20the%20case%20of%20short,relevant%20to%20the%20new%20position

28   (June 24, 2022).

requested Mr. Jackson's deposition to be set after the expert discovery cut-off (on April 18, 2024). The Court declined to extend the expert discovery period. (ECF No. 193.) Plaintiffs made it clear that they would not participate in discovery after the cut-off date, and (after some back and forth) Wells Fargo agreed to take the deposition of Mr. Jackson on April 11, 2024 and noticed the deposition for that date in Charlotte, North Carolina. (Ellis Decl. ¶ 4, Ex. A.) On April 9, 2024, Wells Fargo's counsel confirmed the deposition was to go forward as noticed. (Copeland Decl. ¶ 7.) The same day, on April 9, 2024, counsel for Plaintiffs flew from Los Angeles to Charlotte, North Carolina to defend Mr. Jackson's deposition. (*Id.* ¶ 7.) On April 10, at approximately 5:00 p.m. EST, counsel for Wells Fargo informed Plaintiffs' counsel that Wells Fargo would not move forward with Mr. Jackson's deposition the next morning. (*Id.* ¶ 8) ***This is the first time Wells Fargo ever mentioned any issues with Plaintiffs' retention of Mr. Jackson despite his designation 19 days earlier.*** (*Id.*) After exchanging e-mails that evening regarding Mr. Jackson's deposition, Plaintiffs made it clear that Mr. Jackson would be attending his duly noticed deposition and, if Wells Fargo withdrew Mr. Jackson's deposition, that Plaintiffs would seek monetary sanctions. (*Id.* ¶ 11.) Wells Fargo sent an e-mail indicating that it intended to move to disqualify Mr. Jackson, and Plaintiffs' counsel indicated it would oppose any such motion. (*Id.* ¶¶ 10-11.)

On the morning of April 11, 2024, Plaintiffs' counsel and Mr. Jackson arrived for Mr. Jackson's deposition, but Wells Fargo was not present. (*Id.* ¶ 12.) After learning of Wells Fargo's accusations against Mr. Jackson (that he had misappropriated purported confidential information), Mr. Jackson reviewed his past social media posts and podcast recordings for any confidential information and ultimately found none. (Jackson Decl. ¶ 13.) However, upon reviewing one of his social media accounts (YouTube), Mr. Jackson noticed that several of the attorneys from Wells Fargo as well as Rich Norelli, a former FBI agent, and digital forensic expert had recently viewed his page. (*Id.* ¶ 14.) Mr. Jackson was in fear of Wells Fargo's retaliation, which it has a long and recent history of doing against its former employees and even some named Plaintiffs in this case. (*Id.*) Since removing these public posts, Mr. Jackson has provided Wells Fargo with all posts and recordings that have appeared on any of his social media accounts and platforms that even remotely relate to Wells Fargo. (*Id.* ¶ 14; Copeland Decl., ¶ 13.)

## IV.   <u>LEGAL STANDARD</u>

The disqualification of an expert witness is a "drastic measure that courts should impose only hesitantly, reluctantly, and rarely." *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1092 (N.D. Cal. 2004).  It is utilized only to " . . . protect the integrity of the adversarial process, protect privileges that otherwise may be breached, and promote public confidence in the legal system." *Packet Intel. LLC v. Juniper Networks Inc.*, No. 19-CV-04741-WHO, 2020 WL 4001460, at *2 (N.D. Cal. July 15, 2020).   The Court examines two factors in determining whether "disqualification of an expert is warranted based on a prior relationship with an adversary[:] if (1) the adversary had a confidential relationship with the expert and (2) the adversary disclosed confidential information to the expert that is relevant to the current litigation." *Hewlett-Packard Co.*, 330 F. Supp. 2d at 1092-93 (internal citations omitted).  And because disqualification of an expert witness is such a drastic measure, the Court also considers "whether disqualification would be fair to the affected party and would promote the integrity of the legal process." *Packet Intel.*, 2020 WL 4001460, at *2.  The party seeking to disqualify an expert carries the burden to establish that disqualification is warranted.  *See Hewlett-Packard Co.*, 330 F. Supp. 2d at 1094.

