ELLIS GEORGE LLP
Dennis S. Ellis (State Bar No. 178196)
  dellis@ellisgeorge.com
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

*Interim Lead Class Counsel*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re Wells Fargo Mortgage Discrimination Litigation.* | Case No. 3:22-cv-00990-JD |
| | Honorable James Donato |
| | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SANCTIONS AGAINST WELLS FARGO BANK, N.A. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 37 AND TITLE 28 OF UNITED STATES CODE SECTION 1927** |
| | Date:  June 13, 2024 |
| | Time: 10:00 a.m. |
| | Courtroom:  11 |
| | [Declaration of Milin Chun, Request for Judicial Notice, and [Proposed] Order filed concurrently herewith] |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on June 13, 2024, at 10:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable James Donato, located in the United States Courthouse, Northern District of California, Courtroom 11, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs Bryan Brown, Aaron Braxton, Paul Martin, Gia Gray, Elretha Perkins, Terah Kuykendall-Montoya, Ifeoma Ebo, and Christopher Williams ("Plaintiffs") will, and hereby do, move to impose monetary sanctions in the amount of $32,253.71 for Wells Fargo's discovery abuse and frivolous Motion brought in bad faith and for an improper purpose.  This request for sanctions is made pursuant to Federal Rule of Civil Procedure 37 and 28 U.S.C. § 1927.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Milin Chun, Plaintiffs' Opposition to Wells Fargo Bank, N.A.'s Motion to Disqualify Experts and supporting Declarations of Dennis S. Ellis, Trent Copeland, and Dante Jackson , all of the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court at the hearing on this Motion.

DATED:  May 3, 2024

ELLIS GEORGE LLP
Dennis S. Ellis

By: _____/s/ Dennis S. Ellis_____
Dennis S. Ellis
Interim Lead Class Counsel

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      STATEMENT OF ISSUES TO BE DECIDED

Whether Plaintiffs should be awarded sanctions in the amount of $32,253.71 for Wells Fargo's discovery abuses and for filing a patently frivolous motion seeking to disqualify Plaintiffs' rebuttal expert, Dante Jackson.

### II.      PRELIMINARY STATEMENT

Wells Fargo's conduct with respect to Plaintiffs' rebuttal expert, Dante Jackson, requires the issuance of sanctions.  On March 22, 2024, Plaintiffs disclosed their rebuttal expert Mr. Jackson. After a brief back and forth regarding the scheduling of Mr. Jackson's deposition, which included Wells Fargo seeking additional time from this Court to take Mr. Jackson's deposition (which was denied) (ECF Nos. 185, 189, 193), Wells Fargo noticed his deposition for April 11, 2024.  After confirming on April 9 that the deposition was proceeding, Wells Fargo waited until the evening of April 10, 2024—***nearly three weeks after Mr. Jackson was disclosed as a rebuttal expert*** and 18 hours before his deposition was noticed to start—to accuse Mr. Jackson of impropriety and bias. Then, Wells Fargo unilaterally ***cancelled his deposition after Plaintiffs' counsel travelled from Los Angeles, California to Charlotte, North Carolina***.  That same evening, Wells Fargo informed Plaintiffs that it would likely bring a Motion to Disqualify Plaintiffs' Expert Witness, which it then filed on April 12, 2024 (the "Motion to Disqualify").  (*See* ECF No. 198.)  Plaintiffs told Wells Fargo that it would oppose any such motion and, in fact, informed Wells Fargo that its Motion to Disqualify was without merit.  Instead of taking Mr. Jackson's scheduled deposition and resolving purported concerns with his previous employment at the bank, Wells Fargo chose to cancel the deposition and file a motion to disqualify him as an expert.  This is an abuse of the discovery process warranting compensation to Plaintiffs in the form of sanctions against Wells Fargo.  *See EMW Women's Surgical Center, P.S.C. v. Friedlander*, 978 F.3d 418, 446 (6th Cir. 2020) (affirming monetary sanctions for $21,140.25 where counsel flew from California to Kentucky for a deposition that the defendant canceled).

Wells Fargo subsequently filed its Motion to Disqualify, putting on full display its retaliatory gamesmanship.  This Court should issue monetary sanctions in the amount of $32,253.71 for its

discovery abuse and frivolous Motion brought in bad faith and for an improper purpose.

