**MCGUIREWOODS LLP**
Ava E. Lias-Booker (*Admitted pro hac vice*)
alias-booker@mcguirewoods.com
Melissa O. Martinez (*Admitted pro hac vice*)
mmartinez@mcguirewoods.com
Alicia A. Baiardo (SBN: 254228)
abaiardo@mcguirewoods.com
Jasmine K. Gardner (*Admitted pro hac vice*)
jgardner@mcguirewoods.com
Two Embarcadero Center, Suite 1300
San Francisco, CA  94111-3821
Telephone:  415.844.9944
Facsimile:  415.844.9922

**WINSTON & STRAWN LLP**
Amanda L. Groves (SBN: 187216)
agroves@winston.com
Kobi K. Brinson (*Admitted pro hac vice*)
kbrinson@winston.com
Stacie C. Knight (*Admitted pro hac vice*)
sknight@winston.com
Winston & Strawn LLP
333 S. Grand Avenue, 38th Floor
Los Angeles, CA 90071
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

*Attorneys for Defendants Wells Fargo Bank, N.A.*
*and Wells Fargo & Co.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re Wells Fargo Mortgage Discrimination Litigation* | CASE NO.:  3:22-cv-00990-JD |
| | The Hon. James Donato |
| | **DEFENDANT WELLS FARGO BANK, N.A.'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS AGAINST WELLS FARGO BANK, N.A.** |
| | Date:        June 13, 2024 |
| | Time:        10:00 a.m. |
| | Courtroom:   11 |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................................ 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ............................................... 2

III.   LEGAL ARGUMENT ............................................................................................... 3

     A.   Mr. Jackson's Confidentiality Agreements and Sworn Testimony
         Acknowledging Wells Fargo's Underwriting Guidelines as Confidential and
         Proprietary Establish That Wells Fargo's Motion to Disqualify Is
         Objectively Reasonable, Thus Rendering Plaintiffs' Request For Sanctions
         Under 28 U.S.C. § 1927 Improper. ............................................................... 3

         1.   Wells Fargo's Motion is based on objectively reasonable grounds. ............ 4

         2.   Wells Fargo's Motion to enforce confidentiality agreements to
              protect its confidential and proprietary information cannot be
              deemed harassment. ................................................................................... 6

         3.   The imposition of sanctions would be improper, where, as here,
              Defendant attempted to work with Plaintiffs to resolve the conflict. ........... 9

     B.   The Court Should Deny Plaintiffs' Request For Sanctions Under Fed. R.
         Civ. P. 37(d) Because The Rule Does Not Apply To Cancellation Of The
         Deposition Of A Non-Party' Expert Witness. ............................................... 10

IV.    CONCLUSION ......................................................................................................... 12

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Bellah v. Am. Airlines, Inc.*,
  656 F. Supp. 2d 1207 (E.D. Cal. 2009) ................................................................. 5

*Clypole v. Cty. of Monterey*,
  No. 14-CV-02730-BLF, 2016 WL 14555 (N.D. Cal. Jan. 12, 2016) .................................. 11

*Cordy v. The Sherwin-Williams Co.*,
  156 F.R.D. 575 (D.N.J. 1994) ............................................................................. 1

*EMW Women's Surgical Center, P.S.C. v. Friedlander*,
  978 F.3d 418 (6th Cir. 2020) .............................................................................. 11

*English Feedlot, Inc. v. Norden Labs., Inc.*,
  833 F. Supp. 1498 (D. Colo. 1993) ....................................................................... 7

*Estrada v. Rowland*,
  69 F.3d 405 (9th Cir. 1995) ............................................................................... 10

*Frost v. Winslow*,
  No. 19-cv-05190, 2020 WL 820312 (N.D. Cal. Feb. 19, 2020) ................................... 11

*Lindblad v. Bolanos*,
  No. 21-cv-06606-SI, 2022 WL 2402646 (N.D. Cal. July 4, 2022) ................................ 9

*Lopez v. Contra Costa Reg'l Med. Ctr.*,
  903 F. Supp. 2d 835 (N.D. Cal. 2012) .................................................................... 9

*Mallak v. Aitkin Cty.*,
  No. 13-cv-2119, 2016 WL 8607391 (D. Minn. June 30, 2016) ................................... 7

*McCoy v. Depuy Orthopaedics, Inc.*,
  No. 22-CV-2075 JLS (SBC), 2023 WL 4551081 (S.D. Cal. July 14, 2023) .................. 5, 7

*MMR/Wallace Power & Indus., Inc. v. Thames Assoc.*,
  764 F. Supp. 712 (D. Conn. 1991) ........................................................................ 1

*Moore v. Keegan Mgmt. Co.*,
  78 F.3d 431 (9th Cir.1996) ................................................................................. 4

*Oliver v. In-N-Out Burgers*,
  945 F. Supp. 2d 1126 (S.D. Cal. 2013) ................................................................. 8

*Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*,
  760 F.2d 1045 (9th Cir. 1985) ............................................................................. 8

*Palmer v. Chelsea Fin. P'ship, LP*,
  423 F. Supp. 2d 1092 (E.D. Cal. 2006) ................................................................. 4

*Pellerin v. Honeywell Int'l Inc.*,
   No. 11cv1278-BEN (CAB), 2012 WL 112539 (S.D. Cal. Jan. 12, 2012) ........................... 1, 4

*Quintana v. Baca*,
   232 F.R.D. 631 (C.D. Cal. 2005) ........................................................................................ 9, 10

*Space Systems/Loral v. Martin Marietta Corp.*,
   No. 95-20122 SW, 1995 WL 686369 (N.D. Cal. Nov. 15, 1995) ................................... 1, 4, 5

*United States ex rel. Grimm Constr. Co., Inc. v. SAE Civil Constr., Inc.*,
   No. 4:CV95-3058, 1996 WL 148521 (D. Neb. Jan. 29, 1996) ................................................ 1

*Villalona-Rodriguez v. United States*,
   2019 WL 13218325 (W.D. Ky. Aug. 22, 2019) ..................................................................... 11

*Wallis v. Centennial Ins. Co., Inc.*,
   927 F. Supp. 2d 909 (C. D. Cal. 2013) ................................................................................... 5

*Watkins v. Infosys*,
   724 Fed. Appx. 520 (9th Cir. 2017) ...................................................................................... 10

*Wis. Loc. Gov't Prop. Ins. Fund v. CH2M Hill, Inc.*,
   No. 02-C-302-DRH, 2005 WL 8165822 (E.D. Wis. Dec. 8, 2005) ........................................ 8

*Zuchowski v. CBS, Inc.*,
   No. 90-55639, 1991 U.S. App. LEXIS 5842 (9th Cir. Apr. 1, 1991) ..................................... 10

**Federal Statutes**

28 U.S.C. § 1927 ............................................................................................................... 1, 4, 5, 9

**Rules**

Federal Rules of Civil Procedure
   Rule 11 ...................................................................................................................................... 9
   Rule 30(b)(6) ........................................................................................................................... 10
   Rule 37 ......................................................................................................................... 2, 10, 11
   Rule 45(g) .................................................................................................................................. 7

Local Rules
   Rule 5.1 ..................................................................................................................................... 9
   Rule 7-4(a)(3) ........................................................................................................................... 9

## I.     INTRODUCTION

Plaintiffs retained Dante Jackson ("Mr. Jackson") to serve as an expert witness in this case knowing that he: (1) was previously employed by Wells Fargo; (2) knows Wells Fargo's confidential and proprietary information and systems relating to underwriting; and (3) has personal animus towards Wells Fargo. Despite knowing of Mr. Jackson's potentially disqualifying conflict of interest, Plaintiffs ask this Court to sanction Wells Fargo for deigning to enforce, and not waive, the confidentiality agreements between it and Mr. Jackson that protect Wells Fargo's confidential and proprietary underwriting guidelines at the heart of this case. Plaintiffs can point to no case supporting the imposition of sanctions under such circumstances; therefore, the motion must be denied.

Indeed, courts nationwide, including California federal courts, routinely disqualify former employees from serving as expert witnesses for an adversary when the moving party establishes: (1) the existence of a confidentiality agreement with the former employee and (2) the moving party shared confidential information with the former employee that is relevant to the issues in the case. *See, e.g.*, *Space Systems/Loral v. Martin Marietta Corp.*, No. 95-20122 SW, 1995 WL 686369, at *2 (N.D. Cal. Nov. 15, 1995); *see also Pellerin v. Honeywell Int'l Inc.*, No. 11cv1278-BEN (CAB), 2012 WL 112539, at *2 (S.D. Cal. Jan. 12, 2012); *Cordy v. The Sherwin-Williams Co.*, 156 F.R.D. 575, 580 (D.N.J. 1994); *United States ex rel. Grimm Constr. Co., Inc. v. SAE Civil Constr., Inc*., No. 4:CV95-3058, 1996 WL 148521, at *4 (D. Neb. Jan. 29, 1996); *MMR/Wallace Power & Indus., Inc. v. Thames Assoc.*, 764 F. Supp. 712, 724-25, n.19 (D. Conn. 1991). It is axiomatic that a well-supported motion is not frivolous or brought in bad faith.

