# Exhibit 4

CONFIDENTIAL

```
 1                UNITED STATES DISTRICT COURT
 2                NORTHERN DISTRICT OF CALIFORNIA
 3
 4     _____
 5     In re Wells Fargo Mortgage    )Case No.
 6     Discrimination Litigation     )3:22-CV-00990-JD
 7                                   )
       _____)
 8
 9
10             -- C O N F I D E N T I A L --
11
12        VIDEOTAPED DEPOSITION OF MICHAEL WALLACE
13               Tuesday, March 26, 2024
14                     Volume I
15
16
17
18
19
20
21     Reported by:
22     KATHLEEN E. BARNEY, CSR No. 5698, RPR
23     Job No. 6608917
24
25     PAGES 1 - 132
```

Page 1

CONFIDENTIAL

1       UNITED STATES DISTRICT COURT

2       NORTHERN DISTRICT OF CALIFORNIA

3

4   _____

5   In re Wells Fargo Mortgage    )Case No.

6   Discrimination Litigation     )3:22-CV-00990-JD

7                                 )

8   _____)

9

10

11

12  Videotaped Deposition of MICHAEL WALLACE, Volume I,

13  taken on behalf of Defendant, beginning at 9:19 a.m.

14  and ending at 2:12 p.m. on Tuesday, March 26, 2024,

15  before KATHLEEN E. BARNEY, Certified Shorthand

16  Reporter No. 5698.

Page 2

```
 1    Fargo produced data is inaccurate.
 2        Q    Remaining term or principal and interest or
 3    both?
 4        A    Both.  They're related.
 5        Q    And you did the same thing for Mr. Brown,        10:11:05
 6    yes?
 7        A    Yes.
 8        Q    Anybody else?
 9        A    Those are the ones that come to my mind --
10        Q    Okay.                                            10:11:20
11        A    -- that I can recall.
12        Q    Are you offering an expert opinion on which
13    of the putative class members were improperly denied
14    for refinance based on their race?
15        A    No.  I don't believe I was asked to form any    10:11:46
16    opinions on that, and I have not.
17        Q    Okay.  Are you offering an expert opinion on
18    which of the putative class members were improperly
19    denied a home purchase loan based on their race?
20        A    Again, I'm not offering an opinion on           10:12:00
21    discrimination.  I'm offering an opinion on damages.
22        Q    Are you offering an opinion on which of the
23    putative class members were improperly denied a home
24    equity line of credit, or HELOC, based on their
25    race?                                                    10:12:18
```

Page 40

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | A | No. |
| 2 | Q | If we can go back through your report -- |
| 3 | A | Would you mind if we took a quick break? |
| 4 | Q | Oh, sure, of course. Five or ten minutes? |
| 5 | A | Five is plenty.                                    10:12:39 |
| 6 | | THE VIDEOGRAPHER: The time is 10:12 and |
| 7 | | we're going off the record. |
| 8 | | (Recess.) |
| 9 | | THE VIDEOGRAPHER: The time is 10:22 and |
| 10 | | we're back on the record.                         10:22:26 |
| 11 | BY MS. MARTINEZ: | |
| 12 | Q | Okay. Mr. Wallace, I'd like for you to turn |
| 13 | | to paragraph 5 of your February 29th report, please. |
| 14 | A | Okay. |
| 15 | Q | Paragraph 5 says:                                 10:22:35 |
| 16 | | "The economic impact of Wells |
| 17 | | Fargo's improper denial of the loan |
| 18 | | applications can be reasonably |
| 19 | | calculated on a class-wide or |
| 20 | | subclass-wide basis using generally             10:22:47 |
| 21 | | accepted financial principles for |
| 22 | | mortgage loans and common modeling |
| 23 | | techniques for measuring economic |
| 24 | | damages." |
| 25 | | Am I correct in assuming that because you         10:22:57 |

Page 41

| | | |
|---|---|---|
| 1 | Does your formula or your methodology | |
| 2 | consider whether or not a customer was approved by | |
| 3 | another lender? | |
| 4 | A    Yes.  So there's a variable in my formula to | |
| 5 | cut off the damage calculation.  And in certain | 10:32:54 |
| 6 | cases where we have information produced by Wells | |
| 7 | Fargo that they received a different loan later, | |
| 8 | that we cut off the damage calculation at that | |
| 9 | point, even though you could extend it, I think, | |
| 10 | depending on the terms of the second loan. | 10:33:12 |
| 11 | Q    Okay.  Let's break that down. | |
| 12 | So for any of the named plaintiffs in this | |
| 13 | case, do you know which of them were approved for a | |
| 14 | loan after their purported denial by Wells Fargo? | |
| 15 | A    I believe Ms. Kuykendall-Montoya was approved | 10:33:35 |
| 16 | for a loan after her denial by Wells Fargo. | |
| 17 | Q    And in calculating damages for | |
| 18 | Ms. Kuykendall-Montoya, did you consider that loan | |
| 19 | that she subsequently received? | |
| 20 | A    We considered it in terms of setting the end | 10:33:55 |
| 21 | date for the damage calculation.  But we did not, | |
| 22 | for example, determine if that loan was also -- | |
| 23 | would have resulted in continuing damages. | |
| 24 | Q    Let's take Ms. Kuykendall-Montoya then as an | |
| 25 | example. | 10:34:29 |

