DocuSign Envelope ID: 9FB31331-F631-4628-9D26-1A2F3D563792

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re Wells Fargo Mortgage Discrimination Litigation* | Case No. 3:22-cv-00990-JD <br><br> **DECLARATION OF JOHN R. KELLER** |

1

DECLARATION OF JOHN R. KELLER
CASE NO. 3:22-cv-00990-JD

DocuSign Envelope ID: 9FB31331-F631-4628-9D26-1A2F3D563792

I, John R. Keller, declare:

1. I am a Senior Vice President, Business Execution Director for Wells Fargo Home Lending, a division of Wells Fargo Bank, N.A. I have worked at Wells Fargo for more than 18 years. I have personal knowledge of the matters set forth below and could and would testify competently thereto.

2. I understand that Plaintiffs have identified "CORE/ECS" as a Wells Fargo policy. There is no such thing as "CORE/ECS."

3. CORE is a front-end workflow tool that guides the loan origination process. CORE is not an automated underwriting system and it does not make lending decisions or calculate or assign Credit Risk Classes.

4. Credit Risk Classes are assigned by business rules residing within a separate technology application referred to as the Risk Engine. The Risk Engine accomplishes this task by communicating with external automated underwriting systems provided by GSEs and federal agencies, and with Wells Fargo's internal credit scoring models, the Enhanced Credit Score ("ECS") models. These components are described more fully below.

5. Applicant data stored in CORE is used by the Risk Engine and ECS. However, CORE is distinct from ECS and the Risk Engine and it is developed, maintained, and overseen by a different team. My team has overall responsibility for the majority of the business rules within the Risk Engine.

6. The Risk Engine is a technology application that provides information and guidance for credit and operational risk items during the loan underwriting process. It uses data from the applicant's loan application and credit report[1] to help analyze (based on underwriting policies and guidelines) the applicant's creditworthiness. It also helps team members understand tasks that may be necessary to underwrite the loan and assesses the underwriting authority level required to complete them. Finally, the Risk Engine compares the loan characteristics to the thousands of Wells Fargo-, GSE-, and federal agency[2]-approved eligibility, documentation, and underwriting requirements to help determine if the transaction is within guidelines.

---

[1] These data elements are stored in CORE, which is described below.
[2] *E.g.*, FHA, VA.

7.  The Risk Engine cannot and is not designed to identify and evaluate all risk factors. Accordingly, underwriters are instructed that the Risk Engine never supersedes the judgment of the underwriter. Underwriting is done by human underwriters.

8.  To perform its functions, the Risk Engine uses data stored in CORE, including data from the loan application and credit report. As stated above, the Risk Engine and CORE are distinct applications and are managed by different teams. However, they do communicate with each other, and some of the outputs provided by the Risk Engine are displayed in CORE for use by the underwriter during the decisioning process.

9.  As stated above, CORE is not an underwriting system or an automated underwriting system. It does not underwrite or evaluate applications, make final lending decisions, or place applicants into Credit Risk Classes. Instead, CORE is a front-end tool that guides the "flow" of the loan origination process. It also retrieves, stores, and displays information and data (including data from the loan application, certain outputs from the Risk Engine, and final lending decisions).

10. The Risk Engine performs tasks using three general components: (a) business rules; (b) business services; and (c) data attributes.

11. The Risk Engine's "business rules" are discrete pieces of logic that can answer business questions. They are based on the Wells Fargo-, GSE-, and federal agency-approved eligibility, documentation, and underwriting requirements. For example, Wells Fargo's minimum credit score for retail, non-conforming, fixed-rate, purchase loans up to $3,000,000 is 700. Accordingly, there is a business rule that implements that requirement. As additional examples, there are business rules that implement maximum loan amounts, maximum debt-to-income ratio amounts, and the amount of cash reserves required for particular loan transactions. The Risk Engine currently executes tens of thousands of separately identifiable business rules.

12. The business rules are grouped into 16 different "business services," including the Get Risk Decision business service, which contains about 10,000 business rules. Get Risk Decision performs several functions within the Risk Engine. It performs various calculations (e.g., loan-to-value). It determines when a proposed transaction should be sent to the GSEs' or federal agencies' automated

DocuSign Envelope ID: 9FB31331-F631-4628-9D26-1A2F3D563792

underwriting systems (Fannie Mae's Desktop Underwriter ("DU"), Freddie Mac's Loan Product Advisor ("LP" or "LPA"), and HUD's TOTAL Scorecard), communicates with those systems, and receives their responses.

13. Get Risk Decision also applies the existing credit policy and underwriting guidelines that are embedded within the Risk Engine, via the business rules, to the applicant's data (as reflected in CORE), which helps determine the applicant's loan eligibility.

14. In addition, Get Risk Decision creates detailed messaging for underwriters and loan processors to view in CORE (e.g., "escrow for flood insurance is required" or "Mortgage lates are indicated on the credit report. Loan is not eligible for conventional financing.").

15. The Get Risk Decision business service within the Risk Engine also determines, based on the policies, strategies, and guidelines within it, the applicable Credit Risk Class for the proposed transaction. Until July 2021, conforming loan applications were run through the GSEs' automated underwriting systems described above (Fannie Mae's DU and Freddie Mac's LPA) and Wells Fargo's ECS model, and the Credit Risk Class was assigned based on the most favorable response. This functionality was eliminated in July 2021, when Fannie Mae stopped accepting ECS results. As of July 2021, ECS is no longer used to assign Credit Risk Classes to conforming loan applications.

