ELLIS GEORGE LLP
Dennis S. Ellis (State Bar No. 178196)
  dellis@ellisgeorge.com
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

*Interim Lead Class Counsel*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re Wells Fargo Mortgage Discrimination Litigation.* | Case No. 3:22-cv-00990-JD<br><br>Honorable James Donato<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT WELLS FARGO BANK, N.A.'S REFILED MOTION TO EXCLUDE TESTIMONY OF DANTE JACKSON**<br><br>Date: July 11, 2024<br>Time: 10:00 a.m.<br>Courtroom: 11 |

# TABLE OF CONTENTS

**Page**

I.     STATEMENT OF ISSUES TO BE DECIDED ................................................................1

II.    PRELIMINARY STATEMENT ...............................................................................1

III.   RELEVANT FACTUAL BACKGROUND .............................................................3

      A.     Wells Fargo's History of Gamesmanship Towards Mr. Jackson. .............................3

      B.     Wells Fargo's Motions to Exclude Plaintiffs' Experts' Testimony. .........................4

IV.   LEGAL STANDARDS ............................................................................................5

      A.     Federal Rule of Evidence 702 Governs Admissibility of Expert Testimony............5

      B.     Rule 26(a)(2)(D) Governs Scope of Rebuttal Report.............................................6

V.     WELLS FARGO'S MOTION TO EXCLUDE SHOULD BE DENIED. ............................7

      A.     Mr. Jackson is a Qualified Underwriting Expert.......................................................8

      B.     Mr. Jackson's Analyses Are Explained and Reliable. ...............................................9

           1.     Mr. Jackson Relies on the Same Materials as Dr. Courchane to Rebut Her Opinions. ...................................................................................9

           2.     Mr. Jackson's Analysis Relies on Wells Fargo's Own Methodology..........10

           3.     Mr. Jackson's Report Meets the Requirements of Rule 26.........................12

      C.     Mr. Jackson's Opinion Is Based On the Factual Record.........................................12

VI.   CONCLUSION .......................................................................................................14

1

## TABLE OF AUTHORITIES

2
Page(s)

### FEDERAL CASES

3

4
*Apple Ipod Itunes Antitrust Litig.*,
75 F. Supp. 3d 1271 (N.D. Cal. 2014) .................................................................................11

5

6
*United States ex rel. Calderon v. Carrington Mortgage Servs., LLC*,
70 F.4th 968 (7th Cir. 2023) ..................................................................................................9

7
*Capri Sun GmbH v. Am. Beverage Corp.*,
595 F. Supp. 3d 83 (S.D.N.Y. 2022) ...............................................................................7, 11

8

9
*Claar v. Burlington N. R.R. Co.*,
29 F.3d 499 (9th Cir. 1994) ...................................................................................................2

10

11
*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993) ...........................................................................................1, 5, 6, 8

12
*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir 2011) ..........................................................................................3, 6, 8

13

14
*Elosu v Middlefork Ranch Inc.*,
26 F.4th 1017 (9th Cir. 2022) ...........................................................................................1, 6

15

16
*FTC v. Qualcomm Inc.*,
2018 WL 6522134 (N.D. Cal. Dec. 11, 2018) ............................................................3, 10, 12

17
*Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co., Inc.*,
647 F. Supp. 3d 145 (S.D.N.Y. 2022) ....................................................................................7

18

19
*In re Aluminum Warehousing Antitrust Litig.*,
336 F.R.D. 5 (S.D.N.Y. 2020) ...............................................................................................7

20

21
*In re Bextra & Celebrex Mktg. Sales Pracs. & Prod. Liab. Litig.*,
524 F. Supp. 2d 1166 (N.D. Cal. 2007) .................................................................................2

22
*In re College Athlete NIL Litig.*,
2023 WL 8372788 (N.D. Cal. Nov. 3, 2023) ......................................................................3, 9

23

24
*In re Google Play Store Antitrust Litig.*,
2022 WL 17252587 (N.D. Cal. Nov. 28, 2022).............................................................. *passim*

25

26
*In re Incretin-Based Therapies Prods. Liab. Litig.*,
2022 WL 898595 (9th Cir. Mar. 28, 2022) ............................................................................2

27
*In re PFA Ins. Mktg. Litig.*,
2022 WL 3146557 (N.D. Cal. June 15, 2022) ......................................................................12

28

PLAINTIFFS' OPPOSITION TO DEFENDANT WELLS FARGO BANK, N.A.'S REFILED MOTION TO
EXCLUDE TESTIMONY OF DANTE JACKSON

**<u>TABLE OF AUTHORITIES</u>**
(continued)

**Page(s)**

*In re Vioxx Prods. Liab. Litig.*,
    401 F. Supp. 2d 565 (E.D. La. Nov. 18, 2005) ................................................................9

*Int'l Business Machines Corp. v. Fasco Indus., Inc.*,
    1995 WL 115421 (N.D. Cal. Mar. 15, 1995) ................................................................6

*Jones v. Nat'l R.R. Passenger Corp.*,
    2022 WL 2869845 (N.D. Cal. July 21, 2022) ................................................................2

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999) ................................................................6

*Nanometrics, Inc. v. Optical Sols., Inc.*,
    2023 WL 7169549 (N.D. Cal. Oct. 30, 2023) ................................................................2

*Powell v. Anheuser-Busch Inc.*,
    2012 WL 12953439 (C.D. Cal. Sept. 24, 2012) ................................................................2

*Powell v Kamireddy*,
    2015 WL 333015 (E.D.N.C. Jan. 26, 2015) ................................................................11