## V.   <u>WELLS FARGO'S MOTION IS PROCEDURALLY DEFECTIVE.</u>

This Court's standing order is clear.  An opening brief, other than for summary judgment or class certification, may not exceed 15 pages.  (*See* Standing Order for Civil Cases ¶ 18.)  The Court can deny this motion outright for Wells Fargo's failure to follow the rules, as it has exceeded the page limit by more than thirty percent.  *See Bayer v. City & County of San Francisco*, No. 3:22-cv-0744-JD, 2023 WL 1975245 at *2 n. 1 (finding an exception to plaintiff's violation of the 15-page limit set in the Court's standing order "as a one-time accommodation for a pro se litigant."); *Myrette-Crosley v. Ditech Home Loans, et al.*, No. 3:17-cv-05528-JD, 2018 WL 3159727 at *3 n. 1 (tolerating an "opening brief [that] exceeds the Court's page limits by a wide margin" "on this one occasion only because the motion was originally filed in a different court.")

Just as clear are the Northern District's Civil Local Rules.  This Court requires that "a brief or memorandum of points and authorities filed in support, opposition, or reply to a motion must contain… [a] statement of the issues to be decided."  Civil L.R. 7-4(a)(3).  Beyond ignoring the

page limit, Wells Fargo's motion is procedurally defective because it fails to include the required statement of the issues to be decided. "[A] court may strike material from the docket, including portions of a document, reflecting procedural impropriety or lack of compliance with court rules or orders." *Jones v. Metropolitan Life Ins. Co.*, No. C-08-03971-JW (DMR), 2010 WL 4055928 at *6 (N.D. Cal. 2010); *see also U.S. Commodity Future Trading Com'n v. Paron Capital Management, LLC*, No. 11-cv-04577 CW (NC), 2012 WL 5389912 at *5 (N.D. Cal. 2012) (striking pleadings for failure to comply with Northern District's Civil Local Rules, including Rule 7-4(a)(3).) For these reasons alone, Wells Fargo's Motion should be stricken and disregarded.

## VI.     THE COURT SHOULD DENY WELLS FARGO'S FRIVOLOUS MOTION.

### A.     Mr. Jackson Did Not Enter Into a Confidential Relationship with Wells Fargo, Nor Did Wells Fargo Disclose any Purported Confidential Information to Mr. Jackson Relevant to this Case.

Wells Fargo's naked assertion that Mr. Jackson was in a confidential relationship with it, during which he purportedly received some sort of confidential information in its standard employee handbooks, is woefully inadequate to satisfy its burden on this Motion. *See Hewlett-Packard Co.*, 330 F. Supp. 2d at 1092. In *Ziptronix,* 2013 WL 146413, at *1, the court denied a motion to disqualify an expert even where the expert had signed an NDA as a consultant to the adverse party prior to the pending litigation. The court found that, even with the existence of a signed NDA, there was no showing of a confidential relationship between that party and the expert nor was there any evidence that any confidential information was retained and relied upon in that litigation. *Id*. The court reasoned that whether the retaining party knew the expert had worked with its adversary in the past "alone would not be sufficient to grant the motion." *Id.* at *4. As the Court in *Ziptronix* found insufficient an NDA with the expert who was ***recently a consultant to the adverse party***, so too do the generic employment agreements between Wells Fargo and Mr. Jackson fail to provide any basis for the drastic remedy of disqualification.

Even assuming this Court could find that Wells Fargo and Mr. Jackson were in a confidential relationship—they were not—Wells Fargo never disclosed confidential information to Mr. Jackson relevant to this litigation, and whatever information Wells Fargo claims to be concerned with was never disclosed to counsel for Plaintiffs. (Jackson Decl., ¶¶ 7-8, 12, 15.) This is critical and fatal

1   to this motion as "[u]nlike attorney-client communications, discussions between parties or counsel

2   and experts do not carry the presumption that confidential information was exchanged." *Hewlett-*

3   *Packard*, 330 F. Supp. 2d at 1094 (citation omitted).