## III.   RELEVANT FACTUAL BACKGROUND

### A.   Plaintiffs' Expert Dante Jackson

Plaintiffs retained Dante Jackson, an African-American with nearly 30 years of experience in banking and loan underwriting, as a consultant in the matter and, on March 22, 2024, designated him as a rebuttal expert.  (Jackson Decl. ¶ 3.)[1]   Specifically, Mr. Jackson was designated as an expert witness to rebut Dr. Marsha Courchane's opinions regarding Wells Fargo's underwriting policies and procedures, including as to the proposed class members.  (*Id*. ¶ 4.)[2]

As stated in his curriculum vitae, Mr. Jackson previously was employed by Wells Fargo as an underwriter between 2004 and 2006, and as a risk management manager in credit policy and performance between 2006 to 2007.  (Jackson Decl., Ex. A, Appx. B.) ██████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

---

[1] Plaintiffs respectfully request that this Court take judicial notice of the Declarations of Dennis S. Ellis, Trent Copeland, and Dante Jackson in support of Plaintiffs Opposition to Wells Fargo Bank, N.A's Motion to Disqualify Plaintiffs' Expert.  (ECF Nos, 208-1, 208-2, 208-3.)  For ease of review, Plaintiffs have cited to that evidence in this motion maintaining the page, paragraph, and exhibit designation in the original documents.

[2] On March 4, 2024, Wells Fargo filed an Administrative Motion to extend the expert rebuttal and expert discovery deadlines (ECF Nos. 185, 189), which this Court denied (ECF No. 193).  In prior meet-and-confers, Wells Fargo specifically requested that they be permitted to depose Mr. Jackson after the original expert discovery cut-off.  (Ellis Decl. ¶ 3.)

1 ███████████████████████████████████████████████████

2 ███████████████████████████████████████████████████

3 █████████████████████████████████████████████▉█████

4 ███████████████████████████████████████████████████

5 ███████████████████████████████████████████████████

6 ████████████   Mr. Jackson has not shared any confidential information during the course of his

7 work as an expert witness, as he was instructed by Plaintiffs' counsel not to do.  (*Id.*)

8     **B.     Wells Fargo's Eleventh Hour Cancellation of Mr. Jackson's Deposition**

9        From the start of discussions regarding the scheduling of expert depositions, Wells Fargo

10 requested Mr. Jackson's deposition to be set after the expert discovery cut-off (on April 18, 2024).

11 The Court declined to extend the expert discovery period.  (ECF No. 193.)  Plaintiffs made it clear

12 that they would not participate in discovery after the cut-off date, and (after some back and forth)

13 Wells Fargo agreed to take the deposition of Mr. Jackson on April 11, 2024 and noticed the

14 deposition for that date in Charlotte, North Carolina.  (Ellis Decl. ¶ 4, Ex. A.)  On April 8, 2024,

15 Wells Fargo's counsel confirmed the deposition was to go forward as noticed.  (Copeland Decl. ¶

16 7.)  The next day, on April 9, 2024, counsel for Plaintiffs flew from Los Angeles to Charlotte, North

17 Carolina to defend Mr. Jackson's deposition.  (*Id.* ¶ 7.)  On April 10, at approximately 5:00 p.m.

18 EST, counsel for Wells Fargo informed Plaintiffs' counsel that Wells Fargo would not move forward

19 with Mr. Jackson's deposition the next morning.  (*Id.* ¶ 7)  ***This is the first time Wells Fargo ever***

20 ***mentioned any issues with Plaintiffs' retention of Mr. Jackson despite his designation 19 days***

21 ***earlier***.  (*Id.*)  After exchanging e-mails that evening regarding Mr. Jackson's deposition, Plaintiffs

22 made it clear that Mr. Jackson would be attending his duly noticed deposition and, if Wells Fargo

23 withdrew Mr. Jackson's deposition, that Plaintiffs would seek monetary sanctions.  (*Id.* ¶ 11.)  Wells

24 Fargo sent an e-mail indicating that it intended to move to disqualify Mr. Jackson, and Plaintiffs'

25

26 [3] When and Why to Leave a Job Off Your Resume, https://www.indeed.com/career-advice/resumes-
27 cover-letters/leaving-jobs-off-
resume#:~:text=In%20the%20case%20of%20short,relevant%20to%20the%20new%20position
(June 24, 2022).
28

PLAINTIFFS' MOTION FOR SANCTIONS AGAINST WELLS FARGO

1    counsel indicated it would oppose any such motion.  (*Id.* ¶¶ 10-11.)