Sanctions are also unwarranted because Wells Fargo did not unreasonably delay in cancelling Mr. Jackson's deposition. The facts and relevant law establish that Wells Fargo cancelled Mr. Jackson's deposition "as early as possible," in accordance with the Court's Guidelines for Professional Conduct. Plaintiffs disclosed Mr. Jackson as a rebuttal expert witness in this case on March 22, 2024. Notwithstanding Mr. Jackson's omission of his 2013 employment with Wells Fargo from his curriculum vitae ("CV") which delayed the bank's efforts to locate his employee file, Wells Fargo was able to uncover within two and a half weeks of Plaintiffs' disclosures the

extent of Mr. Jackson's confidential knowledge and review the various confidentiality agreements by which he was bound (all the while engaging in a flurry of depositions of other experts in this case across the country). Accordingly, Wells Fargo cancelled Mr. Jackson's deposition as soon as it was able to within the short two-and-a-half-week period it had to investigate and make the discoveries that led to the Motion to Disqualify while handling seven (7) other expert depositions across the country in that same period because Plaintiffs refused to allow any depositions after the cut-off despite this Court's express order allowing so. Thus, Wells Fargo's conduct was professional and did not violate the Court's Local Rules or Guidelines for Professional Conduct.

Last, Plaintiffs' request for sanctions under Fed. R. Civ. P. 37(d) should be summarily rejected because Wells Fargo did not fail to appear at its own deposition.

In short, Plaintiffs' request for sanctions is unsupported and is a thinly-veiled attempt to distract from the irrefutable evidence establishing that Mr. Jackson must be disqualified.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs retained Mr. Jackson in December 2023 to serve as an expert witness in this case. **Exhibit A**, D. Jackson Engagement Agreement. Plaintiffs disclosed Mr. Jackson's designation as an expert in this case ***months*** later—only after the designation of affirmative experts—on March 22, 2024. When Plaintiffs finally disclosed Mr. Jackson, the CV they produced omitted any reference to his 2013 employment at Wells Fargo. **Exhibit B**, Jackson Report at Appendix B at 2-3. Mr. Jackson sought to underplay his work history and experience with Wells Fargo's underwriting policies and procedures, as further evidenced by the summary of Mr. Jackson's work experience in Mr. Jackson's report. *See id*. at 2.

Upon learning of Mr. Jackson's expert involvement, Wells Fargo moved quickly to try to uncover the nature and extent of his employment at the bank, which was hampered by the omission of his 2013 employment. **Decl. 1**, Decl. of Ava Lias-Booker ¶ 11. Wells Fargo's initial search for Mr. Jackson's employee file turned up nothing. *Id*. ¶ 4. Accordingly, it was not until a week before Mr. Jackson's noticed deposition that Wells Fargo found Mr. Jackson's employee file and discovered his intimate familiarity with Wells Fargo's underwriting systems and policies and procedures through the various positions he has held at Wells Fargo over the years. At that same

point, Wells Fargo found the various agreements Mr. Jackson signed agreeing to protect Wells Fargo's confidential and proprietary information. *Id*. ¶ 13; *see also* **Decl. 2** Decl. of Paul Macomber, Jr. ¶¶ 3, 10-14, 18, 20.

Although many months passed between the time Plaintiffs retained Mr. Jackson and the time Plaintiffs designated him as an expert witness, Plaintiffs never inquired whether Mr. Jackson was bound by any confidentiality agreements. This failure is remarkable given that Mr. Jackson testified at deposition, in the only other case in which he appeared as an expert witness, that he was privy to the very Wells Fargo's confidential and proprietary systems and information that go directly to the issues in this case and his proffered expert testimony specifically. *See* **Exhibit C**, D. Jackson Jan. 5, 2017 Dep. Tr. 59:3-17.

Almost immediately after uncovering the extent and nature of Mr. Jackson's knowledge of Wells Fargo's confidential and proprietary information and the various confidentiality agreements by which Mr. Jackson was bound, on April 10, 2024—just two and a half weeks after Plaintiffs disclosed Mr. Jackson—Wells Fargo notified Plaintiffs that Wells Fargo could not proceed with Mr. Jackson's deposition because Wells Fargo was not willing to waive its bargained-for confidentiality with Mr. Jackson. **Decl. 1**, Decl. of Ava Lias-Booker ¶ 15. As part of the meet and confer process, Wells Fargo provided Plaintiffs copies of the applicable agreements and offered Plaintiffs additional time to find a replacement expert witness not bound by similar agreements. *Id*. ¶ 18. Plaintiffs refused to withdraw Mr. Jackson's designation. *Id*. ¶ 21.

Accordingly, on April 12, 2024, less than two days after cancelling Mr. Jackson's deposition, Wells Fargo brought this issue to the Court's attention: moving to disqualify Mr. Jackson from serving as an expert in this case, arguing that Mr. Jackson should be disqualified because he signed confidentiality agreement with Wells Fargo and, pursuant to those agreements, he acquired confidential and proprietary information about Wells Fargo's underwriting process that is central to the instant case.  ECF 198 (the "Motion to Disqualify").

## III.     LEGAL ARGUMENT

### A.     Mr. Jackson's Confidentiality Agreements and Sworn Testimony Acknowledging Wells Fargo's Underwriting Guidelines as Confidential and Proprietary Establish That Wells Fargo's Motion to Disqualify Is Objectively

3

**Reasonable, Thus Rendering Plaintiffs' Request For Sanctions Under 28 U.S.C. § 1927 Improper.**

The power to sanction under 28 U.S.C. § 1927 "is an extraordinary remedy, one to be exercised with extreme caution." *See Moore v. Keegan Mgmt. Co.*, 78 F.3d 431, 437 (9th Cir.1996) (citation omitted). Sanctions under Section 1927 "*must* be supported by a finding of subjective bad faith," *Id.* at 436 (citation omitted) (emphasis added), which is only shown when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claims for the purpose of harassing an opponent." *Id.* Therefore, "[f]or sanctions to apply, if a filing is submitted recklessly, it must be frivolous, while if it is not frivolous, it must be intended to harass." *Id.* "An action is frivolous if it lacks an arguable basis in law or fact." *Palmer v. Chelsea Fin. P'ship, LP*, 423 F. Supp. 2d 1092, 1093 (E.D. Cal. 2006). Accordingly, "reckless nonfrivolous filings, without more, may not be sanctioned." *Moore*, 78 F.3d at 436. Here, sanctions under Section 1927 are not warranted because counsel for Wells Fargo has neither raised a frivolous argument nor harassed Plaintiffs.

**1.      Wells Fargo's Motion is based on objectively reasonable grounds.**

As explained in Wells Fargo's Motion to Disqualify, a significant body of case law nationwide supports the disqualification of an expert witness "who previously worked for an adversary and who acquired confidential information during the course of their employment." *Space Systems/Loral*, 1995 WL 686369, at *2. Indeed, the test for disqualification includes whether the party claiming a conflict could "*reasonably conclude* it had a confidential relationship with the expert." *Pellerin*, 2012 WL 112539, at *2 (emphasis added). Wells Fargo easily passes this test. Mr. Jackson signed multiple agreements promising to maintain Wells Fargo's confidential and proprietary information and documents. He admitted at another deposition, not in this matter but publicly available, that he was privy to Wells Fargo's confidential and proprietary underwriting guidelines, manuals, and systems. *See* **Exhibit C**, D. Jackson Jan. 5, 2017 Dep. Tr. 59:3-17. And without a doubt, this knowledge is relevant to the instant litigation—where Mr. Jackson's entire expert opinion relates to the way in which Wells Fargo should (according to him) have underwritten each of the named Plaintiffs' loans. *See Space Systems/Loral*, 1995 WL 686369, at *2 (granting

4

disqualification after the defendant met its obligation of establishing a confidential relationship based on former employee's execution of numerous confidentiality agreements promising not to disclose any trade secrets or other confidential information during his employment); *see also McCoy v. Depuy Orthopaedics, Inc.*, No. 22-CV-2075 JLS (SBC), 2023 WL 4551081, at *6 (S.D. Cal. July 14, 2023) ("[B]oth Defendants and Dr. Li acknowledge that Dr. Li was a consulting polymer chemist to DePuy . . . and was paid by DePuy for consulting. . .; accordingly, it certainly was *objectively reasonable* for Defendants to have believed that a confidential relationship existed between DePuy and Dr. Li at some point." (emphasis added)).