Page 48

1    Did you look to see whether or not she got a
2  better -- she got better terms in that subsequent
3  approval by another lender?
4    A   No.  We just cut off the damage calculation.
5    Q   So the formula that you've derived doesn't                10:34:44
6  consider loan terms that class members may
7  subsequently have obtained from another lender,
8  right?
9        MR. ELLIS:  Objection.  Foundation.
10 Misstates the record.                                           10:35:06
11       You can answer.
12       THE WITNESS:  We haven't applied the model in
13 that way, but the model would be the same.  You
14 could recognize the changing interest rate,
15 including the subsequent loan was not as favorable               10:35:22
16 as the denied loan, and so damages would continue.
17       But at this point we didn't apply the formula
18 in that way.  But the formula -- the terms of the
19 formula would be the same, and you would just change
20 the interest rate at the N equals T.                             10:35:41
21 BY MS. MARTINEZ:
22   Q   I'm going to hand you a document that I'm
23 going to mark as Exhibit 658.
24       (Exhibit 658 was marked for identification
25  and is attached hereto.)                                        10:36:38

Page 49

```
 1   2020, there's data showing how many
 2   lenders borrowers end up going to for their loans.
 3   And the way I read this, at least in 2020, that
 4   about -- I'm adding 22 percent and 5 percent and 1
 5   percent to get 28 percent of borrowers end up going      10:38:35
 6   to multiple lenders when they purchase their home.
 7        Is data and statistics like this relating to
 8   the number of lenders that putative -- that
 9   borrowers go to relevant to your damages opinion?
10        MR. ELLIS:  Objection.  Legal conclusion.           10:38:57
11   Vague.
12        THE WITNESS:  I think indirectly in the sense
13   that it suggests a possibility that putative class
14   members who were denied by Wells Fargo might have
15   received a loan somewhere else.  And that's why         10:39:19
16   we've built into the formula a factor to account for
17   that.
18        So where there's evidence that they've
19   received a subsequent loan, that's factored into the
20   model.  But not simply whether they applied             10:39:36
21   somewhere else.
22   BY MS. MARTINEZ:
23   Q   Right.  So it's the approval that is
24   important, not the actual application, right?
25   A   An application doesn't affect their economic       10:39:45
```

Page 51

| | |
|---|---|
| 1 | if an applicant were then able to subsequently get a |
| 2 | home purchase loan from another lender, I think |
| 3 | you'd say that your damages formula is flexible in |
| 4 | terms of putting a specific cut off for the damages |
| 5 | that would be attributable to Wells Fargo; is that     11:30:18 |
| 6 | right? |
| 7 |     A    I guess I don't know if I'd use the word |
| 8 | "flexible," but the formula includes a variable for |
| 9 | identifying when the damages would be cut off if |
| 10 | they obtained an equivalent replacement loan.     11:30:44 |
| 11 |     Q    Why do you say "equivalent replacement loan"? |
| 12 |     A    Because if you would have gotten a loan at 3 |
| 13 | percent and market rates are higher and you |
| 14 | subsequently get a 4 percent or a 5 percent or a |
| 15 | 6 percent loan, you're not -- you're not in the same     11:31:09 |
| 16 | position you would have been in if you had gotten a |
| 17 | 3 percent loan.  So the damages would only truly |
| 18 | stop if you got an equivalent loan. |
| 19 |     Q    What about if the borrower got a better loan |
| 20 | with better rates?     11:31:34 |
| 21 |     A    I think if that were the case, then they |
| 22 | wouldn't have gotten that -- I mean, I think that in |
| 23 | my formula, you would end the damages there. |
| 24 |     Q    Okay.  And the damages as of the time that |
| 25 | the borrower gets that subsequent loan?     11:31:54 |

Page 75

| | | |
|---|---|---|
| 1 | examining all the evidence, will decide to what | |
| 2 | extent any or all of the 119,100 putative class | |
| 3 | members were discriminated against, and then my | |
| 4 | figures could then be used for any or each of them. | |
| 5 | BY MS. MARTINEZ: | 01:15:41 |
| 6 | Q   Sitting here today, you don't know or you | |
| 7 | don't have an opinion as to which of those 119,000 | |
| 8 | putative class members then would fall within the | |
| 9 | parameters that are set forth in Dr. Kurzendoerfer's | |
| 10 | report on page 5? | 01:15:58 |
| 11 | MR. ELLIS:  Objection.  Foundation. | |
| 12 | Mischaracterizes the report.  Legal conclusion. | |
| 13 | THE WITNESS:  So I don't believe -- I'm not | |
| 14 | aware, and I can't testify for Dr. Kurzendoerfer, | |
| 15 | but I'm not aware that she has identified | 01:16:15 |
| 16 | specifically individuals who were discriminated | |
| 17 | against.  I believe she has identified the | |
| 18 | probability that they would have been approved if | |
| 19 | they were white, given the same circumstances for | |
| 20 | each individual.  And how that will ultimately be | 01:16:33 |
| 21 | applied by the court, I don't know. | |
| 22 | I have seen Ms. Irwin's use of these figures | |
| 23 | in trying to combine them and apply them to my | |
| 24 | analysis, so I understand that approach | |
| 25 | mathematically, but I'm not offering an opinion that | 01:16:54 |

Page 102

```
1
2
3          I, the undersigned, a Certified Shorthand
4     Reporter of the State of California, do hereby
5     certify:
6              That the foregoing proceedings were taken
7     before me at the time and place herein set forth;
8     that any witnesses in the foregoing proceedings,
9     prior to testifying, were placed under oath; that a
10    record of the proceedings was made by me using
11    machine shorthand which was thereafter transcribed
12    under my direction; further, that the foregoing is
13    an accurate transcription thereof.
14             I further certify that I am neither
15    financially interested in the action nor a relative
16    or employee of any attorney of any of the parties.
17             IN WITNESS WHEREOF, I have this date
18    subscribed my name.
19
20             Dated: March 29, 2024
21
22
23    _____
24        KATHLEEN E. BARNEY
25        CSR No. 5698
```

Page 130