16. The team I oversee did not develop the ECS models or establish the models' parameters. Those functions are performed by a separate modeling team. However, the ECS models are implemented by business rules that reside in the Get Risk Decision business service.

17. ECS generates risk insight messages that point the underwriter to specific information on the applicant's credit report. For example: "Credit Report: Account(s) have 30 plus days past due within the last 6 months." Those messages are communicated from the Risk Engine to CORE and displayed in CORE for underwriter use.

18. The Risk Engine's "data attributes" are data that the business services and business rules use ("inputs") to create data ("outputs"). The Risk Engine uses approximately 3,000 data attributes.

I declare under penalty of perjury that the foregoing is true and correct.

John Keller
—41C67EB87AC04C9—
John R. Keller

Executed on May ___, 2024      5/23/2024

# Certificate Of Completion

Envelope Id: 9FB31331F63146289D261A2F3D563792  
Subject: Complete with DocuSign: Keller Declaration_(19865211)_(6).DOCX  
Source Envelope:  
Document Pages: 5  
Certificate Pages: 3  
AutoNav: Enabled  
EnvelopeId Stamping: Enabled  
Time Zone: (UTC-08:00) Pacific Time (US & Canada)

Signatures: 1  
Initials: 0

Status: Completed

Envelope Originator:  
Tina Mitchell  
420 Montgomery St.  
San Francisco, CA 94104  
Tina.M.Mitchell@wellsfargo.com  
IP Address: 159.45.22.18

## Record Tracking

Status: Original  
     5/23/2024 9:36:47 AM

Holder: Tina Mitchell  
     Tina.M.Mitchell@wellsfargo.com

Location: DocuSign

## Signer Events | Signature | Timestamp

John Keller  
john.r.keller@wellsfargo.com  
Security Level: Email, Account Authentication (None)

DocuSigned by:  
*John Keller*  
41C67EB87AC04C9...

Signature Adoption: Pre-selected Style  
Using IP Address: 159.45.186.16

Sent: 5/23/2024 9:37:47 AM  
Viewed: 5/23/2024 10:15:43 AM  
Signed: 5/23/2024 10:24:44 AM

**Electronic Record and Signature Disclosure:**  
    Accepted: 5/23/2024 10:15:43 AM  
    ID: 7f22510f-6e42-4601-a6dc-28af7681bfa7

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 5/23/2024 9:37:48 AM |
| Certified Delivered | Security Checked | 5/23/2024 10:15:43 AM |
| Signing Complete | Security Checked | 5/23/2024 10:24:44 AM |
| Completed | Security Checked | 5/23/2024 10:24:44 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

# Electronic Record and Signature Disclosure

**Last updated:** April 26, 2021

You are entitled by law to receive certain information "in writing." However, we may instead provide this information to you electronically with your prior consent. We also need your consent to use electronic signatures. In this consent (the "Consent"), "we," "us," "our," and "Wells Fargo" refer to Wells Fargo Bank, N.A. and any affiliate or subsidiary of Wells Fargo Bank, N.A. "You" and "your" refer to the person agreeing to this Consent.

1. **Scope.** In our sole discretion, we may provide to you, or you may sign, submit, or agree to at our request, certain documents, records, disclosures, notices, communications, agreements, fee schedules, statements, and other information in electronic form through the DocuSign system ("Electronic Records"). We may also use electronic signatures and obtain them from you through the DocuSign system ("Electronic Signatures"). You may receive emails related to the Electronic Records and Electronic Signatures. This Consent applies to any Electronic Records or Electronic Signatures in connection with the signing event on the DocuSign system associated with this Consent (the "Signing Event").
2. **Paper Copies.** We will not send you paper copies of any Electronic Records unless we, in our sole discretion, deem it appropriate to do so. If you desire a paper copy of an Electronic Record, you may: (a) download or print the Electronic Record after the Signing Event; or (b) contact the appropriate customer service unit and request a paper copy, for which we may charge you a fee unless prohibited by law. Any such fee will be disclosed at the time of request.
3. **Your Email Address.** To update your email address before completing the Signing Event: (a) if you arrived at the Signing Event through Wells Fargo Online® or a similar online system, follow the appropriate procedure for that system to update your email address; or (b) if you arrived at the Signing Event through a link in an email you received, please contact the Wells Fargo representative associated with that email.
4. **Withdrawal.** This Consent only applies to the Signing Event, and you will not be able to withdraw this Consent after you have completed the Signing Event. If you do not wish to agree to this Consent, you may decline to continue with the Signing Event.
5. **Software and Hardware Requirements.** To use Electronic Records and Electronic Signatures, you must meet the current minimum DocuSign system requirements, which can be found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements. In addition, you must have:
    - A web browser listed on the Wells Fargo Supported Browsers and Operating Systems page (https://www.wellsfargo.com/help/online-banking/browser-supported);
    - An Internet connection;
    - An active email account;
    - A currently supported version of a program that accurately displays PDF files;
    - A computer or other device and an operating system capable of supporting all of the above;
    - A printer, if you wish to print out paper copies of Electronic Records; and
    - Electronic storage, if you wish to retain Electronic Records in electronic form.

Please indicate you have read, understand, and agree to this Consent by selecting the checkbox next to "I agree to use electronic records and signatures" before clicking "CONTINUE" within the Signing Event.