*Primiano v. Cook*,
    598 F.3d 558 (9th Cir. 2010) ................................................................6, 8

*Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*,
    752 F.3d 807 (9th Cir. 2014) ................................................................6

*R&O Const. Co. v. Rox Pro International Group, Ltd.*,
    2011 WL 2923703 (D. Nev. 2011) ................................................................9, 10

*Scott v. Chipotle Mexican Grill, Inc.*,
    315 F.R.D. 33 (S.D.N.Y. 2016) ................................................................6

*Surgical Instrument Serv. Co., Inc. v. Intuitive Surgical, Inc.*,
    2024 WL 1975456 (N.D. Cal. Mar. 31, 2024) ................................................................12

*U.S. v. Hermanek*,
    289 F.3d 1076 (9th Cir. 2002) ................................................................2

*U.S. v. Shih*,
    73 F.4th 1077 (9th Cir. 2023) ................................................................3, 9

*Wendell v. GlaxoSmithKline LLC*,
    858 F.3d 1227 (9th Cir. 2017) ................................................................6

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

## RULES

Fed. R. Civ. P. 26 .................................................................................................6, 12

Fed. R. Civ. P. 26(a)(2)(B)(i) ...........................................................................12

Fed. R. Civ. P. 26(a)(2)(B)(i)-(vi) ....................................................................7

Fed. R. Civ. P. 26(a)(2)(B)(ii)-(iii) ..................................................................12

Fed. R. Civ. P. 26(a)(2)(D) .......................................................................6, 12

Fed. R. Civ. P. 26(a)(2)(D)(ii) .................................................................6, 10

Fed. R. Evid. 702 .................................................................................... *passim*

Fed. R. Evid. 702(a)-(d) ..............................................................................5

Local Rule 7-4(a)(3) ......................................................................................1

## I.      STATEMENT OF ISSUES TO BE DECIDED

Whether Wells Fargo Bank, N.A. ("Wells Fargo") has demonstrated grounds for the exclusion of the testimony of Plaintiffs' rebuttal expert, Dante Jackson.[1]

## II.      PRELIMINARY STATEMENT

In yet another desperate attempt to avoid the merits of this case, Wells Fargo filed a Motion to Exclude the Expert Testimony of Dante Jackson (the "Motion"), its former mortgage underwriter. (ECF No. 243.)  By moving to exclude the proffered testimony of Mr. Jackson, Wells Fargo's broader agenda comes into even clearer focus.  Following Plaintiffs' designation of Mr. Jackson as an expert witness, Wells Fargo began a series of calculated efforts designed to silence Mr. Jackson. First, on April 10, 2024, Wells Fargo unilaterally (and abruptly) cancelled his deposition within hours of its scheduled start; followed shortly thereafter by its Motion to Disqualify Mr. Jackson (ECF No. 198) and several other administrative motions to seal his report.  (ECF Nos. 216, 242.) Now, in its current Motion, Wells Fargo advances a series of baseless arguments in attacking Mr. Jackson's "methodology" and the "factual basis" for his opinions—neither of which provide a basis to exclude his testimony.  This Motion is nothing more than a smoke screen designed to draw attention from the honest and unbiased critique of Wells Fargo's underwriting policies and procedures contained in Mr. Jackson's rebuttal report.  At bottom, Wells Fargo simply disagrees with Mr. Jackson's conclusions, which is not the proper focus of a *Daubert* inquiry.  *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993); *Elosu v Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022) (*Daubert* inquiry is limited to the soundness of the methodology).

While Wells Fargo attempts to hide from the truth behind its discriminatory practices and policies in mortgage lending, one thing is clear:  Mr. Jackson's rebuttal report (the "Report") demonstrates through industry standard mortgage underwriting practices and principles that Wells Fargo's loan origination policies and process deviated from accepted underwriting approaches causing harm to protected class borrowers nationwide, and to the representative Plaintiffs, who

---

[1] It is worth noting, this is now the 7th filing (whether moving papers, opposition, or reply) since March 2024 in which Wells Fargo has failed to include a statement of issues to be decided as required by the Northern District's Civil Local Rule 7-4(a)(3).

PLAINTIFFS' OPPOSITION TO DEFENDANT WELLS FARGO BANK, N.A.'S REFILED MOTION TO
EXCLUDE TESTIMONY OF DANTE JACKSON

1   should have had their loan applications approved.  (*See* ECF No. 204-22, Ex. A.)

2       Indeed, Mr. Jackson's Report evaluates two independent criteria which inform his analysis

3   while critiquing the methodology and opinion of Wells Fargo's expert (with no underwriting

4   experience).  (*Id.*)  First, Mr. Jackson evaluated Wells Fargo's existing underwriting policies and

5   procedures.  (*Id.*)  Second, he conducted an independent review of named Plaintiffs' loan files.  *Id.*

6   Despite Mr. Jackson's clear and concise Report, Wells Fargo's Motion focuses almost entirely on

7   an alleged absence of "methodology" and underwriting used by Mr. Jackson while blatantly

8   ignoring each of the industry principles and underwriting components relied upon in his analysis.

9   (*See* ECF No. 243 at 3-8.)