4        In *In re JDS Uniphase Corp. Securities Litigation*, No. C-02-1486 CW (EDL), 2006 WL

5   2845212, at *3 (N.D. Cal. Sept. 29, 2006), the court denied the plaintiffs' motion to disqualify a

6   defendant's expert witness because they "provided no specific disclosures of relevant confidential

7   information."  The court reasoned that the "information exchanged during the development of the

8   basic structure of a computer system approximately fourteen years ago would have little relevance

9   today in the context of this litigation.  Moreover, Lead Plaintiff's evidence shows that the systems

10  have been upgraded, but does not state whether [the expert] participated in the upgrades." *Id.*

11       Similarly, in *Space Sys./Loral v. Martin Marietta Corp.*, relied on by Wells Fargo (perhaps

12  in error), the court granted the defendant's motion to disqualify one of the plaintiff's experts because

13  the defendant demonstrated that the expert had confidential information acquired from the defendant

14  after 30 years as a high-ranking employee who was named as an inventor of patents related to the

15  technology at issue and wherein he signed "numerous" confidentiality agreements.  1995 WL

16  686369, at *2.  The court, however, ***denied the defendant's motion to disqualify*** the other plaintiff's

17  expert who also previously worked for the defendant and helped develop the technology at issue

18  because he was provided confidential information for only a short period of time almost a decade

19  before the then-current litigation and was no longer employed by the defendant for "more than five

20  years before th[e] litigation commenced." *Id.* at *3-4.

21       Here, not once does Wells Fargo identify ***any confidential information*** that it purportedly

22  disclosed to Mr. Jackson that has any remote relationship to this particular case, let alone any

23  information that is of "***practical significance***."  Instead, Wells Fargo argues that underwriters like

24  Mr. Jackson who gained knowledge of its underwriting systems and policies and procedures are

25  "inextricably tied to the confidential and proprietary information he learned while employed by

26  Wells Fargo[,]" and identifies some decades old handbooks and an agreement not to disclose trade

27  secrets signed more than eleven years ago as the information of concern.  (*Id.* at ¶¶ 6, 7, 14, and 16.)

28  (ECF No. 198 at 5-7.)  The circumstances here are analogous to those in *In re JDS Uniphase Corp.*

PLAINTIFFS' OPPOSITION TO WELLS FARGO'S MOTION TO DISQUALIFY PLAINTIFFS' EXPERT

where the plaintiff failed to identify a specific disclosure of **relevant confidential information**. And like the expert in *Space Systems/Loral*, who the court did not disqualify, Mr. Jackson had not been employed by Wells Fargo for "more than five years before th[e] litigation commenced." *Space Sys./Loral.*,1995 WL 686369, at *3. All of this is particularly important here, given that Wells Fargo's CORE/ECS systems underwent significant overhauls in 2014 and 2017—well after Mr. Jackson ceased all affiliation with Wells Fargo. Thus, even if the current versions of Wells Fargo's CORE/ECS system or the current iterations of its policies and procedures evolved from versions and iterations from Mr. Jackson's decades long tenure, those old versions are no longer relevant to this litigation. *See, e.g., id.* at *3 (finding that just because the experts were involved in the development of technology that was "operationally similar" to the infringing products or "which evolved into the [technology] used in the [infringing products]" is not sufficient to support disqualification).

Finally, Mr. Jackson's expert report, like Dr. Courchane's, is based on the documents that Wells Fargo provided during this litigation and subject to the same stipulated protective order. (ECF No. 118; Jackson Decl. Ex. A; Ellis Decl., Ex. B.) Interestingly, Dr. Courchane has worked with Wells Fargo and its competitors for decades as an expert. (Ellis Decl., Ex. B, App. A.) Yet, Wells Fargo has not demanded that Dr. Courchane refrain from testifying on behalf of or working with its competitors even though she has received Wells Fargo's confidential information for decades and has been apparently able to refrain from using it in other matters not involving Wells Fargo.[6] Certainly, California does not recognize an inevitable disclosure of confidential information. *Cf. Lam Rsch. Corp. v. Deshmukh*, 157 F. App'x 26, 28 (9th Cir. 2005) ("California does not recognize

---

[6] Wells Fargo's reliance on *Alien Technologies Corp. v. Intermec, Inc.*, No. 3:06-CV-51, 2007 WL 4261972, at *2 (D.N.D. Nov. 30, 2007) underscores Wells Fargo's failure to satisfy its burden that it actually shared "confidential information that is relevant to the proffered expert testimony." (ECF No. 198 at 17.) In *Alien*, the court disqualified the expert because he "was a high ranking executive" ensconced in the design of the product at issue. *Alien*, 2007 WL 4261972, at *2. That is not the case here, despite Wells Fargo's attempt to elevate Mr. Jackson to the position of "officer" during his tenure that ended in 2007 wherein he did not participate as a "high ranking executive" in the development of its underwriting policies and procedures that are relevant to this litigation. (ECF No. 198 at 3.) Nor did he in 2013 during his brief eight-week stint. (Jackson Decl. ¶ 6.)