2         On the morning of April 11, 2024, Plaintiffs' counsel and Mr. Jackson arrived for Mr.

3    Jackson's deposition, but Wells Fargo was not present.  (*Id.* ¶ 12.)  After learning of Wells Fargo's

4    accusations against Mr. Jackson (that he had misappropriated purported confidential information),

5    Mr. Jackson reviewed his past social media posts and podcast recordings for any confidential

6    information and ultimately found none.  (Jackson Decl. ¶ 13.)  However, upon reviewing one of his

7    social media accounts (YouTube), Mr. Jackson noticed that several of the attorneys from Wells

8    Fargo as well as Rich Norelli, a former FBI agent, and digital forensic expert had recently viewed

9    his page.  (*See* Jackson Decl.)  Mr. Jackson was in fear of Wells Fargo's retaliation, which it has a

10   long and recent history of doing against its former employees and even some named Plaintiffs in

11   this case.  (*Id.*)  Since removing these public posts, Mr. Jackson has provided Wells Fargo with all

12   posts and recordings that have appeared on any of his social media accounts and platforms that even

13   remotely relate to Wells Fargo.  (*Id.* ¶ 14; Copeland Decl., ¶ 13.)

14   **IV.    THIS COURT SHOULD SANCTION WELLS FARGO FOR ITS DISCOVERY ABUSE AND FOR FILING ITS PATENTLY FRIVOLOUS MOTION.**

15          **A.    Plaintiffs are Entitled to Costs and Fees for Their Preparation and Travel to Charlotte, North Carolina to Defend Mr. Jackson's Deposition**

16

17          The Ninth Circuit has explained that "Federal Rule of Civil Procedure 37 authorizes the

18   district court, in its discretion, to impose a wide range of sanctions when a party fails to comply with

19   the rules of discovery or with court orders enforcing those rules."  *Wyle v. R.J. Reynolds Indus., Inc.*,

20   709 F.2d 585, 589 (9th Cir. 1983) (citing *NHL v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643

21   (1976)).  "[T]he court ***must order*** the disobedient party

22   , the attorney advising that party, or both to pay the reasonable expenses, including attorney's

23   fees, caused by the failure, unless the failure was substantially justified or other circumstances make

24   an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C) (emphasis added).  A district court may

25   order sanctions if "a party . . . fails, after being served with proper notice, to appear for that person's

26   deposition."  Fed. R. Civ. P. 37(d)(1)(A)(i).  Such a failure "is not excused on the ground that the

27   discovery sought was objectionable, unless the party failing to act has a pending motion for a

28

protective order under Rule 26(c)." Fed. R. Civ. P. 37(d)(2).  When a district court orders sanctions under Rule 37(d), it "***must*** require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3) (emphasis added).

For example,  in *EMW Women's Surgical Center*, 978 F.3d at 447, the plaintiff's attorney flew from California to Kentucky to prepare for and take a deposition.  The defendant failed to appear at the deposition, and the Sixth Circuit affirmed the district court's award of sanctions in the amount of $21,140.25.  *Id.* at 448.  The defendant argued that it "had clearly communicated that no representative would attend the deposition."  *Id.* at 447.  The Court rejected this argument, stating that it was "reasonable for Planned Parenthood to prepare fully for the deposition and send its lead counsel ***in case*** the Governor's Office ***decided to appear***."  *Id.* (emphases added).

Here, just like the plaintiff's attorney in *EMW Women's Surgical Center* who travelled from California to Kentucky for a duly noticed deposition and was awarded monetary sanctions for the defendant's late cancellation, so too should Plaintiffs' counsel be awarded similar monetary sanctions for the unnecessary travel costs and fees.  But, unlike the plaintiff's lawyer in *EMW Women's Surgical Center*, who was informed ***before she travelled from California*** to Kentucky for the deposition that the deponent would not be present, Wells Fargo's counsel confirmed that the deposition would proceed on April 9, 2024.  The very next day, Plaintiffs' counsel travelled to Charlotte, North Carolina from Los Angeles, California and was not informed that Wells Fargo was even contemplating withdrawing Mr. Jackson's deposition until approximately 18 hours before it was to start.  This gamesmanship alone warrants sanctions.