Courts have denied sanctions in much closer cases, where litigants filed motions on less solid ground than Wells Fargo. In *Wallis v. Centennial Ins. Co., Inc.*, for example, the court refused to issue sanctions under 28 U.S.C. § 1927 in an insurance coverage dispute, explaining, "given the plain language of the Policy, plaintiffs' insufficient allegations of agency, and the court's finding that neither collateral nor judicial estoppel applies, Atlantic Mutual's motion presented a close question on which it ultimately prevailed." 927 F. Supp. 2d 909, 920 (C. D. Cal. 2013). The court acknowledged:

> Atlantic Mutual appears to have taken some actions in the past consistent with plaintiffs' contention that it is a party to the Policy. Its motion may therefore be disingenuous. But it may also be good lawyering, for the reasons just explained. The call is close enough that the court cannot find that Atlantic Mutual's motion was made in bad faith. Accordingly, plaintiffs' request for sanctions will be denied.

*Id.*; *see also Bellah v. Am. Airlines, Inc.*, 656 F. Supp. 2d 1207, 1217 (E.D. Cal. 2009) ("While plaintiff's counsel's arguments were ultimately unpersuasive, the court does not find them to be so patently frivolous as to evidence subjective bad faith."). Here, the call is not even close—Mr. Jackson worked at Wells Fargo just five years before the class period and he testified under oath in another matter that is publicly available multiple times that he had confidential and proprietary information about Wells Fargo's guidelines and systems. *See* **Exhibit C**, D. Jackson Jan. 5, 2017 Dep. Tr. 59:3-17. Courts have disqualified expert witnesses on similar facts. Sanctions were not warranted in *Wallis* or *Bellah*, and they certainly have no place here.

2.     **Wells Fargo's Motion to enforce confidentiality agreements to protect its confidential and proprietary information cannot be deemed harassment.**

Plaintiffs make baseless claims that Wells Fargo's Motion to Disqualify is driven by "gamesmanship," "retaliation,"[1] or "intimidation," Mot. for Sanctions at 7, but they were on notice regarding Mr. Jackson's potentially disqualifying conflict when they chose to hire him. Even a cursory inquiry by Plaintiffs during the three months following his retention and before his disclosure as an expert, should have revealed that their proposed expert: (1) signed no less than three documents agreeing to treat Wells Fargo's underwriting guidelines and systems as confidential and proprietary; (2) testified at a deposition in 2017 that he considered such guidelines and systems to be confidential and proprietary; and (3) regularly posts podcasts online that are not only critical of the mortgage lending industry and Wells Fargo, but through which he has solicited Wells Fargo customers to contact him so they can pursue some sort of action against the bank.

Instead of exercising caution in moving forward with the retention of Mr. Jackson as his background demanded, Plaintiffs chose to identify him three weeks before the close of expert discovery and failed to provide complete information about his background, but now cry harassment when Wells Fargo asserts the terms of confidentiality agreements Mr. Jackson voluntarily signed then breached. Plaintiffs had three months to conduct a review of Mr. Jackson's background, but Wells Fargo had less than three weeks before his deposition and the close of expert discovery. And this shorter time period was further complicated by significant and material omissions in the information supplied by Plaintiffs about Mr. Jackson's background. *See* Mot. for Sanctions at 3. Wells Fargo, with the assistance of a private investigator, was able to uncover material omissions in Mr. Jackson's CV, locate his employment file, and locate social media that Plaintiffs failed to produce in response to subpoena.[2] Wells Fargo then learned of Mr. Jackson's 2013 employment

---

[1] "Retaliation" is a legal term under both employment law and the Fair Housing Act that requires substantial evidence to establish. Plaintiffs have not asserted a claim for retaliation in this matter nor have they set forth any evidence of retaliation.

[2] Plaintiffs failed to gather Mr. Jackson's provocative public broadcasts accusing Wells Fargo of discrimination despite the existence of a subpoena requesting such information and Plaintiffs' agreement to produce all non-privileged documents responsive to Wells Fargo's request. *See*

with Wells Fargo, prior misrepresentations regarding Mr. Jackson's educational background, the execution of several confidentiality agreements by Mr. Jackson, and Mr. Jackson's sworn testimony as an expert in another case that confirmed his knowledge of the confidential and proprietary nature of Wells Fargo's underwriting guidelines. To propose an expert with such a potentially disqualifying conflict makes plain that Wells Fargo is not the party that engaged in gamesmanship, let alone retaliation or intimidation. Simply put, stripped of its hyperbole and bombast, Plaintiffs' request for sanctions is neither factually nor legally supportable.

Likewise, Plaintiffs fail to show bad faith in the cancellation of Mr. Jackson's deposition.  A mere two and a half weeks after Plaintiffs disclosed Mr. Jackson, Wells Fargo cancelled Mr. Jackson's deposition to avoid any semblance of waiving its bargained-for confidentiality with Mr. Jackson. *See, e.g.*, *Mallak v. Aitkin Cty.*, No. 13-cv-2119 (DWF/LIB), 2016 WL 8607391, at *10 (D. Minn. June 30, 2016) (refusing to compel a second deposition of Goldstein, an expert, who refused to testify at the first deposition regarding information protected by confidentiality agreements he signed with a company known as Tritech, and stating "[b]ecause Tritech has the right to waive the confidentiality of that information and because requiring Gottstein to testify about the information could expose Gottstein to claims of breach of the confidentiality agreement, the Court concludes that it would impose an undue burden on Gottstein to compel him to submit to a second deposition about the information that Plaintiff seeks.").

Last, the timely filing of the Motion to Disqualify also negates any bad faith.  Two days after the cancellation of the deposition, and within days of learning of Mr. Jackson's conflict, Wells Fargo raised this issue to the Court, filing its Motion to Disqualify to avoid the further breach of the various confidentiality agreements between Wells Fargo and Mr. Jackson, since it was clear that Mr. Jackson does not intend to fulfill his end of the bargain without court intervention. *Compare McCoy*, 2023 WL 4551081, at *9 (granting motion to disqualify even though it was filed sixteen months after the former employee was identified as an expert witness by the other side), *with English Feedlot, Inc.*

---

**Exhibit D**, Subpoena and Request for Expert Production to Dante Jackson, April 8, 2024; *see* Fed. R. Civ. P. 45(g) (a court "may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it").

*v. Norden Labs., Inc.*, 833 F. Supp. 1498, 1504-05 (D. Colo. 1993) (finding that party seeking disqualification who took over eight months after deposing the expert to move for disqualification, was engaged in "a mere tactical maneuver" that "does not manifest a genuine concern about confidentiality"), *and Wis. Loc. Gov't Prop. Ins. Fund v. CH2M Hill, Inc.*, No. 02-C-302-DRH, 2005 WL 8165822, at *2 (E.D. Wis. Dec. 8, 2005) (finding party waived confidentiality where parties had opportunity to discuss conflict of interest at time of expert witness disclosures but waited to raise the argument until trial was a month away).

Against this backdrop, Plaintiffs fail to identify any actual *facts* supporting bad faith, *see Oliver v. In-N-Out Burgers*, 945 F. Supp. 2d 1126, 1130 (S.D. Cal. 2013) ("The Court will not sanction a party based on speculation."), and their reliance on *Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985), a trademark infringement case, is misplaced at best.  *See* Mot. for Sanctions at 6-7. In that case, Optyl sued Style for trademark infringement and sent letters to Optyl's customers in California, stating that other companies were using its trademark and asking whether they had seen or purchased jackets bearing the trademarked labels. *Id*. at 1047. Style counterclaimed for libel against Optyl. *Id*. Optyl responded to an interrogatory stating that Optyl's counsel was involved in drafting the letter. *Id*. Style's counsel moved to disqualify Optyl's counsel (not an expert witness) based solely on this one interrogatory response. *Id*. at 1049.  Given this, the trial court sanctioned Style for moving to disqualify Optyl's as Style "had absolutely no basis for filing a disqualification motion at the time he filed it" and therefore did not have sufficient basis to support the motion. *Id*. at 1050-51.

Unlike Style, Wells Fargo had ample evidence supporting its Motion to Disqualify Mr. Jackson. Wells Fargo has presented the Court with numerous confidentiality agreements signed by Mr. Jackson. Mr. Jackson himself—through sworn testimony at deposition in a different case and a declaration in this case—admitted that Wells Fargo disclosed confidential and proprietary information to him. That information is not only relevant to the instant lawsuit, but it goes to the heart of Plaintiffs' claims and Wells Fargo's defenses. *See generally* Wells Fargo's Motion to Disqualify. These facts stand in stark contrast to those in *Optyl Eyewear*. Plaintiffs are so far off the

mark in meeting their burden to prove bad faith; sanctions pursuant to 28 U.S.C. § 1927 should be summarily rejected.