10      In support of its Motion, Wells Fargo repeatedly mischaracterizes the record, misinterprets

11  case law,[2] and ignores Mr. Jackson's well-reasoned conclusions.  Mr. Jackson's Report is clearly

12  based on the same guidelines and policies that ***Wells Fargo's own expert*** relied upon and includes

13  a comprehensive analysis of Plaintiffs' loan files.  To assert, as Wells Fargo has, that Mr. Jackson's

14  analysis is without factual basis is—given the Report's extensive citations to the record evidence—

15  clearly without merit.  Unable to show that Mr. Jackson's use of common underwriting practices

16  and principles is unreliable, Wells Fargo makes a series of misplaced arguments about the reliability

17

18  _____

    [2] The cases cited by Wells Fargo in its Motion are inapposite.  *See*, *e.g.*, *In re Incretin-Based*

19  *Therapies Prods. Liab. Litig.*, 2022 WL 898595, at *1 (9th Cir. Mar. 28, 2022) (excluding the
    testimony of an affirmative expert based on his reliance on studies not independently reviewed);

20  *U.S. v. Hermanek*, 289 F.3d 1076, 1094 (9th Cir. 2002) (finding the trial court abused its discretion
    in admitting the testimony of the government's affirmative expert at trial in a criminal case for

21  failure to adequately explain methodology); *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 502 (9th
    Cir. 1994) (declining to admit affirmative expert testimony after ordering the experts to provide a

22  basis for their reasoning and methodology which they never proffered at the summary judgment
    stage); *Nanometrics, Inc. v. Optical Sols., Inc.*, 2023 WL 7169549 at *2 (N.D. Cal. Oct. 30, 2023)

23  (granting defendant's motions *in limine* to exclude the testimony of affirmative experts at trial);
    *Jones v. Nat'l R.R. Passenger Corp.*, 2022 WL 2869845 at *5-6 (N.D. Cal. July 21, 2022) (limiting

24  the substitute rebuttal expert witness's testimony to that of the report of the original rebuttal expert);
    *In re Bextra & Celebrex Mktg. Sales Pracs. & Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1176 (N.D.

25  Cal. 2007) (excluding affirmative expert testimony for lack of specialized training on the subject);
    *Powell v. Anheuser-Busch Inc.*, 2012 WL 12953439, at *7 (C.D. Cal. Sept. 24, 2012) (excluding

26  testimony of an expert based on his report and his deposition testimony finding a failure to base
    conclusions on the underlying facts of the case).

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANT WELLS FARGO BANK, N.A.'S REFILED MOTION TO
EXCLUDE TESTIMONY OF DANTE JACKSON

of facts and methodology relied upon by Mr. Jackson.  But Mr. Jackson's analyses are reliable, and Wells Fargo's arguments are, at best, matters for cross-examination, not exclusion.  *In re Google Play Store Antitrust Litig.*, 2022 WL 17252587 at *4 (N.D. Cal. Nov. 28, 2022).  "The Court will 'exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards by making a preliminary determination that the expert's testimony is reliable.'  Any objections short of that are fodder for cross-examination and not exclusion."  *Id.* (citation omitted) (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir 2011)).  The Court should deny Wells Fargo's Motion for the following reasons:

*First*, Mr. Jackson has nearly 30 years of experience in the financial services industry with a focus on residential mortgage underwriting.  *See In re Coll. Athlete NIL Litig.*, 2023 WL 8372788, at *6 (N.D. Cal. Nov. 3, 2023) (finding decades of experience is a sufficient basis to demonstrate reliability of an expert opinion).

*Second*, Mr. Jackson's analyses are reliable and based on the same materials relied upon by Dr. Courchane.  *U.S. v. Shih*, 73 F.4th 1077, 1098 (9th Cir. 2023) (holding, in part, that an expert may rely upon information relied upon by other experts and experts in their field).  To be clear, Dr. Courchane does not have an underwriting background but still relied on the same material that Mr. Jackson analyzed in order to rebut her opinion.  (ECF No. 204-18, Ex. 708, Apps. 1, 4.)  And as a rebuttal expert, Mr. Jackson does not have an obligation to provide his methodology, but does so nonetheless.  *See FTC v. Qualcomm Inc.*, 2018 WL 6522134 at *1 (N.D. Cal. Dec. 11, 2018) (stating that rebuttal disclosures need only rebut evidence identified by other party's expert, but that it is "[o]f course" proper to put forth a different methodology to rebut that of the other expert).

*Third*, Mr. Jackson's opinion is grounded in the evidence adduced in the matter.  Any disagreement otherwise is "fodder for cross-examination," because it goes to the weight of Mr. Jackson's testimony, not its admissibility.  *See In re Google Play Store Antitrust Litig.*, 2022 WL 17252587, at *4.

## III.   RELEVANT FACTUAL BACKGROUND

### A.   Wells Fargo's History of Gamesmanship Towards Mr. Jackson.

Wells Fargo's efforts to exclude Plaintiffs' ***rebuttal*** expert, Dante Jackson, from this

litigation continue.  These persistent efforts began shortly after Mr. Jackson's disclosure on March 22, 2024.  Mr. Jackson is an African-American with nearly 30 years of experience in banking and loan underwriting and was disclosed as an expert retained by Plaintiffs to rebut the opinions of Wells Fargo's expert, Dr. Marsha Courchane.  (ECF No. 204-22, Ex. A.)  Mr. Jackson authored a comprehensive 20-page report in support of class certification, marshalling factual evidence from an extensive review of Plaintiffs' loan files and a corollary analysis of Dr. Courchane's evaluation of these same files given Wells Fargo's underwriting policies and procedures.  (*Id*. at 7-22.)