PLAINTIFFS' OPPOSITION TO WELLS FARGO'S MOTION TO DISQUALIFY PLAINTIFFS' EXPERT

the inevitable disclosure doctrine, the preliminary injunction, which is premised on a valid inevitable disclosure cause of action, must be vacated.").  In this state it is believed the "mind [does] work like that" – unless you have ***facts*** showing misappropriation such a serious offense will not be presumed.

### B.    Policy Concerns Also Weigh In Favor of Denying Wells Fargo's Motion.

Wells Fargo has sought to create a purported conflict solely for the purpose of preventing Plaintiffs from using the services of Mr. Jackson.  This is precisely the practice that this court has abhorred.  In *Hewlett-Packard Co.*, 330 F. Supp. 2d at 1090-91, the defendant moved to disqualify the plaintiff's expert whom the defendant had previously retained in another case that involved the same patent at issue.  Ultimately, the court denied the defendant's motion to disqualify the plaintiff's expert, in part, because disqualifying the plaintiff's expert would not have served to promote the integrity of the legal process and would have impaired the expert's ability to pursue his trade as an expert witness.  *Id.* at 1098.  The Court further reasoned that "if an expert could be disqualified on the facts of this case, parties in other cases might be tempted to create a purported conflict solely for the purpose of preventing their adversaries from using the services of a particular expert."  *Id.* Ratifying Wells Fargo's gamesmanship and encouraging the like from litigants so bold as to follow in Wells Fargo's footsteps would subvert the legal process.

This approach comports with California's strong public policy voiding any contract that would "restrain from engaging in a lawful profession, trade, or business of any kind."  Cal. Bus. & Prof. Code § 16600(a).  And this policy "shall be read broadly . . . to void the application of any noncompete agreement in an employment context or any noncompete clause in an employment contract, no matter how narrowly tailored."  *Id.* § 16600(b)(1).  Disqualifying Mr. Jackson here on these manufactured grounds would necessarily preclude Mr. Jackson from pursuing his trade as an expert with any future employer that may even tangentially involve Wells Fargo or the financial industry, which is abhorrent to a strong public policy of California.  *See Sierra Club v. San Joaquin Local Agency Formation Comm'n.*, 21 Cal. 4th 489, 508 (1999).

Finally, any disqualification of Mr. Jackson at this stage would be highly prejudicial to Plaintiffs.  Although Wells Fargo argues that Mr. Jackson's expertise is not so unique that there are no other like-experts in the field, the timing of having to do so at this stage in the litigation would

1   be prejudicial.[7]  It comes as no surprise to Plaintiffs that Wells Fargo has taken this approach.  Wells

2   Fargo designated a single affirmative expert who has no specialized experience or expertise in

3   underwriting, to review the loan application documents and opine that ████████████



6   ██████████████████"[8]  (Ellis Decl., Ex. B at ¶¶ 124-125.)  Wells Fargo

7   will undoubtedly argue that the current named plaintiffs[9] do not "possess the same interest" as the

8   class, and their injuries do not "arise from the same course of conduct that gives rise to the other

9   class members' claims."  *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 156 (1982).  By disqualifying

10  Mr. Jackson, Wells Fargo seeks to exclude the only qualified underwriting expert as well as his

11  detailed analysis of the named plaintiffs' loan files and his opinion that ████████████

12  ██████████████████████████████

13  _____

14  [7] Wells Fargo once again grossly misrepresents a case in support of its tenuous position that because
    Mr. Jackson is replaceable he should, therefore, be replaced. (ECF No. 198 at 19.)  *See, e.g., Veazey

15  v. Hubbard*, No. CIV. 08-00293 HG-LEK, 2008 WL 5188847, at *7-8 (D. Haw. Dec. 11, 2008)
    (finding that the defendant's expert had access to confidential information from the injured plaintiff

16  prior to the filing of the complaint where the defendant was "barred from obtaining critical
    information with which to develop theories and strategies" was patently unfair).

17  [8] In response to Plaintiffs' motion for class certification, Wells Fargo publicly stated that it ***"did

18  not discriminate against any of the named plaintiffs*.*"  See*
    https://www.law360.com/articles/1830166?utm_source=ios&utm_medium=ios&utm_campaign=i

19  os-shared (April 26, 2024) (emphasis added).  This is a significant departure from its prior
    statement to the same reporter defending its policies as compliant with "relevant government-

20  sponsored guidelines."  *See*
    https://www.law360.com/articles/1502264?utm_source=ios&utm_medium=ios&utm_campaign=i

21  os-shared?copied=1 (April 26, 2024).