A party seeking the award of attorneys' fees must submit evidence to support the number of hours worked and the rates claimed. *Van Gerwen v. Guarantee Mut. Life Co*., 214 F.3d 1041, 1045 (9th Cir. 2000).  The Ninth Circuit has adopted the "lodestar" approach for assessing the award of attorneys' fees, under which "[t]he 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Camacho v. Bridgeport Fin., Inc*., 523 F.3d 973, 978 (9th Cir.2008) (quoting *Ferland v. Conrad Credit Corp*.,

244 F.3d, 1145, 1149 n. 4 (9th Cir. 2001)).  Here, Plaintiffs' counsel spent 30 hours preparing for Mr. Jackson's deposition, with rates between $600 per hour to $1275 per hour.  (Declaration of Milin Chun ("Chun Decl.") ¶ 3.)  Plaintiffs' counsel also spent $22,253.71 on travel from Los Angeles, California to Charlotte, North Carolina, and accommodations thereto to defend Mr. Jackson's deposition.  (*Id*. ¶ 4)  Thus, Plaintiffs demand that Wells Fargo be sanctioned for the sum of fees and costs that counsel incurred as a result of Wells Fargo's discovery abuse in the amount of $32,253.71, which includes fees related to the preparation of the Opposition to the Motion to Disqualify, this Motion for Sanctions, and the hearing on both.

### B.      Wells Fargo's Motion is in Bad Faith and for an Improper Purpose

"Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  "An award of fees under Section 1927 'must be supported by a finding of subjective bad faith.'"  *Nelson v. SeaWorld Parks and Ent., Inc.*, No. 15-CV-02172-JSW, 2021 WL 8134398, at *2 (N.D. Cal. July 9, 2021).  The Court may find bad faith "when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent."  *Id*.  "Similarly, 'when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, delaying or disrupting litigation, or has taken actions in the litigation for an improper purpose[,]' a court has the inherent power to impose attorneys' fees as a sanction."  *Id*.  Ultimately, "[t]he cost and inconvenience to clients and the judicial system from misuse of the rules for tactical purposes is significant."  *Optyl Eyewear Fashion Int'l Corp.*, 760 F.2d 1045, 1050 (9th Cir. 1985) (citation omitted).

For example, in *Optyl Eyewear*, 760 F.2d at 1048, the Ninth Circuit affirmed the district court's imposition of monetary sanctions for $7,000 against the defendant because its "disqualification motion was meritless, that it was brought solely for tactical reasons, and that it was brought in bad faith."  The Court reasoned that the defendant's motion was brought in bad faith, in part, because it had not "undertake[n] discovery to support any supposition or speculation" it may have had grounds to disqualify.  *Id.* at 1050.  Similarly, in *Raygoza v. City of Fresno*, 297 F.R.D.

PLAINTIFFS' MOTION FOR SANCTIONS AGAINST WELLS FARGO

603, 610 (E.D. Cal. 2014), the Court awarded the defendants "against Plaintiffs . . . and their counsel, jointly and severally, attorney fees in the amount of $2035.00 as the cost of having had to file [a discovery sanction] motion, $277.50 as reimbursement for attorney fees incurred attending the January 10, 2014, . . . deposition which did not take place, and $536.75 as reimbursement for the cost of having a Certified Shorthand Reporter attend the scheduled January 10, 2014, depositions."

Like the defendants in *Raygoza*, the Court should award Plaintiffs their fees and costs for opposing Wells Fargo's frivolous Motion brought in bad faith and for an improper purpose and seeking its fees and costs under Rule 37. Wells Fargo drew Plaintiffs' counsel out to Charlotte, North Carolina, even after confirming two days prior to its scheduled deposition of Mr. Jackson, and waited until 5:00 p.m. EST to broach the possibility that it might not go forward with the deposition after Plaintiffs' counsel had travelled across country. Wells Fargo had been apprised of Mr. Jackson's employment at Wells Fargo as early as March 22, 2024, but still noticed his deposition, confirmed it, and then at the eleventh hour cancelled it. Wells Fargo had the opportunity to depose Mr. Jackson and develop a record if it truly felt Mr. Jackson was subject to disqualification. Such failure to do so is similar to the defendant's failure to take discovery that the Court in *Optyl Eyewear* found to be emblematic of bad faith. Instead, Wells Fargo wasted Plaintiffs' time and resources flying across country to prepare for a deposition it never had any intention of taking. Now, this Motion also seeks to waste the Court's time. It is no wonder Wells Fargo sheepishly requests that this Court grant a "short extension" to depose Mr. Jackson should this Court deny its Motion. (ECF No. 198 at 19-20.) That is what Wells Fargo wanted all along.