### 3. The imposition of sanctions would be improper, where, as here, Defendant attempted to work with Plaintiffs to resolve the conflict.

In *Quintana v. Baca*, the court refused to sanction a defendant under Section 1927, where the defendant's attempt to resolve the parties' dispute was rejected by the plaintiff, who proceeded to seek sanctions. 232 F.R.D. 631 (C.D. Cal. 2005). As the Court explained:

> [T]he defendant claims that, during an August 19, 2005 phone call, the defendant's counsel proposed that the parties stipulate that the plaintiff was not pursuing any state law claims in this action and that those affirmative defenses related only to state law claims would be withdrawn . . . . If true, this suggests that the defendant is attempting to work with the plaintiff's counsel. This evidence supports the idea that the defendant is cooperative, not vexatious and not operating in bad faith.

*Id.* at 633.

Similarly, here, Plaintiffs neglect to inform the Court in any of its briefing that Wells Fargo sought to work with Plaintiffs regarding Mr. Jackson's conflict.[3] In its correspondence to Plaintiffs cancelling the deposition, Wells Fargo provided Plaintiffs with the confidentiality agreements that Mr. Jackson signed, and cited well-established case law supporting disqualification. **Decl. 1**, Decl.

---

[3] It is worth noting that Plaintiffs' Objections to Wells Fargo's Reply in Support of the Motion to Disqualify Mr. Jackson, reflect a disregard of the Court's Guidelines for Professional Conduct. Plaintiffs make a meritless claim of a Rule 11 signature violation claim against Wells Fargo in filing the Reply, ECF 220, while acknowledging that the Reply was e-filed using counsel's credentials, which is considered a signature under Civil Local Rule 5.1. When Plaintiffs' counsel omitted his signature from his filed declaration, ECF 195-1, Wells Fargo's counsel alerted Plaintiffs' counsel in a sign of good faith pursuant to this Court's Guidelines for Professional Conduct, which reminds counsel that they have a duty to act with civility, respect, courtesy and cooperation. Plaintiffs were able to file a corrected declaration. ECF 196. Plaintiffs' counsel did not return the favor, filing Objections without conferring in violation of the Guidelines, as well as Rule 11's own safe harbor requirement. *See Lindblad v. Bolanos*, No. 21-cv-06606-SI, 2022 WL 2402646, at *11 (N.D. Cal. July 4, 2022) (denying motion for sanctions based on defendants' inadvertent failure to affix a signature on a filed document and explaining, "[b]ecause the filings were submitted through ECF, a physical signature is not required"). The same applies to Plaintiffs' objections relating to a separate statement of issues to be decided. *See Lopez v. Contra Costa Reg'l Med. Ctr.*, 903 F. Supp. 2d 835, 837 n.3 (N.D. Cal. 2012) (refusing plaintiff's request to deny a motion on the basis that it lacked a statement of the issues as required under L.R. 7-4(a)(3) because "[t]he introductory section of [] motion satisfies the local rules and Plaintiffs fail to explain why such a drastic sanction would be appropriate if it were otherwise.").

of Ava Lias-Booker ¶¶ 17-18. Wells Fargo even offered Plaintiffs the courtesy of time to choose another expert witness in Mr. Jackson's stead, given Mr. Jackson's clear conflicts. *Id*. ¶ 19. Plaintiffs rebuffed Wells Fargo's overtures immediately and baselessly threatened sanctions instead. *Id*. ¶ 21. Under *Quintana*, Plaintiffs request for sanctions should be denied.

### B. The Court Should Deny Plaintiffs' Request For Sanctions Under Fed. R. Civ. P. 37(d) Because The Rule Does Not Apply To Cancellation Of The Deposition Of A Non-Party' Expert Witness.

Rule 37(d) of the Federal Rules of Civil Procedure allows for the imposition of sanctions for a "Party's Failure to Attend its Own Deposition"—not a party's cancellation of a deposition it noticed in advance of the deposition. Specifically, the Rule states, "[t]he court where the action is pending may, on motion, order sanctions if: (i) a party or a party's officer, director, or managing agent—or a person designated under Rule 30(b)(6) or 31(a)(4)—fails, after being served with proper notice, to appear *for that person's deposition*." Fed. R. Civ. P. 37(d)(1)(1)(i) (emphasis added); *see also Estrada v. Rowland*, 69 F.3d 405, 406 (9th Cir. 1995) ("Rule 37(d) sanctions apply only when *a deponent literally fails to show up* for a deposition session" (citation omitted) (emphasis added)); *Zuchowski v. CBS, Inc.*, No. 90-55639, 1991 U.S. App. LEXIS 5842, at *2 (9th Cir. Apr. 1, 1991) ("Fed. R. Civ . P. 37(d) provides for sanctions only where the *deponent fails to appear* for a properly noticed deposition.") (emphasis added); *see also Watkins v. Infosys*, 724 Fed. Appx. 520, 522 (9th Cir. 2017) (affirming the district court's denial of the plaintiff's motion for sanctions under Rule 37 based on its "finding that the motion lacked merit as [the plaintiff] did not show that the 30(b)(6) deponent 'failed to appear' as required by Rule 37(d), and further finding that an award of sanctions against [the defendant], in light of [the plaintiff's] own discovery-related misconduct, was inappropriate.").

Rule 37(d) is simply inapplicable to this case. Wells Fargo did not fail to appear at a deposition in which Wells Fargo was noticed as the deponent. *See generally* Mot. for Sanctions at 4-6 (claiming that Wells Fargo failed to appear for Mr. Jackson's deposition). Instead, for the reasons explained herein, Wells Fargo cancelled—ahead of time, by phone and via email—the deposition of Plaintiffs' proffered expert witness.

Plaintiffs' reliance on the Sixth Circuit's decision in *EMW Women's Surgical Center, P.S.C. v. Friedlander*, 978 F.3d 418, 446 (6th Cir. 2020) is wholly misplaced. *See generally* Mot. for Sanctions at 5. In that case, the plaintiffs sued the state of Kentucky and noticed the deposition of a representative from the governor's office. *Id*. at 446. The state moved for a protective order the night before the noticed deposition, and the motion was not ruled upon in time. *Id*. at 447. The trial court sanctioned the state pursuant Rule 37(d) "for failure to produce a [party] designee for a properly noticed deposition," which the appellate court affirmed. *Id*. at 423. These facts have no bearing on this case, where Wells Fargo cancelled the deposition of a *non-party*.

In addition, as explained above, Wells Fargo had not just a reasonable basis, but had overwhelming support, for cancelling Mr. Jackson's noticed deposition and moving to disqualify. *See Villalona-Rodriguez v. United States*, 2019 WL 13218325, at *5 (W.D. Ky. Aug. 22, 2019) (denying request for sanctions under Rule 37 and finding that defendant's actions were substantially justified and noting "this is not a case where a party simply refused without reason to appear for a deposition," and that instead a "dispute regarding the Privacy Act-protected documents was inextricably linked to the failed depositions."). Plaintiffs' request for sanctions against Wells Fargo under Rule 37(d) must be denied.[4]

---

[4] Likewise, Plaintiffs reliance on Civil L.R. 1-4 to support their request for sanctions is misplaced. Civil L.R. 1-4 only permits the imposition of sanctions for failure to comply with a Court rule. The only Court rule Plaintiffs accuse Wells Fargo of violating is Fed. R. Civ. P. 37(d). *See generally* Mot. for Sanctions. But, as explained herein, that rule is inapplicable.

In similar fashion, Plaintiffs argue entitlement to monetary sanctions based on the Court's Guidelines for Professional Conduct because Wells Fargo cancelled Mr. Jackson's deposition the day prior. *See* Mot. for Sanctions at 8-9. Notwithstanding the fact that Wells Fargo acted in accordance with the Guidelines of Professional Conduct by cancelling the deposition "as early as possible," the Guidelines themselves expressly states that "[t]he Court does not anticipate that these Guidelines will be relied upon as the basis for a motion[.]" *See* Northern District of California Guidelines for Professional Conduct, https://www.cand.uscourts.gov/forms/guidelines-for-professional-conduct/. The Guidelines have only furnished a basis to impose sanction "in extreme circumstances" such as "where 'an attorney repeatedly and unapologetically flouts guideline after guideline[.]'" *Frost v. Winslow*, No. 19-cv-05190, 2020 WL 820312, at *1 (N.D. Cal. Feb. 19, 2020) (quoting *Clypole v. Cty. of Monterey*, No. 14-CV-02730-BLF, 2016 WL 14555, at *1 (N.D. Cal. Jan. 12, 2016)). Plaintiffs failed to present any evidence that such "extreme circumstances" exist here.