After a brief back and forth regarding scheduling of Mr. Jackson's deposition, which included Wells Fargo seeking additional time from this Court to take Mr. Jackson's deposition after the expert discovery cut-off on April 18, 2024, which was denied (ECF Nos. 185, 189, 193), Wells Fargo noticed his deposition for April 11, 2024.  (ECF No. 208-1, ¶ 4, Ex. A.)  After confirming on April 9 that his deposition was proceeding, Plaintiffs' counsel flew from Los Angeles, California, to Charlotte, North Carolina to defend the deposition.  (ECF No. 208-2, ¶ 7.)  On the eve of the deposition at approximately 5 p.m. EST Wells Fargo accused Mr. Jackson of impropriety and bias then unilaterally cancelled his deposition.  (*Id*.)  Instead of taking Mr. Jackson's scheduled deposition and resolving any purported concerns regarding his previous employment at the bank— disclosed nearly three weeks prior—Wells Fargo cancelled the deposition and filed a Motion to Disqualify Plaintiffs' Expert Witness.  (*See* ECF No. 198.)  Given this abrupt turn around, especially since Wells Fargo had nearly three weeks to discover any purported impropriety and allowed Plaintiffs' counsel to fly across the country, Plaintiffs informed Wells Fargo that it would seek monetary sanctions.  (ECF No. 208-2, ¶ 11.)  Which Plaintiffs did on May 3, 2024.  (*See* ECF No. 211.)  Both the Motion to Disqualify Mr. Jackson and Plaintiffs' Motion for Sanctions are pending before the Court.

**B.    Wells Fargo's Motions to Exclude Plaintiffs' Experts' Testimony.**

On May 23, 2024, Wells Fargo filed two Motions to Exclude Plaintiffs' Experts—one seeking collectively to exclude Dr. Amanda Kurzendoerfer and Mr. Michael Wallace, and one seeking to exclude the testimony of Mr. Dante Jackson.  (ECF Nos. 228, 231.)  The Court rejected these filings which were then refiled on June 3, 2024.  (ECF Nos. 243-244.)  These Motions come

PLAINTIFFS' OPPOSITION TO DEFENDANT WELLS FARGO BANK, N.A.'S REFILED MOTION TO EXCLUDE TESTIMONY OF DANTE JACKSON

1   on the heels of several attempts by Wells Fargo to seal the Report, and any references to his report

2   within the pleadings.  (ECF Nos. 216, 242.)

3        Wells Fargo's Motion is based on the notion that Mr. Jackson failed to supply or explain his

4   methodology in his Report and that his testimony lacks a sufficient factual basis.  (ECF No. 231 at

5   1.)  Namely, Wells Fargo takes issue (erroneously) with the fact that Mr. Jackson did not "identify

6   what supplemental manuals, guides, matrices or parameters he used to underwrite the named

7   Plaintiffs' loan applications" and that he did not explain which steps he took in conducting the

8   underwriting.  (*Id*. at 2.)  Wells Fargo does not, however, dispute Mr. Jackson's qualifications nor

9   question his experience as a loan underwriter, which includes work for Wells Fargo itself.  (*Id*.)

10  **IV.    LEGAL STANDARDS**

11       **A.    Federal Rule of Evidence 702 Governs Admissibility of Expert Testimony.**

12       Courts determine the admissibility of expert testimony under the standard set forth in

13  *Daubert,* 509 U.S. at 594-95.  "The inquiry envisioned by Rule 702 is, we emphasize, a flexible one.

14  Its overarching subject is the scientific validity and thus the evidentiary relevance and reliability—

15  of the principles that underlie a proposed submission.  The focus, of course, must be solely on

16  principles and methodology, not on conclusions that they generate."  *Id*. (footnote call number

17  omitted).  The Rule does not have a "definitive checklist or test."  *Id.* at 593-94.

18       Federal Rule of Evidence 702 provides that "[a] witness who is qualified as an expert by

19  knowledge, skill, experience, training, or education may testify in the form of an opinion or

20  otherwise if the proponent demonstrates to the court that it is more likely than not:  (a) the expert's

21  scientific, technical, or other specialized knowledge will help the trier of fact to understand the

22  evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the

23  testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a

24  reliable application of the principles and methods to the facts of the case."  Fed. R. Evid. 702(a)-(d).

25  As this Court has "[p]ut [it] more plainly, expert opinions are admissible when they are relevant,

26  supported by the evidence, based on sound methodologies, and useful to the jury on topics that

27  ordinary people would not necessarily understand without help."  *In re Google Play Store Antitrust*

28  *Litig*, 2022 WL 17252587, at *3.  The Rule 702 factors are "illustrative" and "should be applied

1   with a liberal thrust favoring admission." *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232

2   (9th Cir. 2017) (cleaned up).

3          "Ultimately, the test under *Daubert* is not the correctness of the expert's conclusions but the

4   soundness of his methodology." *Elosu,* 26 F.4th at 1024 (cleaned up).  In ruling on a motion to

5   exclude expert testimony, the Court is "'a gatekeeper, not a fact finder.'"  *Id.* at 1020 (quoting

6   *Primiano v. Cook*, 598 F.3d 558, 568 (9th Cir. 2010)).  The Court's task is to "exclude junk science

7   that does not meet Federal Rule of Evidence 702's reliability standards by making a preliminary

8   determination that the expert's testimony is reliable." *Ellis*, 657 F.3d at 982 (citing *Kumho Tire Co.*

9   *v. Carmichael*, 526 U.S. 137, 145, 147-49 (1999)).  "The test 'is not the correctness of the expert's

10  conclusions but the soundness of his methodology,' and when an expert meets the threshold

11  established by Rule 702, the expert may testify and the fact finder decides how much weight to give

12  that testimony." *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co*., 752 F.3d 807, 814 (9th Cir. 2014)

13  (cleaned up).  As this Court has made clear, "any objections short of that are fodder for cross-

14  examination and not exclusion." *In re Google Play Store Antitrust Litig.*, 2022 WL 17252587, at

15  *4.