22  [9] Even assuming the claims of any of the current named plaintiffs are mooted, they may still proceed
    as class representatives, as the claims of the named plaintiffs are "inherently transitory," and the

23  action qualifies for an exception to mootness.  *See Wade v. Kirkland,* 118 F.3d 667, 670 (9th Cir.
    1997) (holding that a court can certify a class even though the named plaintiff's claims are moot,

24  since the "relation back" doctrine will relate to the named plaintiff's standing at the outset of the
    case in order "to preserve the merits of the case for judicial resolution").  And even assuming this

25  Court were to agree that any unique underlying factual issue affects the ability of any current
    Plaintiff to continue to represent the class, courts have the inherent power to replace class

26  representatives.  *See, e.g., Rwhat obichaud v. Speedy PC Software*, No. C 12 04730 LB, 2013 WL
    818503, at *8 (N.D. Cal. Mar. 5, 2013).  As set forth in the Amended and Consolidated Class Action

27  Complaint, there are several potential representative plaintiffs who suffered harm typical of the class
    and who are prepared to represent the class, if necessary.  (*See* ECF No. 114 at ¶¶ 140-151.)

28

1  ████████████████████████████████████████████████████████

2  ██████████

3      According to Mr. Jackson, █████████████████████████████████

4  ████████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████

7  █████████████████████████████   (Jackson Decl., Ex. A at 8.)  And contrary to Wells

8  Fargo's position that █████████████████ "████████████████," Mr. Jackson, using

9  his almost three decades of experience as an underwriter to review each of the loan files, concluded

10 that ███████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████

13 ██████████████████████████████████████████████████████.  (*Id*. at 9-10.)

14 Based on Mr. Jackson's analysis, it is clear that each of the named Plaintiffs' claims are reasonably

15 coextensive with that of the class because Wells Fargo committed the same overall course of

16 misconduct against other members of the class and the class's injuries also resulted from that course

17 of conduct.  *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1117 (9th Cir. 2017) (finding typicality

18 requirement met where plaintiffs alleged defendants committed the same overall course of

19 misconduct and the injuries resulted from that course of conduct); *Meek v Skywest, Inc.*, 562 F.

20 Supp. 3d 488, 494 (N.D. Cal. 2021) (finding typicality satisfied where the proposed class members

21 had the same or similar injuries which were based on the same course of conduct, across the various

22 job classifications for Frontline Employees and at the various California airport locations).

23      Wells Fargo will likely highlight the alleged differences between the Plaintiffs, as its expert

24 has already attempted to do but, it is Wells Fargo's conduct that is relevant.  *In re First Am. Corp.*

25 *ERISA Litig.*, 258 F.R.D. 610, 618 (C.D. Cal. 2009) (typicality is satisfied because "the [court's]

26 focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the

27 plaintiff."); *see also Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) ("[T]ypicality refers to the

28 nature of the claim or defense of the class representative, and not to the specific facts from which it

arose or the relief sought.").  Typicality may be met "even though varying fact patterns support the claims or defenses of individual class members or there is a disparity in the damages by the representative parties and the other members of the class."  *O'Connor v. Boeing N. Am., Inc.*, 180 F.R.D. 359, 372 (C.D. Cal. 1997) (quoting Wright, Miller & Kane § 1764, at 235-41); *see also Brown v. Am. Airlines, Inc.*, 285 F.R.D. 546, 557 (C.D. Cal. 2011) (finding that cases "challenging the same unlawful conduct which affects both the named plaintiffs and the putative class" usually satisfy the typicality requirement, "irrespective of the varying fact patterns underlying the individual claims" (quoting *Krell v. Prudential Ins. Co. of Am.,* 148 F.3d 283, 311 (3d Cir. 1998).)