Wells Fargo filed this improper Motion even after Plaintiffs' counsel sent Wells Fargo an e-mail on the evening of April 10, 2024, demonstrating that the law would clearly not favor disqualification and insisted it depose Mr. Jackson at the scheduled time. The Court should have no difficulty determining whether Wells Fargo knowingly or recklessly filed this Motion for oppressive, dilatory, disruptive, or improper purposes. And Wells Fargo's recent history of gamesmanship, its retaliation and intimidation of Plaintiffs and its other former employees, reveals a common thread of bad faith tactics. Like the defendants in *Optyl Eyewear* and *Raygoza*, Wells Fargo must be held accountable for the manner in which it has litigated this case, which has

1    culminated in this improper Motion.

2          Accordingly, Plaintiffs request that Wells Fargo be sanctioned for filing this frivolous

3    motion for an improper purpose and in bad faith and cover Plaintiffs' attorneys' fees for preparing

4    this Opposition and preparing for and travelling from Los Angeles to San Francisco to attend the

5    related hearing.  Thus, Plaintiffs respectfully request that Wells Fargo be sanctioned for the sum of

6    fees and costs that counsel incurred, and will incur, as a result of Wells Fargo's filing of this

7    frivolous Motion in the amount of $32,253.71.  Enough is enough!  Just because Plaintiffs did not

8    run to this Court with every instance of Wells Fargo's bad faith litigation tactics, its behavior is

9    well-document culminating in its unprofessional refusal to proceed with Mr. Jackson's deposition.

10    Sanctions are warranted.

11          **C.**    **Wells Fargo's Behavior Violates Guidelines for Professional Conduct**

12          The Northern District's Civil Local Rules are clear:  "Failure by counsel or a party to comply

13    with any duly promulgated local rule or any Federal Rule may be a ground for imposition of any

14    authorized sanction."  (Civil L.R. 1-4.)  This Court adopted a set of Guidelines for Professional

15    Conduct, created in reliance upon the Rules of Professionalism and Rules of Civility of Santa Clara

16    and San Francisco counties (the "Guidelines").  The Guidelines require that "[a] lawyer should be

17    punctual in communications with others and in honoring scheduled appearances."  Specifically, "[a]

18    lawyer should (i) notify opposing counsel and, if appropriate, the court *as early as possible* when

19    scheduled meetings, hearings, or ***depositions*** must be cancelled or rescheduled, and (ii) provide

20    alternate dates for such meetings hearings, or depositions when possible."   (Northern District

21    Guidelines for Professional Conduct, available at: https://www.cand.uscourts.gov/forms/guidelines-

22    for-professional-conduct/, § 3) (emphasis added.)  With respect to depositions, the Northern District

23    explicitly states that "a lawyer should not delay a deposition for bad faith purposes."  (*Id*., § 9, As

24    to Depositions, (e).)

25          In addition to the mandatory sanctions outlined above, this Court also is authorized to order

26    sanctions where counsel's conduct is facially unprofessional.  Namely, violations of the Northern

27    District's Guidelines for Professional Conduct are a basis for the imposition of sanctions.  *See Silver*

28    *v. BA Sports Nutrition LLC*, No 20-cv-0063-SI, 2020 WL 6342939 at *1 (N.D. Cal. 2020) (stating

that the court a court may impose sanctions to "ensure that counsel adhere to the Guidelines of Professional Conduct.").   As explained above, Wells Fargo's conduct falls so far outside the Guidelines, sanctions are merited.  Wells Fargo's failure to meet and confer to avoid travel costs prior to its withdrawal of Mr. Jackson's deposition and its subsequent frivolous motion for his disqualification were in bad faith and in clear violation of this Court's Guidelines for Professional Conduct.  Wells Fargo's gamesmanship, thus, mandates the imposition of sanctions. *See Schramm v Montage Health*, No. 17-cv-02757-VKD, 2019 WL 377772 at *9 (N.D. Cal. 2019) ("The Court expects all counsel to abide by those Guidelines… Failure to do so exposes counsel to risk of sanctions or discipline.")

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court award Plaintiffs' counsel monetary sanctions in the amount of $32,253.71.

DATED:  May 3, 2024

ELLIS GEORGE LLP
Dennis S. Ellis

By:    */s/ Dennis S. Ellis*
Dennis S. Ellis
Interim Lead Class Counsel