IV.     **CONCLUSION**

For the reasons stated above, Plaintiffs' Motion for Sanctions should be denied with prejudice.

Respectfully submitted,

DATED: May 17, 2024                        **MCGUIREWOODS LLP**

By:   */s/ Alicia A. Baiardo*
Ava E. Lias-Booker (*admitted pro hac vice*)
alias-booker@mcguirewoods.com
Alicia A. Baiardo
abaiardo@mcguirewoods.com
Melissa O. Martinez (*admitted pro hac vice*)
mmartinez@mcguirewoods.com
Jasmine K. Gardner (*admitted pro hac vice*)
jgardner@mcguirewoods.com
Two Embarcadero Center, Suite 1300
San Francisco, CA  94111-3821
Telephone: (415) 844-9944
Facsimile: (415) 844-9922

*Attorneys for Defendant*
*Wells Fargo Bank, N.A.*

**WINSTON & STRAWN LLP**

By:   */s/ Amanda L. Groves*
Amanda L. Groves
agroves@winston.com
333 S. Grand Avenue, 38th Floor
Los Angeles, CA 90071
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Kobi K. Brinson (*admitted pro hac vice*)
kbrinson@winston.com
Stacie C. Knight (*admitted pro hac vice*)
sknight@winston.com
300 South Tryon Street, 16th Floor
Charlotte, NC 28202
Telephone: (704) 350-7700
Facsimile: (704) 350-7800

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 17, 2024, I electronically filed the foregoing document entitled **WELLS FARGO BANK, N.A.'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS AGAINST WELLS FARGO BANK, N.A.** with the Clerk of the Court for the United States District Court, Northern District of California, using the CM/ECF system and served a copy of same upon all counsel of record via the Court's electronic filing system.

Dated:  May 17, 2024

By:     */s/ Alicia A. Baiardo*
   Alicia A. Baiardo

# EXHIBIT A



RTG Search Number S-53172; C-49047

**ENGAGEMENT AGREEMENT**

This Engagement Agreement (the "Agreement"), dated December 13, 2023 (the "Effective Date"), is made between United Expert Holdings LLC, a Delaware limited liability company d/b/a Round Table Group ("RTG") and **Ellis George Cipollone O'Brien LLP** (the "Client"), who is representing **AARON BRAXTON, GIA GRAY, BRYAN BROWN AND PAUL MARTIN, on behalf of themselves and all others similarly situated,**, for the case *AARON BRAXTON, GIA GRAY, BRYAN BROWN AND PAUL MARTIN, on behalf of themselves and all others similarly situated, v. WELLS FARGO BANK, N.A., a Delaware corporation; WELLS FARGO HOME MORTGAGE, INC., a Delaware corporation; WELLS FARGO & CO., a Delaware corporation,* (the "Case").

**Contact information, general processes, and confidentiality**
1.      Client contact information:

      **Trent Copeland**
      Partner - Ellis George Cipollone O'Brien LLP
      2121 Avenue of the Stars
      Suite 3000
      Los Angeles, CA 90067
      tcopeland@egcfirm.com
      (310) 274-7100

      **Milin Chun**
      Senior Counsel - Ellis George Cipollone O'Brien LLP
      2121 Avenue of the Stars
      Suite 3000
      Los Angeles, CA 90067
      mchun@egcfirm.com
      (213)725-9800


2.      At Client's request, RTG searched for, identified, and introduced to Client expert candidates, including Mr. Dante Jackson  of Quality Analytic Associates (the "Expert") whom Client wishes to retain to provide consulting and/or expert witness services ("Services") related to the Case through RTG in accordance with the terms hereof. Client shall commence work with Expert until RTG notifies Client that Expert has agreed to the terms pertaining to Expert's Services in this Case. In the event Client requests Services from the Expert directly prior to the execution of this Agreement, then the terms of this Agreement shall be deemed accepted by Client.

3.      It is the responsibility of Client, and not RTG, to ensure that Expert is conflict-free, qualified, and credible in all respects and available for all of Client's needs.  Nothing in this Agreement or in RTG's or Expert's statements to Client shall be construed as a guarantee of a particular opinion or outcome of Client's Case.  Payment of RTG's invoice(s) is not dependent in any way upon the opinion(s) reached by Expert or the results of the Case.

4.      It is the joint responsibility of Client and Expert, and not RTG, to work directly with one another to manage the scope of work, expected hours required, deadlines, and other issues related to the details of Expert's work on this Case. **If Client requests or receives an estimate or budget directly from Expert, it agrees to do so in terms of hours and not dollar amounts to avoid miscommunication or erroneous calculations related to RTG's markup. Budgets and estimates are not to be considered caps unless explicitly agreed to as such in writing.**

5.      The Services performed by Expert under this Agreement are for litigation or other legal purposes and are at the direction of Client. RTG will not participate in the provision of Services by Expert or provide any guidance, direction, or oversight thereof. Neither Client nor Expert shall provide RTG with access to any confidential information related to the Case. This provision will survive the termination of this Agreement.



**Rates and payment terms**

6.        RTG has waived its initial retainer requirement for this engagement.  It is expected that Client will pay all invoices in full promptly in accordance with the terms of this Agreement.  Notwithstanding the foregoing, if the scope of the work changes substantially, Expert and RTG may request a retainer (or retainers) if either Expert or RTG feels a retainer (or retainers) is justified.  The amount of such retainer (or retainers) will be decided jointly between Client and RTG.  **Should Expert and Client communicate directly about any retainer installment, any such communication must be in terms of hours and not dollars to avoid confusion surrounding RTG's markup.**  Any such retainer will be due upon receipt of the invoice for each such retainer, and will be refundable to the extent it is not used.  RTG will promptly refund the retainer balance after receiving the excess balance from the Expert.

7.        The Expert's rates are:

   **Consulting, Research, Reports and Testimony - $595/Hour**

   **Forensic File Review & Narrative Completion Per File (underwriting review) - $675/file**

8.        Client acknowledges that the above rates include RTG's mark-up and that such rates may be reviewed and adjusted annually. Client is responsible for any sales, use, or similar taxes required under applicable law. Client is responsible for reimbursing all necessary out-of-pocket expenses incurred by Expert in connection with the Services provided under this Agreement, or if Client and Expert agree, Client may pay expenses such as hotel, airfare, and car rental directly to provider.

9.        RTG will invoice for the Services of Expert monthly. Not including any retainer invoices, which will be due upon receipt, payment is due within **30** days of invoice delivery. **CLIENT SHALL REMIT PAYMENT DIRECTLY TO RTG AND NOT TO EXPERT.** Client shall remain liable for all payments, including all fees and expenses associated with deposition of Expert, even if under any rule of procedure, the opposing party is responsible for such costs. Payment shall be made in accordance with the payment instructions provided by RTG. In the event Expert sends an invoice directly to Client, the recipient of that invoice shall immediately notify RTG and forward that invoice to RTG for processing. If Client pays Expert directly, Client shall also immediately pay RTG the full amount it is owed for the services of Expert.

**Disputes and unpaid invoices**

10.      Client agrees to review RTG's invoices upon receipt and raise any objections within thirty (30) days of delivery of an invoice, or Client will be deemed to have irrevocably waived its right to object and such failure to object shall constitute Client's agreement that the invoice is valid and payable in full.

11.      In the event Client fails to pay any invoice in full by the due date, Expert shall have the right to withhold delivery of Services, work product, and/or testimony until payment is brought current. In addition, if RTG or Expert has any reasonable concern about timely payment of future invoices, RTG or Expert may require an additional deposit or retainer payable prior to the provision of any additional Services.

12.      RTG shall manage the billing, invoicing, and collection process for Expert. Client agrees to conduct all discussions concerning billing, rates, and invoicing, with RTG, not directly with Expert. Client shall be liable for the costs of reasonable attorney fees and/or reasonable collection agency fees incurred to collect delinquent invoices. RTG reserves the right to assign in full or in part to the Expert, or third parties, the right to collect payment from Client for the Services provided under this Agreement.

**Duration, termination, limitation of liability, law and venue**

13.      This Agreement will remain in effect until Client notifies RTG that no additional Services of Expert are required and all invoices for Expert's Services performed prior to that notice have been paid.

14.      RTG is an independent contractor and shall not be deemed an employee of Client for any purpose whatsoever. Expert is an independent contractor of RTG. Nothing herein shall be construed or implied to create a relationship of partners, joint venturers, or of employer and employee.

15.      Client agrees during the term of this Agreement and for a period of twelve (12) months following the termination or expiration of this Agreement, that if Client wishes to retain Expert for additional services, the retention



shall be through RTG under the terms of a similar, separately negotiated agreement. This provision will survive the termination of this Agreement.