16          **B.      Rule 26(a)(2)(D) Governs the Scope of Rebuttal Reports.**

17          The scope of rebuttal reports is governed by the standard as stated in Fed. R. Civ. P.

18  26(a)(2)(D).  Under this Rule, a party may submit expert testimony that is "intended solely to

19  contradict or rebut evidence on the same subject matter identified by another party."  Fed. R. Civ.

20  P. 26(a)(2)(D)(ii).  The federal rules and case law emphasize that a rebuttal expert's primary role is

21  to critique the methodologies and opinions of another expert.  *Int'l Bus. Machs. Corp. v. Fasco*

22  *Indus., Inc.*, 1995 WL 115421, at *3 (N.D. Cal. Mar. 15, 1995) ("The supplemental or 'rebuttal'

23  experts cannot put forth their own theories; they must restrict their testimony to attacking the

24  theories offered by the adversary's experts."); *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33,

25  44 (S.D.N.Y. 2016) (finding a rebuttal expert's testimony is limited to the subject matter

26  encompassing the other party's expert's opinions).  In fact, Rule 26 governs the content of an expert

27  report and requires:

28          (i) a complete statement of all opinions the witness will express and the basis and

PLAINTIFFS' OPPOSITION TO DEFENDANT WELLS FARGO BANK, N.A.'S REFILED MOTION TO
EXCLUDE TESTIMONY OF DANTE JACKSON

reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness qualifications, including a list of all publications authorized in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B)(i)-(vi).  Importantly, there is ***no*** requirement for rebuttal experts to offer competing analyses or their own methods.  *In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 5, 29-30 (S.D.N.Y. 2020) (stating that there is no requirement that a rebuttal expert proffer competing analysis); *Capri Sun GmbH v. Am. Beverage Corp.*, 595 F. Supp. 3d 83, 139 (S.D.N.Y. 2022) (denying a motion to exclude based on opposing party's expert's methodology finding the bid to exclude the testimony "fails—badly"); *Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co.*, 647 F. Supp. 3d 145, 246 (S.D.N.Y. 2022) (stating that a rebuttal expert has a less demanding task and need not provide own methods).

## V.   <u>WELLS FARGO'S MOTION TO EXCLUDE SHOULD BE DENIED.</u>

Mr. Jackson's Report is typical of an accepted, reliable rebuttal expert.  He utilized Wells Fargo's internal documents, reflecting Wells Fargo's self-acknowledged "outlier" approval rate status, and ultimately concluded that Wells Fargo's practices during the Class Period were not consistent with industry standards.  Using Wells Fargo's own internal analysis (ECF No. 204-15, Ex. 26) Mr. Jackson explained that, even after adjusting for reporting differences, Wells Fargo's denial rate was still twice that of the industry.  (ECF No. 204-22, Ex. A. at 7.)  Indeed, Mr. Jackson did not have to look far to explain his reasoning, because Wells Fargo's own internal emails offer much of the explanations.  According to an internal Wells Fargo email, a Wells Fargo executive had "questions on why WF is so different" from Chase in particular.  (ECF No. 204-16, Ex. 96.)  In the same email chain, a Wells Fargo employee who decided to "embrace candor" also acknowledged that "[o]verall our refi denial rates are now worse than our other big bank peers" and that "this is a systemic WF policy issue."  (*Id.*; ECF No. 204-22, Ex. A at 7.)

In further analysis of Wells Fargo's CORE underwriting system, Mr. Jackson assesses that Wells Fargo's use of CORE and its related Enhanced Credit Scoring (ECS) model, Risk Engine and related policies ranked each applicant into a risk class, A1, A2, C1 and C2, and following such

1   ranking, Wells Fargo then proceeded to require a higher level of underwriting, which invariably led

2   to lower approval rates.  (*Id*. at 8.)  Relying on Wells Fargo's own expert, Dr. Courchane, Mr.

3   Jackson notes that Wells Fargo had a policy change in 2020 where those applicants who fell in C1

4   and C2 categories were not sent to an underwriter for manual underwriting—instead they were

5   simply denied.  (*Id*.)  Mr. Jackson explains that simple mistakes in data entry can cause an

6   application to fall into a C1 or C2 category and cost an applicant the opportunity to be approved for

7   a loan.  (*Id*.)

8       Wells Fargo titles its Motion as a "Motion to Exclude."  Rather than directly citing the

9   *Daubert* standard, it hides behind citations quoting to *Daubert*.  (*See* ECF No. 243 at 2:24-3:2.)

10  Even so, this Court must interpret Wells Fargo's efforts to exclude Mr. Jackson under *Daubert*.

11  *Ellis*, 657 F.3d at 982 (stating that the district court must apply the *Daubert* standard at the class

12  certification stage).  As set forth above, under the *Daubert* standard, the party must demonstrate that

13  the expert and his opinion satisfy the elements under Federal Rule of Evidence 702.  *See Daubert*,

14  509 U.S. at 594-95.  Wells Fargo's main *Daubert* objections are that (1) Mr. Jackson does not

15  "explain his methodology" and (2) that there is "no factual basis" for opining that all the named

16  plaintiffs should have been approved.  But these assertions conveniently ignore the very clear and

17  comprehensive Report generated by Mr. Jackson which provides both methodology and factual

18  support for each of his conclusions.  (*See* ECF No. 204-22, Ex. A.)