In sum, Wells Fargo should not benefit from its actions by getting what it wanted all along: the right to extend the expert cut-off period and take Mr. Jackson's deposition at a later date. Invariably, when one party follows the rules and the other does not, the former is prejudiced.  *U.S. v. Kail*, No. 18-CR-00172-BLF-1, 2021 WL 242921, at *1 (N.D. Cal. 2021) (finding that a litigant "cannot simply repackage his [or her] motion in an attempt to subvert the court's prior Orders"). Wells Fargo sought to extend the expert discovery period, which was denied by this Court.  (ECF No. 193.)  Undeterred, Wells Fargo simply demanded Mr. Jackson's deposition be taken at a later date, knowing full well it intended to challenge him anyway.  As such, Wells Fargo is entitled to no relief here; neither the disqualification of Mr. Jackson nor the right to take his deposition beyond the cut-off period (ECF No. 198 at 19-20) as it always wanted.

## C.    Any Purported Bias Determination is the Sole Provenance of the Jury.

Wells Fargo's reliance on Mr. Jackson's purported bias as a basis to disqualify him underscores the lack of legitimate basis for this motion.  "***[I]t is axiomatic that a witness's 'possible bias' goes 'to the weight of her testimony, not its admissibility.'***"  *U.S. v. Bonilla-Guizar*, 729 F.3d 1179, 1185 (9th Cir. 2013) (emphasis added) (citation omitted).  Such a finding of bias is up to the jury, as it goes to his or her credibility not the admissibility of his or her testimony.  *See TV Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d 1006, 1025-26 (N.D. Cal. 2013).  The fact that Mr. Jackson was previously employed at Wells Fargo, even if a jury ultimately considers that as part of its credibility analysis, is not sufficient to disqualify him.  *See Hingson v. Pacific Sw. Airlines*, 743 F.2d 1408, 1412 (9th Cir. 1984) (reversing ruling excluding expert because "[i]f the

testimony is otherwise admissible under Rule 702, the fact that [the plaintiff's] worked for [the defendant] does not preclude his appearance as an expert witness for [the plaintiff]").

## VII. WELLS FARGO'S DISCOVERY ABUSE AND THE FILING OF A PATENTLY FRIVOLOUS MOTION IS SANCTIONABLE.

The Ninth Circuit has explained that "Federal Rule of Civil Procedure 37 authorizes the district court, in its discretion, to impose a wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules." *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983) (citing *NHL v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)). "[T]he court ***must order*** the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C) (emphasis added). A district court may order sanctions if "a party . . . fails, after being served with proper notice, to appear for that person's deposition." Fed. R. Civ. P. 37(d)(1)(A)(i). Such a failure "is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c)." Fed. R. Civ. P. 37(d)(2). When a district court orders sanctions under Rule 37(d), it "***must*** require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3) (emphasis added).

Wells Fargo's actions in this case clearly warrant sanctions. In *EMW Women's Surgical Center*, 978 F.3d at 447, an attorney for one of the plaintiffs flew from California to Kentucky to prepare for and take a deposition. The defendant failed to appear at the deposition, and the Sixth Circuit affirmed the district court's award of sanctions in the amount of $21,140.25. *Id.* at 448. The defendant argued that it "had clearly communicated that no representative would attend the deposition." *Id.* at 447. The Court rejected this argument, stating that it was "reasonable for [the plaintiff's attorney] to prepare fully for the deposition and send its lead counsel ***in case*** the [defendant] ***decided to appear***." *Id.* at 448. (emphases added). Here, unlike the plaintiff's lawyer in *EMW Women's Surgical Center*, who was informed ***before she travelled from California*** to

1    Kentucky for the deposition that the deponent would not be present, Wells Fargo's counsel

2    confirmed that the deposition would proceed on April 9, 2024. The very next day, Plaintiffs' counsel

3    travelled to Charlotte, North Carolina from Los Angeles, California and was not informed that Wells

4    Fargo was even contemplating withdrawing Mr. Jackson's deposition until approximately 18 hours

5    before it was to start. This gamesmanship warrants sanctions.

6        Sanctions are also warranted pursuant to 28 U.S.C. § 1927. "An award of fees under Section

7    1927 'must be supported by a finding of subjective bad faith.'" *Nelson v. SeaWorld Parks & Ent.,*

8    *Inc.*, No. 15-CV-02172-JSW, 2021 WL 8134398, at *2 (N.D. Cal. July 9, 2021) (citations omitted).