16.      NOTWITHSTANDING ANYTHING ELSE IN THIS AGREEMENT OR OTHERWISE, UNDER NO CIRCUMSTANCES SHALL THE PARTIES HERETO INCLUDING THEIR PARENTS, SUBSIDIARIES AND AFFILIATES, AND EACH OF THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, SHAREHOLDERS, CONTRACTORS, OR AGENTS BE LIABLE TO EACH OTHER FOR ANY CONSEQUENTIAL, INCIDENTAL, SPECIAL OR PUNITIVE DAMAGES. EXCEPT FOR AMOUNTS DUE RTG FOR UNPAID INVOICES, EACH PARTY'S LIABILITY TO THE OTHER FOR DIRECT COMPENSATORY DAMAGES SHALL NOT EXCEED THE AMOUNT OF FEES PAID BY CLIENT FOR THE PERFORMANCE OF SERVICES HEREUNDER.

17.      Neither RTG nor Expert shall be liable for any delays or nonperformance directly or indirectly resulting from circumstances or causes beyond their reasonable control, including but not limited to, fire, epidemic, pandemic, or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order or requirement of any governmental agency or authority

18.      This Agreement constitutes the entire understanding of the parties regarding its subject matter and supersedes all prior or contemporaneous written and oral agreements and communications with respect to its subject matter. If any part of this Agreement is adjudged by any court of competent jurisdiction to be invalid, illegal, or unenforceable, the validity, legality, and enforceability of the remaining provisions will not be affected or impaired thereby and will be enforced to the maximum extent permitted by applicable law. Client may not assign, delegate, or otherwise transfer all or any part of its rights or obligations under this Agreement without the express written consent of RTG. Any purported assignment by Client without advance, written consent of RTG will be null and void. This Agreement will be interpreted, construed, and governed by the laws of the State of Maryland. The parties agree to submit any dispute arising out of or in connection with this Agreement to the exclusive jurisdiction and venue of any state or federal court located in the State of Maryland. This paragraph will survive the termination of this Agreement.

The parties to this Agreement, through their respective authorized representatives, have executed this Agreement as of the Effective Date.

COUNSEL ON BEHALF OF BOTH COUNSEL AND CLIENT

Signature: _____

Print Name: ___Milin Chun_____

Title: ___Senior Counsel_____

UNITED EXPERT HOLDINGS, LLC D/B/A ROUND TABLE GROUP

Signature: ___Monica D. Poole_____

Print Name: ___Monica Douglas Poole_____

Title: ___Director, Expert Witness Services_____

EXHIBIT B

**REBUTTAL REPORT OF DANTE JACKSON TO**

**EXPERT REPORT OF MARSHA COURCHANE, PhD**

*In re Wells Fargo Mortgage Discrimination Litigation*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

**CASE NO. 3:22-CV-00990-JD**

**Prepared by:  Dante Jackson**

**Prepared on behalf of:  Plaintiffs**

**DATE:  March 22, 2024**

Appendix B

# Dante Jackson

.

## Professional Experience

Altisource Inc
**Director – TRELIX Operations** (March 2022- Present)
Recruited, educated, and managed staff of 125 for underwriting, quality control and risk management. Administrated over the delivery of performance audits to 25 nation-wide institutional clients. Executed service surveillance and reviews for clients.

Guaranteed Rate Inc, Chicago, Il
**Director – Due Diligence Operations** (June 2021-Feb 2022)
Assess underwriting risk for loans purchased via correspondent & Joint Venture business channels. Developed post close review process and created risk review protocol for organization that strategically aligns all stakeholders involved across all lines of business ensuring corporate metrics are being met.

- ♦ Negotiated with Joint Ventures regarding repurchase protocols
- ♦ Reset organization and operational risk for organization
- ♦ Recruited auditor staff and trained users on ACES audit protocol

**Regional Underwriting Manager (Nov 2020- June 2021)**
Responsible for managing team of Junior & Senior Underwriters who were tasked with reviewing FHA, VA, Conforming and Non-QM loans for national lender. Managed underwriting team leads ensuring underwriting quality, prioritization & consistency and maintaining thorough knowledge of Guaranteed Rate guidelines and maintaining proficiency with all Agency (FNMA, FHLMC, FHA & VA) guidelines.

- ♦ Coordinated, reviewed and compiled QC results
- ♦ Established regular cadence for team meetings and training
- ♦ Recruited new underwriters for GR Associate program
- ♦ Responsible for second level reviews and escalations when necessary

Quality Analytic Associates, Charlotte, NC
**Risk Management Consultant** (2012 to Present)
Assess underwriting risk for contracted organization and developed plans to prevent and mitigate loan defects prior to pre-fund and post close reviews. Created underwriting risk review protocol for organization that strategically aligns all stakeholders involved, across all lines of business ensuring corporate metrics are being met.

Set protocol for all ongoing RMBS litigations and provide expertise on materiality of findings for each litigation.

- ♦ Arbitrated $7bn. in paid recovery claims for multiple clients.
- ♦ Successful negotiations of over $20bn.  in repurchases using proprietary due diligence review process.

*continued…*

# Dante Jackson

- Reset organization and operational risk for National Mortgage Lender that specializes in Low to moderate income lending.
- Expert witness for RMBS litigation, specializing in Mortgage Credit Policy, Servicing and Underwriting.

US Department of Housing and Urban Development, Washington, DC
**Credit Risk Officer, Single Family** (2011 to 2012)
Led executive and senior management teams who reviewed credit risk issues, identified lender and borrower fraud and misrepresentation, and recommended FHA enforcement policy and procedural improvements, while mitigating department risk and MMI losses.

- Represented FHA in Departmental briefings, presenting option and opinions on FHA portfolio issues.
- Oversaw Operational Risk Team and authorized execution of SF Credit Risk mandates.
- Developed and promoted critical and analytical scorecard tools: Compare Ratio, and TOTAL.
- Facilitated improved SF underwriting, asset management, and credit portfolio monitoring system.

Risk Management Group, Brooklyn, NY.
**Managing Director, Due Diligence Operations, 2007-2011**
Recruited, educated, and managed staff of 125 for underwriting, quality control and risk management. Administrated over the delivery of performance audits to 25 nation-wide institutional clients. Executed service surveillance and reviews for clients.

- Acquired $25bn. in new business.
- Recovered tens of billions of dollars in remediation.
- Redefined industry-wide review parameters and protocols used for litigation with clients and other key parties.
- Reengineered due diligence operations, processes, and reporting systems.
- Revised and improved predatory loan compliance and on-site reporting quality, accuracy and consistency.
- Defined and upgraded review rules and staffing requirement for federal and state compliance reviews (RESPA, GFE, TILA)

Wells Fargo Home Mortgage
**Risk Management Manager/Vice President, Credit Policy, Des Moines, IA, 2006-2007**
Recruited, prepared, and mentored the Risk Management Team. Directed lending managers on decision-making processes, problem-solved conforming, non-conforming, and non-prime policy issues. Assured investor and corporate compliance.  Coordinated with Credit Policy, Capital Markets and Structure Finance Departments. Analyzed underwriting and exception policy risk. Created underwriting guidelines, policies and protocols to reduce risk and liability and maximize profitability.

- Adjudicated over the decision-making process on $2MM - $10MM loans.
- Facilitated in the completion of 50-100 loans per day.
- Entrusted with $5MM single signature signing authority.

**Wholesale Underwriting Manager/Assistant Vice-President, Des Moines, IA, 2004-2006**
Educated and supervised department underwriters on corporate underwriting policies and procedures, and how to reduce risk exposure. Conducted and reviewed monthly risk audits. Examined credit risk management audit results, identified deficiencies and resolved through a corrective course of action. Addressed alternative lending

business channel state and federal regulatory compliance violations. Designed underwriting guidelines and training materials to increase compliance integrity and consistency.

**Contract Underwriter, Silicon Valley Staffing, Walnut Creek, CA 2001-2004**
Instructed, supervised and mentored underwriters and junior underwriting assistants on corporate emerging-market product.

- Conducted second-level review audits accommodating jumbo and non-conforming loans ranging in $650K to $1MM.
- Entrusted with $1MM in signing authority and exceeded compliance underwriting objectives.