19      **A.      Mr. Jackson is a Qualified Underwriting Expert.**

20      Nowhere in its Motion does Wells Fargo suggest that Mr. Jackson is unqualified to be an

21  expert witness on the appropriate underwriting standards and policies applicable to the loan files in

22  this case, and for good reason.  Mr. Jackson previously worked as a residential mortgage underwriter

23  for Wells Fargo and he possesses nearly 30 years of experience in the financial services industry,

24  with a focus on the underwriting and servicing of residential home mortgage loans, and government

25  programs created to support those loans.  (ECF No. 204-22, Ex. A.)  He is qualified as an expert in

26  mortgage finance and mortgage underwriting policies, and Wells Fargo does not contend otherwise,

27  despite its obvious vendetta against Mr. Jackson.  *See Primiano*, 598 F.3d at 565.

28      The testimony of an underwriting expert with decades of experience cannot be a basis of

exclusion. *See In re Coll. Athlete NIL Litig.*, 2023 WL 8372788 at *6 (finding decades of experience a sufficient basis to demonstrate reliability of an expert opinion). For example, in *United States ex rel. Calderon v. Carrington Mortgage Services., LLC*, 70 F.4th 968, 975 (7th Cir. 2023), the court determined that a rebuttal expert, opining on ***loan underwriting practices*** generally, was ***admissible***. *Id.* at 975. The court found that the expert's 20-plus years of experience in the residential mortgage industry qualified her as an expert to "rebut the process [the opposing party's expert] followed when she evaluated the reviewed loans." *Id.* Mr. Jackson must be viewed through the lens of the rebuttal expert he is, and when this is done, his opinions and reports are admissible.

> **B.     Mr. Jackson's Analyses Are Explained and Reliable.**
>
> > **1.     Mr. Jackson Relies on the Same Materials as Dr. Courchane to Rebut Her Opinions.**

Mr. Jackson's opinions are based on a thorough and rigorous review of the ***same materials*** relied upon by Wells Fargo's expert, Dr. Courchane.[3] In fact, in terms of the core materials relied upon by both experts there is virtually no difference between them. *See Shih*, 73 F.4th at 1098 (holding, in part, that an expert may rely upon information relied upon by other experts and experts in their field); *In re Vioxx Prods. Liab. Litig.*, 401 F. Supp. 2d 565, 596 (E.D. La. 2005) (denying motion to exclude testimony where plaintiff's expert and defendant's expert relied on the same materials finding that "[d]iffering conclusions are permissible under Rule 702.") They simply reach diametrically opposed opinions from their assessment of the same facts and materials. This is not a basis to exclude Mr. Jackson. For example, in *R&O Construction Co. v. Rox Pro International Group, Ltd.*, 2011 WL 2923703, at *3 (D. Nev. 2011), the expert and rebuttal expert reports addressed "the same general subject matter of the case," the proposed rebuttal report did not "directly address the findings, i.e., 'the same subject matter' of [the] primary expert's report." The rules dictate that a rebuttal expert must not put forth their own theories; instead, "they must restrict

---

[3] Conspicuously absent from Dr. Courchane's curriculum vitae is any indication of specialized experience or expertise in mortgage underwriting, which she admitted during deposition she does not have. (ECF No. 204-18, Ex. 708, App. 4.)

1   their testimony to attacking the theories offered by the adversary's experts." *Id*. (cleaned up.)

2   Here, just as in *R&O*, Plaintiffs proffer Mr. Jackson's report for the sole purpose to rebut the

3   position and opinions of Dr. Courchane—who does not have an underwriting background.  (ECF

4   No. 204-18, App. 4.)   Mr. Jackson engaged in a multi-prong analysis:   (1) he evaluates Dr.

5   Courchane's analysis of Wells Fargo's underwriting policies and procedures; (2) he conducts his

6   own review of Plaintiffs' loan files; and (3) he addresses inconsistencies in Wells Fargo's

7   origination policies with industry standards.  (ECF No. 204-22, Ex. A.)  Mr. Jackson's expert

8   analyses demonstrate Wells Fargo's deviations from accepted underwriting policies and processes

9   and shows a distinct pattern that Wells Fargo treats protected class borrowers unfairly.   (*Id.*)

10  Notably, Wells Fargo does not take issue with any of the materials or record facts relied upon by

11  Mr. Jackson.  Instead, they argue that Mr. Jackson "fails to explain" and "disclose" his methodology

12  while also not providing a "sufficient factual basis" for his opinions.  (ECF No. 243 at 1.)  Wells

13  Fargo is free to make these points during cross-examination, which to this point it has avoided, but

14  they do not provide a sufficient basis for Mr. Jackson's exclusion.

15             **2.      Mr. Jackson's Analysis Relies on Wells Fargo's Own Methodology.**

16             Mr. Jackson need not "disclose" a methodology beyond an evaluation of the underwriting

17  processes used by Wells Fargo.  *See* Fed. R. Civ. P. 26(a)(2)(D)(ii) (a party may "rebut evidence on

18  the same subject matter identified by another party").  Wells Fargo's insistence that he do so is

19  tautological.  Mr. Jackson's opinion is based on *Wells Fargo's* loan underwriting guidelines,

20  including its automated underwriting system, CORE (Common Opportunities, Results and

21  Experiences) and not a different, abstract process invented to create a self-serving methodology for

22  purposes of litigation.  (ECF No. 204-2 – 204-14; ECF No. 204-22, Ex. A.)  As stated, what Mr.