9    The Court may find bad faith "when an attorney knowingly or recklessly raises a frivolous argument

10   or argues a meritorious claim for the purpose of harassing an opponent." *Id.* "Similarly, 'when a

11   party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, delaying or disrupting

12   litigation, or has taken actions in the litigation for an improper purpose[,]' a court has the inherent

13   power to impose attorneys' fees as a sanction." *Id.* Ultimately, "[t]he cost and inconvenience to

14   clients and the judicial system from misuse of the rules for tactical purposes is significant." *Optyl*

15   *Eyewear Fashion Int'l Corp.*, 760 F.2d 1045, 1050 (9th Cir. 1985).

16       Wells Fargo had been apprised of Mr. Jackson's employment at Wells Fargo as early as

17   March 22, 2024, but still noticed his deposition, confirmed it, and then at the eleventh hour cancelled

18   it, ***after it knew Plaintiffs' counsel had already travelled across the country for the deposition***.

19   Wells Fargo had the opportunity to depose Mr. Jackson and develop a record if it truly felt Mr.

20   Jackson was subject to disqualification, but chose not to do so, which shows that it did not want to

21   get to the bottom of any purported conflict. This constitutes bad faith. *See Optyl Eyewear*, 760 F.2d

22   at 1050 (finding bad faith where counsel failed to "undertake discovery to support any supposition

23   or speculation" prior to filing a motion for disqualification.) It is no wonder Wells Fargo sheepishly

24   requests that this Court now grant a "short extension" to depose Mr. Jackson should this Court deny

25   its Motion. (ECF No. 198 at 19-20.)

26       Wells Fargo filed this improper Motion even after Plaintiffs' counsel sent Wells Fargo an e-

27   mail on the evening of April 10, 2024, demonstrating that the law would clearly not favor

28   disqualification and insisting it depose Mr. Jackson at the scheduled time. And Wells Fargo's recent

1  history of gamesmanship, including its retaliation and intimidation of Plaintiffs[10] and its other

2  former employees,[11] reveals a common thread of bad faith litigation and discovery tactics.  Wells

3  Fargo must be held accountable for the manner in which it has litigated this case, which has

4  culminated in this improper Motion.  Without sanctions here, Wells Fargo may never learn its

5  lesson, and continue its abusive tactics in this litigation and beyond.

6  **VIII.   CONCLUSION**

7        Plaintiffs respectfully request that the Court deny Wells Fargo's Motion and issue

8  monetary sanctions in favor of Plaintiffs against Wells Fargo in the amount of $32,253.71.

9  DATED:  May 3, 2024                    ELLIS GEORGE LLP
10                                  Dennis S. Ellis

11                           By:      */s/ Dennis S. Ellis*
12                                    Dennis S. Ellis
                                  Interim Lead Class Counsel

---

[10] Beginning around early 2023, Wells Fargo locked Plaintiff Dr. Gia Gray out of her online account. (Ellis Decl. ¶ 5, Ex. C at 75:10-14).  Dr. Gray spoke to a Wells Fargo employee, Austin C. Sergei, who confirmed to Dr. Gray that she was indeed locked out of her account because of her participation in the pending litigation.  (*Id*., Ex. 332 at WF-00128400-WF-00128404; Ex. 106.) Inadvertently, Wells Fargo revealed its improper actions against Dr. Gray, sending a letter intended for her to her counsel in this case.  (*Id*., Exs. D, E.)  Wells Fargo similarly retaliated against Plaintiff Aaron Braxton.  Mr. Braxton has been with Wells Fargo for almost 25 years, and after this lawsuit was initiated he went to a bank teller seeking to check his balance and was told that the teller could not speak with him due to the litigation.  (*Id*. ¶ 7.).  Wells Fargo also revealed details of Mr. Braxton's confidential banking relationship with it to the media early in this case, (*id*.), which is precluded by Federal law, 15 U.S.C. § 1631, *et seq.*

[11] Wells Fargo's sharp litigation tactics were on full display on December 29, 2023, when Wells Fargo noticed the depositions of six of its former employees for January and February 2024.  (Ellis Decl. ¶ 10, Ex. F.)  On the eves of these depositions, Wells Fargo sent some of these former employees declarations to sign in lieu of being deposed.  (*Id.* ¶ 11, Ex. G.)  In those declarations, Wells Fargo grossly mischaracterized their participation (if at all) in the lawsuit, which most former employees refused to sign without significant and accurate revisions.  (*Id.*)  Wells Fargo then re-noticed one of these depositions for the last day of fact discovery, despite the fact that this former employee had previously informed Wells Fargo that she could not attend on that date due to her father's cancer treatment (*Id.* ¶ 12, Ex. H.)