Additional Experience

**Team Lead/Senior Underwriter** (1999 to 2000) ▪ Bank of America, Charlotte, NC

**Contract Underwriter** (1997 to 1999) ▪ Strategic Planning Service, Raleigh, NC

**Operations Manager** (1995 to 1997) ▪ Beneficial, Cary, NC

**Microsoft Office Suite**

**Encompass**

**ACES Audit**

**Empower/Origin Point**

EXHIBIT C

1

**DANTÉ JACKSON**
**January 5, 2017**

```
              UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF TENNESSEE
                    WESTERN DIVISION

        ----------------------------X

FIRST HORIZON NATIONAL          )

CORPORATION, et al.,            )

            Plaintiffs,         )   CIVIL ACTION NO.

        vs.                     )   2:15-CV-2235

HOUSTON CASUALTY COMPANY,       )

et al.,                         )

            Defendants.         )

        ----------------------------X




              VIDEOTAPED DEPOSITION OF

                   DANTÉ JACKSON



                      * * * *
```

**DANTÉ JACKSON**
**January 5, 2017**

```
  1              UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF TENNESSEE
  2                  WESTERN DIVISION

  3    ----------------------------X

  4    FIRST HORIZON NATIONAL          )

  5    CORPORATION, et al.,            )

  6              Plaintiffs,           )   CIVIL ACTION NO.

  7          vs.                       )   2:15-CV-2235

  8    HOUSTON CASUALTY COMPANY,       )

  9    et al.,                         )

 10              Defendants.           )

 11    ----------------------------X

 12

 13

 14

 15            VIDEOTAPED DEPOSITION OF

 16                  DANTÉ JACKSON

 17             Washington, D.C. 20004

 18             Thursday, January 5, 2017

 19

 20

 21

 22    Pages:  1 - 348

 23    Job No.   117205

 24    Reported by:  Cindy L. Sebo, RMR, CSR, RPR, CRR,

 25    RSA, LiveDeposition Authorized Reporter
```

59

**DANTÉ JACKSON**
**January 5, 2017**

```
 1      Wells Fargo as well, correct?
 2              A.    That's a separate function.
 3              Q.    And when you talk about internal
 4      underwriting guidelines for different loan
 5      products, would those be proprietary
 6      guidelines that are owned by Wells Fargo at
 7      that time?
 8              A.    Yes.
 9              Q.    Okay.   And in order to formulate
10      Wells Fargo's proprietary underwriting
11      guidelines for, let's say, GSE-conforming
12      loans, you would have to look at the GSE's
13      underwriting standards and requirements in
14      order to do that, correct?
15              A.    Yes.
16              Q.    The idea is that the --
17      Wells Fargo's proprietary guidelines will
18      incorporate the requirements of the GSEs,
19      right?
20              A.    Yes --
21              Q.    Okay.
22              A.    -- for the GSE product.
23              Q.    Right.
24              And did you have any role in
25      creating internal underwriting guidelines for
```

**DANTÉ JACKSON**
**January 5, 2017**

```
 1              C E R T I F I C A T E

 2   DISTRICT OF COLUMBIA:

 3   WASHINGTON, D.C.

 4            I, Cindy L. Sebo, a Notary Public within

 5     and for the Jurisdiction aforesaid, do hereby

 6     certify that the foregoing deposition was taken

 7     before me, pursuant to notice, at the time and

 8     place indicated; that said witness was by me

 9     duly sworn to tell the truth, the whole truth,

10     and nothing but the truth; that the testimony of

11     said witness was correctly recorded in machine

12     shorthand by me and thereafter transcribed under

13     my supervision with computer-aided

14     transcription; that the deposition is a true

15     record of the testimony given by the witness;

16     and that I am neither of counsel nor kin to any

17     party in said action, nor interested in the

18     outcome thereof.

19

20

21

22     _____

23            Cindy L. Sebo, RMR, CRR, RPR, CSR, CCR,

24            CLR, RSA, LiveDeposition Authorized

25                 Reporter and Notary Public
```

EXHIBIT D

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Northern District of California

| | |
|---|---|
| In re Wells Fargo Mortgage Discrimination Litigation | ) |
| *Plaintiff* | ) |
| v. | ) |
| | ) |
| | ) |
| *Defendant* | ) |

Civil Action No.   3:22-cv-00990-JD

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                    Dante Jackson
2018 VETTURA CT, WAXHAW, NC 28173-4572

*(Name of person to whom this subpoena is directed)*

✓ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See request for expert production attached

| Place: McGuireWoods LLP | Date and Time: |
|---|---|
| 201 N. Tryon St., Suite 3000 Charlotte, NC 28202-2146 | 04/11/2024 10:00 am |

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    04/08/2024

CLERK OF COURT

OR

_____          /s/ Alicia A. Baiardo
*Signature of Clerk or Deputy Clerk*              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*    Defendant Wells Fargo Bank, N.A.                                                    , who issues or requests this subpoena, are:

Alicia A. Baiardo, McGuireWoods LLP, Two Embarcadero Center, Suite 1300, San Francisco, CA 94111

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   3:22-cv-00990-JD

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

1

**MCGUIREWOODS LLP**
AVA E. LIAS-BOOKER (*Pro Hac Vice Admission*)

2

alias-booker@mcguirewoods.com
ALICIA A. BAIARDO (SBN 254228)

3

abaiardo@mcguirewoods.com
JASMINE K. GARDNER (*Pro Hac Vice Admission*)

4

jgardner@mcguirewoods.com
Two Embarcadero Center

5

Suite 1300
San Francisco, CA  94111-3821

6

Telephone:  415.844.9944
Facsimile:  415.844.9922

7

8

**WINSTON & STRAWN LLP**
AMANDA L. GROVES (SBN 187216)

9

agroves@winston.com
KOBI K. BRINSON (*Pro Hac Vice Admission*)

10

kbrinson@winston.com
STACIE C. KNIGHT (*Pro Hac Vice Admission*)

11

sknight@winston.com
333 S. Grand Avenue, 38th Floor

12

Los Angeles, CA 90071
Telephone: 213.615.1700

13

Facsimile: 213.615.1750

14

Attorneys for Defendant
WELLS FARGO BANK, N.A.

15

**UNITED STATES DISTRICT COURT**

16

**NORTHERN DISTRICT OF CALIFORNIA**

17

18

*In re Wells Fargo Mortgage Discrimination Litigation*

Case No. 3:22-CV-00990-JD
Hon. James Donato

19

**DEFENDANT WELLS FARGO BANK, N.A.'S REQUEST FOR EXPERT PRODUCTION TO DANTE JACKSON**

20

21

22

23

24

25

26

27

28

1

1

**DEFINITIONS**

2    1.    "**Action**" shall mean all complaints related to the action titled *In re Wells Fargo*

3    *Mortgage Discrimination Litigation*, Case No. 3:22-CV-00990-JD (N.D. Cal.), including prior,

4    amended, and proposed complaints filed by members of the Putative Class.

5    2.    "**Communicate**" or "**Communications**" shall refer to all written conversations,

6    correspondence, including text messages, e-mails, voice mail, social media posts, and any other

7    written or electronic forms of communications.

8    3.    "**Complaint**" shall mean the Amended and Consolidated Class Action Complaint

9    filed in this Action and any subsequent modifications to same, by stipulation or otherwise.

10   4.    "**Document(s)**" are defined to be synonymous in meaning and in equal scope to the

11   usage of the phrase "Documents or electronically stored information" ("ESI") in Fed. R. Civ. P.

12   34(a)(1)(A).

13   5.    "**Firm(s)**" shall mean law firms representing the Putative Class in this Action,

14   including but not limited to Ellis George LLP; Frank Sims & Stolper LLP; Ben Crump, PLLC; Sani

15   Law, APC; Stowell & Friedman, Ltd.; Evangelista Worley LLC; Sterlington, PLLC; Dann Law

16   Firm; Zimmerman Law Offices, P.C.; Gustafson Gluek PLLC.

17   6.    "**Person(s)**" shall mean natural persons, proprietorships, corporations, public

18   corporations, municipal corporations, the federal government and all departments and agencies

19   thereof, state governments, local governments, other governmental agencies, political subdivisions,

20   partnerships, groups, associations, organizations, or other entities, regardless of form.

21   7.    "**Putative Class**" shall mean Persons named as Plaintiffs in this Action and any other

22   Persons or entities who allegedly fall within the classes defined in paragraphs 155, 159, 160, and 161

23   of the Complaint or any other classes defined in this Action, and all Persons acting or purporting to

24   act on such Persons' behalf.

25   8.    "**Thing(s)**" shall mean any physical object other than a Document.

26   9.    "**You**" and "**Your**" shall mean and refer to Dante Jackson and any Persons acting on

27   behalf of Dante Jackson or at the direction of Dante Jackson.

28

**<u>INSTRUCTIONS</u>**

1.        In accordance with Rule 26(e) of the Federal Rules, Your obligation to respond to these Document requests is continuing. If, after producing the requested Documents, You or someone acting on behalf of You obtains or becomes aware of any further Documents responsive to these requests, You shall promptly produce such additional Documents in accordance with the instructions set forth herein.