23  Jackson relied upon is virtually identical to that of Wells Fargo's expert.  (*Compare* ECF No. 204-

24  18, Ex. 708, *with* ECF No. 204-22, Ex. A.)

25             Despite the fact Mr. Jackson had no obligation to provide his own methodology, he did so.

26  *See FTC*, 2018 WL 6522134, at *1 (stating that rebuttal disclosures need only rebut evidence

27  identified by other party's expert, but that it is "[o]f course" proper to put forth a different

28  methodology to rebut that of the other expert).  He provides a comprehensive analysis of Plaintiffs'

1    loan files using common underwriting practices and principles, in addition to **Wells Fargo's** own

2    internal existing underwriting policies and procedures as articulated in both Wells Fargo's Non

3    Agency Underwriting Guidelines and Wells Fargo's Agency/Conforming Underwriting Guidelines.

4    (*See* ECF No. 204-22, Ex. A at 2.)

5         Wells Fargo's arguments faulting Mr. Jackson for failing to disclose a different underwriting

6    methodology does not render Mr. Jackson's analysis unreliable.  In fact, in *Capri Sun GmbH*., 595

7    F. Supp. 3d at 139, where a party moved to exclude a rebuttal expert's testimony that was far more

8    in depth than its own expert, the court found the moving party's efforts "strikingly un-self-aware."

9    The court found that "even though a rebuttal expert need only attack the models or methods of the

10   other party's expert, and has no burden to identify alternative or better methodologies," [the rebuttal

11   expert] did so, and proposed an alternative methodology."  *Id*. at 140 (cleaned up).  "At bottom, a

12   rebuttal expert need not proffer a methodology or model, but only critique the opposing expert's."

13   *Id*.

14        Here, Wells Fargo cannot credibly argue that the use of its **own** methodology to evaluate its

15   **own** processes is inherently flawed.  But in criticizing Mr. Jackson for relying on their methodology

16   in reaching his opinion, that is what it appears Wells Fargo is attempting to do.  At best, the

17   arguments set forth in the Motion are the subject of cross-examination at trial, and nothing more.  *In

18   re Google Play Store Antitrust Litig.*, 2022 WL 17252587 at *4; *Apple iPod iTunes Antitrust Litig.*,

19   2014 WL 4809288, at *7 (N.D. Cal. Sept. 26, 2014) ("Under these circumstances, the issue is more

20   appropriately one of weight and credibility.").

21        Indeed, both parties' evaluation of the same system and processes, while reaching a different

22   conclusion, eliminates the variability inherent in abstract methodologies created in a static

23   environment.  To the extent Wells Fargo legitimately needed an explanation, it could have

24   determined all of the basis for Mr. Jackson's opinions beyond what is in his Report, but it chose not

25   to proceed with his deposition.  This litigation decision provides no basis for Mr. Jackson's

26   exclusion either and Wells Fargo should surely not be rewarded for its litigation gamesmanship.

27   *See Powell v Kamireddy,* 2015 WL 333015, at *3 (E.D.N.C. Jan. 26, 2015) (denying defendant's

28   request to amend scheduling order for failure to take plaintiffs' expert deposition within the agreed

1    upon deadlines).

2              **3.    Mr. Jackson's Report Meets the Requirements of Rule 26.**

3         Mr. Jackson's analysis clearly meets the standards as articulated in Rule 26(a)(2)(D).  Wells

4    Fargo's protestations ring hollow, as Mr. Jackson's reasoning is clear in his report.  (ECF No. 204-

5    22, Ex. A.)  On pages 2-3 of his rebuttal report, Mr. Jackson summarizes his opinions expressed on

6    pages 7-22 wherein he analyzes Dr. Courchane's affirmative expert report and Plaintiffs' loan files.

7    (ECF No. 204-22, Ex. A at 7-22); *see also* Fed. R. Civ. P. 26(a)(2)(B)(i).  In Appendix A, he sets

8    forth all materials relied upon in preparation of his report which comprise any exhibits used to

9    support his opinions.   *See* Fed. R. Civ. P. 26(a)(2)(B)(ii)-(iii).   Mr. Jackson's qualifications,

10   professional experience, and the rate of his compensation in this case are all disclosed on page 2 and

11   Appendix B.  *See id*. at (iv)-(vi).  As Rule 26 dictates, a rebuttal expert need only rebut evidence put

12   forth by the other party's affirmative expert.  *See FTC,* 2018 WL 6522134 at *1.  There is absolutely

13   nothing lacking from Mr. Jackson's Rule 26 expert report.

14            **C.    Mr. Jackson's Opinion Is Based On the Factual Record.**

15        Wells Fargo also argues that Mr. Jackson has no factual basis for his opinion that the

16   Plaintiffs should have been approved for loans.  (*See* ECF No. 243.)  But these assertions are merely

17   disagreements as to the analyses of certain facts.  As such, Wells Fargo's "factual" arguments are

18   subjects for cross-examination, which they have conveniently restyled as threshold methodological

19   arguments.  *See In re Google Play Store Antitrust Litig*., 2022 WL 17252587, at *4; *see also In re*

20   *PFA Ins. Mktg. Litig.*, 2022 WL 3146557 at *6 (N.D. Cal. June 15, 2022) (finding that reliance and

21   discussion of the evidence in the case by an expert is an appropriate application of their expertise).