2.        If You claim that any Document requested or any portion thereof is privileged, please provide all information on such Document falling within the scope of the Request which is not privileged, and identify with sufficient particularity each item, Document, or Thing, separately, with respect to which You claim a privilege, and state:

      a)        the basis on which the privilege is claimed;

      b)        the author of the Document;

      c)        each Person to whom the Document or copy thereof was sent or otherwise disclosed;

      d)        the date of the Document; and

      e)        the general subject matter of the Document.

You are not requested to provide privileged Documents or portions thereof for which You claim privilege, but only to identify such information, Document, or Thing.

3.        Notwithstanding the assertion of any objection, any purportedly privileged Document containing non-privileged material must be disclosed, with the purportedly privileged portion excised. Identify all excised material from a Document as set forth in paragraph 2 above.

4.        If any Document which You have produced in response to any Request was, but is no longer, in Your present possession or subject to Your control or is no longer in existence, please state whether any such document is:

      a)        missing or lost;

      b)        destroyed;

      c)        transferred to others; and

      d)        otherwise disposed of;

and, for any instance, set forth the surrounding circumstances and state the approximate date of any such loss, destruction, transfer, or disposition, and, if known, state also the present location and custodian of such Document.

5. If You object to part or all of any Request, specify the part together with the reasons for the objection. Produce all Documents called for by that part of the Request to which You do not object.

6. In the event that You are able to produce only some but not all of the Documents called for in a particular Request, produce all the Documents You are able to produce and state the reasons for Your inability to produce the remainder.

7. All Documents are to be produced in the form in which they are kept in the usual course of business. All Documents shall be produced in the manual, booklet, binder, file, folder, envelope, or other Document or container in which they are ordinarily kept or maintained. If for any reason the container cannot be produced, You should provide copies of all labels or other identifying marking thereon.

8. The connectives "and," "or," and "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

9. The singular includes the plural, and vice versa. The past tense of a verb includes the present tense and vice versa.

1

## REQUESTS FOR PRODUCTION

2

**REQUEST FOR PRODUCTION NO. 1:**

3

4

5

All Documents that refer or relate to Communications between You and the Putative Class or between You and the Firm(s) regarding compensation for Your study, reports, or testimony in connection with this Action.

6

**REQUEST FOR PRODUCTION NO. 2:**

7

8

All Documents that refer or relate to any facts and/or data that You were provided in connection with this Action.

9

**REQUEST FOR PRODUCTION NO. 3:**

10

11

All Documents that refer or relate to any assumptions that You were provided in connection with this Action.

12

**REQUEST FOR PRODUCTION NO. 4:**

13

14

All Documents and Communications that are excluded from trial preparation protection pursuant to Rule 26(b)(4)(C)(i)-26(b)(4)(C)(iii) of the Federal Rules of Civil Procedure.

15

**REQUEST FOR PRODUCTION NO. 5:**

16

17

All Documents and Things considered by You in connection with Your study, report, or testimony in this Action.

18

**REQUEST FOR PRODUCTION NO. 6:**

19

20

All Documents and Things collected by You or at Your direction as part of Your study, reports, or testimony in this Action.

21

**REQUEST FOR PRODUCTION NO. 7:**

22

Copies of any publications authored by You.

23

**REQUEST FOR PRODUCTION NO. 8:**

24

25

Documents sufficient to identify each instance in which any members of the Putative Class have retained You as an expert witness.

26

**REQUEST FOR PRODUCTION NO. 9:**

27

Documents sufficient to identify each instance in which one of more of the Firms has

28

DEFENDANT WELLS FARGO BANK, N.A.'S
REQUEST FOR EXPERT PRODUCTION TO DANTE JACKSON

1   retained You as an expert witness.

2   **REQUEST FOR PRODUCTION NO. 10:**

3       Documents sufficient to identify each instance in which one of more of the Firms has

4   represented a party that retained You as an expert witness.

5   **REQUEST FOR PRODUCTION NO. 11:**

6       Copies of all expert reports authored by You that were prepared for, or at the direction of,

7   one of more of the Firms.

8   **REQUEST FOR PRODUCTION NO. 12:**

9       Copies of all deposition testimony transcripts in cases in which You have testified for, or at

10   the direction of, one or more of the Firms.

11   **REQUEST FOR PRODUCTION NO. 13:**

12       Copies of all trial testimony transcripts in cases in which You have testified for, or at the

13   direction of, one or more of the Firms.

14   **REQUEST FOR PRODUCTION NO. 14:**

15       Documents sufficient to show Your experience, including but not limited to Your current

16   *curriculum vitae* or resume.

17   **REQUEST FOR PRODUCTION NO. 15:**

18       All data and Documents considered by You in this Action that has not already been produced

19   in this Action.

20   **REQUEST FOR PRODUCTION NO. 16:**

21       All data and Documents created, relied upon, or considered by You or provided to You that

22   was not included with Your expert report(s).

23   **REQUEST FOR PRODUCTION NO. 17:**

24       All notes, emails, or other documents made by You regarding this Action.

25   **REQUEST FOR PRODUCTION NO. 18:**

26       A list of any Documents and Things You have received regarding this Action since the

27   creation of Your expert report(s).

28

DEFENDANT WELLS FARGO BANK, N.A.'S
REQUEST FOR EXPERT PRODUCTION TO DANTE JACKSON

**REQUEST FOR PRODUCTION NO. 19:**

A list of all Documents or Things You requested and that were not provided to You.

**REQUEST FOR PRODUCTION NO. 20:**

All Documents and Things, including any expert reports authored by You or transcripts of depositions or other sworn testimony.

**REQUEST FOR PRODUCTION NO. 21:**

All Documents and Things, including any expert reports authored by You or transcripts of depositions or other sworn testimony, on any matter that relate to the subject matter of the Expert Rebuttal Report of Dante Jackson provided in this Action, dated March 22, 2024.

**REQUEST FOR PRODUCTION NO. 22:**

Copies of all Your social media activity concerning Wells Fargo, including but not limited to, posts, messages, and shares from 2018 to present, on any social media platform, including but not limited to Facebook/Meta, LinkedIn, Twitter/X, Instagram, and TikTok.

**REQUEST FOR PRODUCTION NO. 23:**

Documents relating to Your courses and degrees from any institution of higher education, including community college and college.

**REQUEST FOR PRODUCTION NO. 24:**

Documents establishing that You majored in finance at William Penn University.

**REQUEST FOR PRODUCTION NO. 25:**

All communications with counsel from the Firms regarding this Action.

**REQUEST FOR PRODUCTION NO. 26:**

All data, Documents, and Communications from Your employment with Wells Fargo from 2007 to 2011 as set forth in Appendix B to the Expert Rebuttal Report of Dante Jackson provided in this Action, dated March 22, 2024.

1  Dated:  April 8, 2024

**MCGUIREWOODS LLP**

2                                      By:    /s/ Alicia A. Baiardo
                                              Ava E. Lias-Booker (*admitted pro hac vice*)
3                                             alias-booker@mcguirewoods.com
                                              Alicia A. Baiardo
4                                             abaiardo@mcguirewoods.com
                                              Jasmine K. Gardner (*admitted pro hac vice*)
5                                             jgardner@mcguirewoods.com
                                              Two Embarcadero Center, Suite 1300
6                                             San Francisco, CA  94111-3821
                                              Telephone: (415) 844-9944
7                                             Facsimile: (415) 844-9922

8

9                                      **WINSTON & STRAWN LLP**

10                                     By:    /s/ Amanda L. Groves
                                              Amanda L. Groves
11                                            agroves@winston.com
                                              333 S. Grand Avenue, 38th Floor
12                                            Los Angeles, CA 90071
                                              Telephone: (213) 615-1700
13                                            Facsimile: (213) 615-1750
                                              Kobi K. Brinson (*admitted pro hac vice*)
14                                            kbrinson@winston.com
                                              Stacie C. Knight (*admitted pro hac vice*)
15                                            sknight@winston.com
                                              300 South Tryon Street, 16th Floor
16                                            Charlotte, NC 28202
                                              Telephone: (704) 350-7700
17                                            Facsimile: (704) 350-7800

18

19                                            Attorneys for Defendant
                                              WELLS FARGO BANK, N.A.
20

21  .

22

23

24

25

26

27

28

1

**PROOF OF SERVICE**

2

*In re Wells Fargo Mortgage Discrimination Litigation.*

3

Northern District of California Case No. 3:22-cv-00990-JD

4

   I hereby certify that on April 8, 2024, I electronically transmitted the foregoing document

5

to counsel for Plaintiffs.

6

   I declare under penalty of perjury under the laws of the United States of America that the

7

foregoing is true and correct.

8

   Executed on April 8, 2024 at Los Angeles, California.

9

10

        /s/ *Josh Tabisaura*
        Josh Tabisaura

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT WELLS FARGO BANK, N.A.'S
REQUEST FOR EXPERT PRODUCTION TO DANTE JACKSON