22        An expert may rely on the factual record to base his opinions.  For example, in *Surgical*

23   *Instrument Service Co. v. Intuitive Surgical, Inc*., 2024 WL 1975456 at *4 (N.D. Cal. Mar. 31, 2024),

24   the defendant sought to exclude the testimony of the plaintiff's expert because "he does not apply

25   an expert methodology and instead offers his personal interpretation of quotes from [the

26   defendant's] emails and documents."  *Id*.  The court denied the motion to exclude finding that

27   plaintiff's expert's reliance on the factual record allowed him to assess the defendant's design and

28   such analysis "constitutes admissible expert testimony."  *Id*.  Mr. Jackson's reliance on the factual

1   record is analogous.

2         First, using cherry-picked facts from certain loan applications of certain Plaintiffs, Wells

3   Fargo disingenuously argues that Mr. Jackson ignored key evidence about the Plaintiffs, thus

4   rendering his opinion without factual basis.  (ECF No. 243 at 9-11.)  However, Wells Fargo neglects

5   to observe that Mr. Jackson's critique of Dr. Courchane's analysis is rooted in his assertion as to the

6   existence of discrimination inherent in Wells Fargo's practices, where Dr. Courchane "found

7   nothing in the loan files to suggest that discrimination based on race" played a role in the handling

8   of loan files.  (ECF No. 204-18, Ex. 708 at 50.)  Whether it was Plaintiff Aaron Braxton—who Mr.

9   Jackson asserts did not have an "organic" file review who, based on his credit profile, would have

10  qualified for a No Credit/No Income qualifying FHA streamline refinance, or Plaintiff Bryan

11  Brown—whose debt-to-income ratio was within guidelines for loans manually underwritten, Wells

12  Fargo distorts the record.  (ECF No. 204-22, Ex. A at 10.)  And in the case of Mr. Brown, they even

13  quote the wrong guidelines as they pertain to the need for "Mr. Brown to document the income

14  derived from his three rental properties."  (*Id*. at 11.)

15        Second, Wells Fargo repeatedly invokes the absence of completed applications for Plaintiff

16  Braxton and Plaintiff Dr. Gia Gray, as a factual basis to presume the absence of discrimination in

17  their application process.  (ECF No. 243 at 10-11.)  This is a red herring and does nothing to credibly

18  advance Wells Fargo's arguments.  According to Mr. Jackson, the very reason why Mr. Braxton and

19  Dr. Gray did not fully complete applications is because of the existence of discriminatory behavior

20  by Wells Fargo's loan officers.  (ECF No. 204-22 at 10-13.)  In the case of Mr. Braxton, Wells Fargo

21  failed to provide Mr. Braxton with the critical distinctions between a refinance and loan

22  modification, instead Wells Fargo artfully steered him away from a streamlined No Credit/No

23  Income FHA refinance.  (*Id*. at 10-11.)

24        Third, Wells Fargo argues that Mr. Jackson also ignored key evidence about Plaintiff Terah

25  Kuykendall-Montoya.  (ECF No. 243 at 11-12.)  Not true.  According to Mr. Jackson, Wells Fargo

26  utilized the wrong guidelines in credit-profiling Ms. Kuykendall-Montoya given her bankruptcy

27  filing due to "medical bills," which are extenuating circumstances.  (ECF No. 204-22, Ex. A at 15.)

28  Reasoning that the bankruptcy should not have been grounds for a denial, Mr. Jackson points out

the flawed automated underwriting system and Wells Fargo's refusal to submit the loan to a lending manager for consideration, particularly given the fact that Mr. Montoya was also a borrower on the current Wells Fargo loan.  (*Id.*)

Finally, Wells Fargo makes a half-hearted effort to challenge Mr. Jackson's conclusions regarding Plaintiff Elretha Perkins by arguing that Mr. Jackson "ignored the fact that Ms. Perkins HELOC matured in August 2021 with $47,473.87 due and owing that she did not pay."  (ECF No. 243 at 12.)  To be clear, this is the extent of the evidence Wells Fargo claims Mr. Jackson ignored in his analysis.  (*See id.*)  However, Mr. Jackson went to great lengths to describe and evaluate Ms. Perkins HELOC and her history of delinquency.  (ECF No. 204-22, Ex. A at 17.)  But what Mr. Jackson opines—and Wells Fargo appears to dispute—is that Ms. Perkins' payment history in the most recent 12 months of her application actually met Wells Fargo's guidelines.  (*Id.*)  Mr. Jackson substantiates this opinion with the factual record which reflects that Wells Fargo ran Fannie Mae's Desktop Underwriting, submission number 9 on December 14, 2021, in which Ms. Perkins was given a recommendation of Approved/Eligible with a loan amount of $332,700.00 with an LTV/CLTV of 54% and a final debt to income ratio of 43.32%.  (*Id.*)  Even more, the Wells Fargo Feedback Certificate, graded Ms. Perkins a Risk Class A2.  (*Id.* at 18.)  Contrary to Wells Fargo's claim, it is Mr. Jackson who took far more into account than Dr. Courchane.  The record clearly bears that out.

## VI.   CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court deny Wells Fargo's re-filed Motion to Exclude the opinions of Dante Jackson.  (ECF No. 243.)


DATED:  June 17, 2024                    ELLIS GEORGE LLP
                                         Dennis S. Ellis


                                         By:   */s/ Dennis S. Ellis*
                                               Dennis S. Ellis
                                         Interim Lead Counsel

PLAINTIFFS' OPPOSITION TO DEFENDANT WELLS FARGO BANK, N.A.'S REFILED MOTION TO EXCLUDE TESTIMONY OF DANTE JACKSON