1  ELLIS GEORGE LLP
   Dennis S. Ellis (State Bar No. 178196)
2     dellis@ellisgeorge.com
   2121 Avenue of the Stars, 30th Floor
3  Los Angeles, California 90067
   Telephone: (310) 274-7100
4  Facsimile: (310) 275-5697

5  *Interim Lead Class Counsel*

6
7
8              UNITED STATES DISTRICT COURT
9              NORTHERN DISTRICT OF CALIFORNIA

10 | Case No. 3:22-cv-00990-JD

11 *In re Wells Fargo Mortgage Discrimination Litigation.* | Honorable James Donato

12 | **PLAINTIFFS' MOTION TO EXCLUDE THE TESTIMONY OF DR. KRISTEN P. LENNOX, PH.D.**
13

14 | Date:  August 29, 2024
   | Time: 10:00 a.m.
15 | Courtroom:  11

16 | [Filed Concurrently with Declaration of Dennis S. Ellis; [Proposed] Order]
17

18
19
20
21
22
23
24
25
26
27
28

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 29, 2024, at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 11, 19th Floor, before the Honorable James Donato, Plaintiffs will, and hereby do, move this Court for an Order excluding the testimony of Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") expert Dr. Kristen P. Lennox, Ph.D.

This motion is made pursuant to Federal Rule of Civil Procedure 26, Federal Rules of Evidence 403 and 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Plaintiffs request that the Court exclude Dr. Lennox's opinions because she is an unreliable, belatedly-identified affirmative and cumulative expert. (Declaration of Dennis S. Ellis, Ex. 5.) *See In re Hanford Nuclear Rsrv. Litig.*, 534 F.3d 986, 1016 (9th Cir. 2008) (recognizing the district court's broad discretion to exclude expert testimony pursuant to Rule 403); and *see Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1105-06 (9th Cir. 2001) (affirming exclusion of an expert who was improperly disclosed as a rebuttal expert).

This motion is based on the Memorandum of Points and Authorities, the Declaration of Dennis S. Ellis filed concurrently therewith, all the pleadings and papers on file herein, oral argument if heard, and such other matters as the Court deems just and proper.

DATED: July 25, 2024         ELLIS GEORGE LLP
                             Dennis S. Ellis

                             By:   */s/ Dennis S. Ellis*
                                    Dennis S. Ellis
                                    Interim Lead Class Counsel

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

I.   STATEMENT OF ISSUES TO BE DECIDED ................................................................. 1

II.   PRELIMINARY STATEMENT ........................................................................................ 1

III.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND .................................. 3

IV.   LEGAL STANDARD ........................................................................................................ 4

V.   ARGUMENT ..................................................................................................................... 5

    A.   Dr. Lennox's Testimony Should Be Excluded As Cumulative Under Rule 403. ................................................................................................................. 5

    B.   Dr. Lennox's Testimony Must Be Excluded Because She Is An Affirmative Expert Improperly Cloaked As A Rebuttal Expert. ................................................. 7

    C.   Dr. Lennox's Impermissible Affirmative Testimony (Cloaked As Rebuttal Testimony) Concerns Topics Outside Her Area of Expertise. ................................ 10

VI.   CONCLUSION ................................................................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*,
    738 F.3d 960 (9th Cir. 2013) ..........................................................................................10

*Cantu v. United States*,
    2015 WL 1274388 (C.D. Cal. April 6, 2015) ....................................................................5

*City of Pomona v. SQM N. Am. Corp.*,
    750 F.3d 1036 (9th Cir. 2011) ........................................................................................10

*Claar v. Burlington N. R.R. Co.*,
    29 F.3d 499 (9th Cir. 1994) .........................................................................................2, 11

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993) ................................................................................................ *passim*

*Daubert v. Merrell Dow Pharms., Inc.*,
    43 F.3d 1311 (9th Cir. 1996) ............................................................................................5

*DePaepe v. Gen. Motors Corp.*,
    141 F.3d 715 (7th Cir. 1998) ..........................................................................................10

*Domingo ex rel. Domingo v. T.K.*,
    289 F.3d 600 (9th Cir. 2002) ..........................................................................................11

*Elosu v. Middlefork Ranch Inc.*,
    26 F.4th 1017 (9th Cir. 2022) .........................................................................................10

*Elsayed Mukhtar v. Cal. State Univ., Hayward*,
    299 F.3d 1053 (9th Cir. 2002) ..........................................................................................4

*Gen. Elec. v. Joiner*,
    522 U.S. 136 (1997) ...................................................................................................5, 11

*Goldstein v. Centocor*,
    2007 WL 61913 (S.D. Fla. 2007) .....................................................................................6

*Guidroz-Brault v. Mo. Pac. R.R. Co.*,
    254 F.3d 825 (9th Cir. 2001) ..........................................................................................10

*Hamling v. U.S.*,
    418 U.S. 87 (1974) ...........................................................................................................6

*In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*,
    524 F. Supp. 2d 1166 (N.D. Cal. 2007) ............................................................................5

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*In re Hanford Nuclear Rsrv. Litig.*,
    534 F.3d 986 (9th Cir. 2008) ............................................................................................. 2, 5

*In re Toy Asbestos*,
    2021 WL 1056552 (N.D. Cal. Mar. 19, 2021) ..................................................................... 2, 4

*Int'l Bus. Mach. Corp. v. Fasco Indus., Inc.*,
    1995 WL 115421 (N.D.Cal. Mar. 15, 1995) ........................................................................ 8, 9

*Price v. Fox Ent. Grp., Inc.*,
    499 F. Supp. 2d 382 (S.D.N.Y. 2007) ..................................................................................... 6

*Primiano v. Cook*,
    598 F.3d 558 (9th Cir. 2010) ................................................................................................... 5

*R&O Const. Co. v. Rox Pro Int'l Grp., LTD*,
    2011 WL 2923703 (D. Nev. July 18, 2011) ........................................................................... 4

*Rambus Inc. v. Hynix Semiconductor Inc.*,
    254 F.R.D. 597 (N.D. Cal. 2008) ............................................................................................ 9

*Sunstar, Inc. v. Alberto-Culver Co., Inc.*,
    2004 WL 1899927 (N.D. Ill. Aug. 23, 2004) ...................................................................... 6, 7

*U.S. v. Geanakos*,
    2017 WL 4883294 (E.D. Cal. Oct. 30, 2017) ....................................................................... 10

*U.S. v. Larkin*,
    779 Fed. App'x 435 (9th Cir. 2019) ..................................................................................... 2, 6

*United States v. Miguel*,
    87 Fed. App'x 67 (9th Cir. Jan. 30, 2004) .............................................................................. 5

*Vu v. McNeil-PPC, Inc.*,
    2010 WL 2179882 (C.D. Cal. May 7, 2010) ....................................................................... 7, 8

*Wong v. Regents of Univ. of California*,
    410 F.3d 1052 (9th Cir. 2005) ................................................................................................. 9

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
    259 F.3d 1101 (9th Cir. 2001) ................................................................................................. 5

**RULES**

Fed. R. Civ. P. 26 ................................................................................................................. 2, 4, 8

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

Fed. R. Civ. P. 26(a)(2)(D)(ii) ................................................................................................. 2, 4, 8

Fed. R. Civ. P. 26(a)(D)(ii) ............................................................................................................. 7

Fed. R. Evid. 403 .................................................................................................................. 2, 4, 5, 6

Fed. R. Evid. 702 ........................................................................................................................ 2, 11

Fed. R. Evid. 702(a) ....................................................................................................................... 10

Fed. R. Evid. 703 ........................................................................................................................... 10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. STATEMENT OF ISSUES TO BE DECIDED

Whether the rebuttal expert opinions offered by Dr. Kristen P. Lennox, Ph.D. on behalf of Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") should be excluded where the expert is, in reality, a belatedly-disclosed affirmative expert on subjects already covered by another of Wells Fargo's experts, Dr. Marsha Courchane, Ph.D., and where her opinions are speculative and outside the scope of her expertise.

## II. PRELIMINARY STATEMENT

The report and expected testimony of Dr. Kristen P. Lennox are improper and should be excluded in their entirety. Wells Fargo characterizes Dr. Lennox as a rebuttal expert designated to respond to the opinions of Plaintiffs' expert Dr. Leana Golubchik "as they pertain to the statistical modeling and data science aspects of Wells Fargo's ECS Model." (Declaration of Dennis S. Ellis ("Ellis Decl."), Ex. 5.) Dr. Lennox herself also claims that she "was retained to review the report of Professor Leana Golubchik." (*Id.*, p. 1.) However, that is not accurate.

*First*, the entire scope of Dr. Lennox's expected testimony is improperly cumulative and will only serve to confuse a jury and prejudice Plaintiffs. Wells Fargo's affirmative expert witness, Dr. Courchane, was designated to opine—and, prior to Dr. Lennox's disclosure, had already opined—on the very topic that Dr. Lennox purports to opine on as well. (*Id.*, Ex. 3, ¶¶ 57, 107.) Indeed, in her affirmative report, Dr. Courchane opines on Wells Fargo's Enhanced Credit Scoring (ECS) model and artificial intelligence ("AI"), stating that Wells Fargo's "Common, Opportunities, Results, and Experiences" or "CORE" is "not an 'algorithmic underwriting platform,' [and] is not based on 'machine learning….'" (Ellis Decl., Ex. 3, ¶ 57.) Dr. Courchane's discussion of "machine learning" also includes an opinion on the presence (or, in her opinion, lack thereof) of machine learning and artificial intelligence (*id*. at ¶¶ 57, 106). In other words, rather than asking Dr. Lennox to prepare an affirmative report on AI and machine learning—which Wells Fargo has known from the outset is central to this case—Wells Fargo directed Dr. Courchane to render various opinions regarding AI and machine learning, only to then designate Dr. Lennox as a rebuttal witness to also offer opinions on this topic. Accordingly, Dr. Lennox's opinions—which Wells Fargo only elicited

when it realized its defense needed more manpower on these issues—are improperly cumulative and should be excluded. *See U.S. v. Larkin*, 779 Fed. App'x 435, 438 (9th Cir. 2019) (affirming the exclusion of expert witness where another expert witness testified to the same topic finding it irrelevant and cumulative).

*Second*, Dr. Lennox is thus obviously a belatedly-disclosed affirmative expert. *See In re Toy Asbestos*, 2021 WL 1056552, at *3 (N.D. Cal. Mar. 19, 2021) (finding the expert report not a proper rebuttal where it did not refute unforeseen theories). She was retained by Wells Fargo **before** Dr. Golubchik served her affirmative report, and discussions about retaining Dr. Lennox took place even earlier than that—Dr. Lennox was speaking to Wells Fargo attorneys starting in 2022, **more than a year** prior to affirmative expert disclosures. (Ellis Decl., Ex. 7 at 13:18-20, 76:4-16.) Wells Fargo chose not to affirmatively disclose Dr. Lennox—choosing instead to have Dr. Courchane deal with these issues—and cannot reverse this decision by attempting to characterize Dr. Lennox's testimony as "rebuttal."

*Third*, Dr. Lennox's opinions must be excluded as unreliable pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-95 (1993) ("*Daubert I*"). She offers speculative and conclusory opinions that fall outside the scope of expert testimony, her expertise, and her purported methodology.

Accordingly, this Court should exercise its broad discretion to exclude Dr. Lennox's testimony pursuant to Federal Rule of Civil Procedure 26 and Federal Rules of Evidence 403 and 702. Her testimony warrants exclusion because she is an improperly disclosed rebuttal expert, offering opinions beyond that permitted by Rule 26(a)(2)(D)(ii) (stating that rebuttal expert witness testimony is "intended solely to contradict or rebut evidence on the same subject matter identified by another party" in its expert disclosures). Further, her testimony warrants exclusion pursuant to Rule 403 because she is a cumulative expert, offering an opinion on the same subject covered by Wells Fargo's affirmative expert. *See In re Hanford Nuclear Rsrv. Litig.*, 534 F.3d 986, 1016 (9th Cir. 2008) (recognizing the district court's broad discretion to exclude expert testimony pursuant to Rule 403). Her testimony separately warrants exclusion pursuant to Rule 702 because she offers speculative, conclusory opinions on subject matter outside the scope of her expertise. *See Claar v.*

*Burlington N. R.R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994) (requiring more than "subjective beliefs or unsupported speculation" to admit expert testimony).

### III. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Dr. Lennox is a Managing Scientist in Data Sciences at Exponent, Inc., with a Ph.D. in Statistics and expertise in artificial intelligence. (Ellis Decl., Ex. 5., p. iii.) Wells Fargo retained Dr. Lennox through Exponent, Inc., an engineering and scientific consulting firm, which assisted with her research and editing of her report. (*Id*.., Ex. 7 at 77:2-78:9.) Wells Fargo first contacted Dr. Lennox about this case in 2022, but Dr. Lennox was not retained until February 2024—***before the affirmative expert disclosure deadline***. (*Id*. at 13:18-20; 72:16-73:25; 76:11-16.) Hence, Wells Fargo was aware of its need for Dr. Lennox's expertise over one year prior to her formal retention and disclosure, yet Wells Fargo disclosed only one affirmative expert, Dr. Marsha Courchane, Ph.D. (*Id*., Ex. 3.)

Dr. Courchane, Wells Fargo's all-purpose expert, opined repeatedly in her affirmative report on the issue of AI. (Ellis Decl., Ex. 3, ¶¶ 57, 107.) Wells Fargo, at the time of Dr. Courchane's affirmative report, knew the issues of AI and machine learning would be critical in this case, but it did not designate anyone besides Dr. Courchane to address the issue. Indeed, Plaintiffs' Consolidated Class Action Complaint contained allegations regarding artificial intelligence (ECF No. 114, ¶¶ 18, 104, 105, 116-118, 166), witnesses were examined on the subject at deposition (Ellis Decl., Ex. 2 at 12:4-13; 14:10-15:1; 62:20-25; 126:25-127:12; 152:12-25), and Plaintiffs provided interrogatory responses in support of their AI and machine learning allegations (*Id*., Ex. 1, No. 7.) The centrality of AI and machine learning to this case was not a surprise to Wells Fargo when it came time for *affirmative expert designations*.

Dr. Courchane opined that CORE is not an "algorithmic underwriting platform" and is not based on "machine learning." (*Id*., Ex. 3, ¶ 57). According to Dr. Courchane, "CORE is best understood as a workflow automation platform that facilitates the underwriting and processing of an application." (*Id*.) Dr. Courchane further opined that Wells Fargo Model 11960—the very model at the center of Plaintiffs' case and motion for class certification—"follows a traditional 'logistic regression' approach and is not a 'machine learning' algorithm." (*Id*., ¶ 106). In response to Dr.

Courchane's affirmative report, Plaintiffs' affirmative expert witness on these subjects, Dr. Leana Golubchik, addressed Dr. Courchane's AI and machine learning opinions in her rebuttal report. (*Id.* Ex. 6, p. 1.) ("I have been asked by Plaintiffs' counsel to review, analyze, and respond to the report of Defendants' expert, Dr. Marsha Courchane, to the extent it relates to Wells Fargo's HLECS V1 CON proprietary credit scoring model (Model 11960) specifically and/or artificial intelligence and machine learning in general.").

However, when rebuttal reports were exchanged, Wells Fargo included a report from a new expert—Dr. Lennox—who had not been previously disclosed. Dr. Lennox was tasked with opining on the very AI and machine learning issues that Plaintiffs' expert Dr. Golubchik and Wells Fargo's expert Dr. Courchane had already opined on. (Ellis Decl., Ex. 5, p. 1.) Because Wells Fargo did not affirmatively disclose Dr. Lennox and instead saved her for rebuttal, Dr. Golubchik was not able to review her report and prepare her own written rebuttal to this new additional expert on the same topic.

## IV. LEGAL STANDARD

Determining expert admissibility "is vital to ensure accurate and unbiased decision-making by the trier of fact," and is "particularly important considering the aura of authority experts often exude, which can lead juries to give more weight to their testimony." *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002). Federal Rule of Civil Procedure 26 states that rebuttal disclosures of expert testimony are "intended solely to contradict or rebut evidence on the same subject matter identified by another party" in its expert disclosures. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii). "If the purpose of expert testimony is to contradict an expected and anticipated portion of the other party's case-in-chief, then the witness is not a rebuttal witness or anything analogous to one. Rather, rebuttal expert testimony is limited to new unforeseen facts brought out in the other side's case." *In re Toy Asbestos*, 2021 WL 1056552, at *3 (finding the purported rebuttal expert was not a proper rebuttal because he "does not refute any unforeseen theories.") (quoting *R&O Const. Co. v. Rox Pro Int'l Grp., LTD*, 2011 WL 2923703, at *2 (D. Nev. July 18, 2011 (collecting cases) (citations omitted)).

Federal Rule of Evidence 403 provides that a court "may exclude relevant evidence if its

probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." District courts enjoy broad discretion to exclude expert testimony pursuant to Rule 403. *See In re Hanford Nuclear Rsrv. Litig.*, 534 F.3d at 1016 (recognizing the district court's broad discretion to exclude evidence under Fed. R. Evid. 403, particularly "with respect to expert witnesses"); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1105-06 (9th Cir. 2001) (affirming exclusion of an expert who was improperly disclosed as a rebuttal expert). A court unquestionably acts within its discretion by excluding testimony of a cumulative expert who provides "little incremental value." *U.S. v. Miguel*, 87 Fed. App'x 67, 68 (9th Cir. Jan. 30, 2004). And, in a jury case such as this, "unnecessarily similar and cumulative expert testimony may create the risk that a jury will resolve differences in expert opinion by 'counting heads' instead of by giving fair consideration to the quality and credibility of each expert's opinions." *Cantu v. U.S.*, 2015 WL 1274388, at *8 (C.D. Cal. April 6, 2015) (internal quotation marks omitted).

With respect to the reliability of expert opinions, although there is no "definitive checklist or test" to conduct that evaluation, courts should—and often—consider: (1) whether the method has been tested; (2) whether the method "has been subjected to peer review and publication"; (3) "the known or potential rate of error"; (4) whether there are "standards controlling the technique's operation"; and (5) the general acceptance of the method within the relevant community. *Daubert I*, 509 U.S. at 592-95. Consequently, the Court functions as a "gatekeeper." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010). Courts therefore may exclude an expert's "opinion evidence . . . [that] is connected to existing data only by the *ipse dixit* of the expert," *Gen. Elec. v. Joiner,* 522 U.S. 136, 146 (1997), or that "cherry-pick[s]" the data on which it is premised. *In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1176 (N.D. Cal. 2007). The burden to establish the admissibility of expert testimony falls on the proponent of the expert. *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1318, n.10 (9th Cir. 1996) ("*Daubert II*").

V.   **ARGUMENT**

   A.   **Dr. Lennox's Testimony Should Be Excluded As Cumulative Under Rule 403.**

Federal Rule of Evidence 403 grants district courts broad discretion to exclude evidence,

including expert testimony, where the "probative value is substantially outweighed by a danger of… unfair prejudice, confusing the issues, misleading the jury, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  Dr. Lennox's testimony presents needlessly cumulative testimony of a so-called "rebuttal" expert whose area of expected testimony was known to Wells Fargo so far in advance of expert disclosures that it (1) started talking to Dr. Lennox over one year prior to the affirmative expert disclosure and (2) directed its only affirmative expert, Dr. Courchane, to opine on these subjects instead of Dr. Lennox. *See Daubert I*, 509 U.S. at 595 ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it.  Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403…exercises more control over experts than over lay witnesses").  Dr. Lennox's testimony should be excluded as prejudicial, cumulative, confusing, and misleading.

It is well established that cumulative experts may be excluded under Rule 403.  *See Hamling v. U.S.,* 418 U.S. 87, 127 (1974) (finding trial court has considerable latitude to reject even relevant evidence if considered by be cumulative); *Larkin*, 779 Fed. App'x at 438 (affirming the exclusion of expert witness where another expert witness testified to the same topic finding it irrelevant and cumulative); *Price v. Fox Ent. Grp., Inc.*, 499 F. Supp. 2d 382, 390 (S.D.N.Y. 2007) (excluding expert testimony where there was "substantial overlap" between reports finding "absolutely no need to testify."); *Goldstein v. Centocor*, 2007 WL 61913, at *2 (S.D. Fla. 2007) (excluding testimony where credentials were virtually identical to other testifying expert); *Sunstar, Inc. v. Alberto-Culver Co., Inc*., 2004 WL 1899927, at *25 (N.D. Ill. Aug. 23, 2004) ("Multiple expert witnesses expressing the same opinions on a subject is a waste of time and needlessly cumulative.").  As such, an expert who purports to buttress the opinions of another expert of the same party is routinely precluded from testifying.

For example, in *Sunstar,* the defendant offered two experts on the same subject.  The court noted that a party is generally prohibited "from offering multiple experts to express the same opinions on a subject." 2004 WL 1899927, at *25.  The court excluded one of the experts finding that the defendant had not "demonstrated good cause for deviating from this general rule."  *Id*.  In support of its decision, the court noted that when there are two experts testifying to the same subject,

"[i]t also raises the unfair possibility that jurors will resolve competing expert testimony by 'counting heads' rather than evaluating the quality and credibility of the testimony." *Id.*

Dr. Lennox was purportedly retained by Wells Fargo to "review the report of Professor Leana Golubchik as well as documentation about the Wells Fargo "Enhanced Credit Score" (ECS) model. (Ellis Decl., Ex. 5, p. 1.) But, Dr. Courchane had already opined in her affirmative report about the characterization of the ECS model. (Ellis Decl., Ex. 3, ¶¶ 57, 107.) Dr. Courchane even cites to Wells Fargo's documentation about the ECS model to support her opinions. (*Id.* at ¶ 57, n. 47, and ¶ 107, n. 94.) However, rather than rebutting Dr. Golubchik's well-informed, qualified expertise on the subject in Dr. Courchane's rebuttal report, Wells Fargo disclosed Dr. Lennox instead. (*Id.*, Ex. 5.) Dr. Courchane discusses Wells Fargo's monitoring of its ECS model (*id.*, Ex. 3 ¶ 109), the ECS model's decline (*id.* ¶¶ 43, 100), associated lending risk and the variables used (*id.* ¶¶ 54-56, 67, 79), disparate impact (*id.*), and whether the model is AI. (*id.*, ¶106). Dr. Lennox opines on these exact topics. In each instance, she does nothing but repackage Dr. Courchane's conclusions with little variance. It is evident that her disclosure as a rebuttal expert is needlessly and prejudicially cumulative.

Wells Fargo was well aware of the important part AI would play in this action over one year prior to the affirmative expert witness disclosure, and directed Dr. Courchane to opine on the topic. (*See* ECF No. 114, ¶¶ 18, 104, 105, 116-118, 166; and *see* Ellis Decl., Exs. C and G.) Wells Fargo belatedly disclosed its additional would-be affirmative expert on AI, Dr. Lennox, under the guise of a rebuttal expert. While Wells Fargo might now believe that it needs additional support to rebut Dr. Golubchik's AI and machine learning opinions (given Dr Courchane's spurious qualifications in this area), Wells Fargo made its expert selection when it affirmatively disclosed Dr. Courchane as its sole expert on these subjects. Wells Fargo cannot now reverse this decision by adding a cumulative (and prejudicial) expert, Dr. Lennox, to pile on and do more of the same work that Dr. Courchane was purportedly retained to do.

**B.    <u>Dr. Lennox's Testimony Must Be Excluded Because She Is An Affirmative Expert Improperly Cloaked As A Rebuttal Expert.</u>**

Federal Rule of Civil Procedure 26(a)(D)(ii) permits the admission of rebuttal expert

testimony that is "intended solely to contradict or rebut evidence on the same subject matter identified" by one of the other side's affirmative expert witnesses. Courts interpret the phrase "same subject matter" narrowly, because a broad reading that "encompass[es] any possible topic that relates to the subject matter at issue [ ] will blur the distinction between 'affirmative expert' and 'rebuttal expert.'" *Vu v. McNeil-PPC, Inc.*, 2010 WL 2179882, at *3 (C.D. Cal. May 7, 2010) (excluding rebuttal expert opinions that go beyond the affirmative expert report it purports to rebut). "A district court has the authority to exclude the testimony of expert witnesses for a breach of a scheduling order or Rule 26." *Int'l Bus. Mach. Corp. v. Fasco Indus., Inc.*, 1995 WL 115421, at *3 (N.D.Cal. Mar. 15, 1995) (finding that two of [the party's] rebuttal experts should have been designated on the initial disclosure date because they plan to opine on subjects that [the other party's] expert will not address"). "A party who forgoes designating experts on the initial disclosure date will thus find itself in a purely reactive mode, greatly restricted in its ability to offer expert testimony." *Id*.

For example, in *Vu,* the defendant offered a rebuttal expert to rebut the testimony of the plaintiff's affirmative expert witness. 2010 WL 2179882, at *2. The court found that the defendant's rebuttal experts' reports "include[d] topics that fall outside [plaintiff's affirmative expert's] expected testimony," thus rendering their characterization as rebuttal experts "disingenuous." *Id*. (citing *Int'l Bus. Machines Corp.* 1995 WL 115421, at *3 ("rebuttal experts cannot put forth their own theories; they must restrict their testimony to attacking the theories offered by the adversary's experts") (internal quotations omitted)). The court held that, "as a result of [defendant's] belated disclosure, [p]laintiffs are prevented from rebutting any of [defendant's] expert opinions dealing with matters outside the scope of [plaintiff's expert's] report because the deadline for disclosing rebuttal experts has passed. This is a hornbook example of sandbagging, a litigation tactic this Court will not tolerate." *Id*., at *3.

Here, Plaintiffs offered Dr. Golubchik as an affirmative expert. She offers a short and narrow opinion about Wells Fargo's ECS model, *i.e.*, that it can be viewed as a type of AI and such models can be susceptible to algorithmic bias and deterioration absent proper controls. (Ellis Decl., Ex. 4, p. 9.) Had Dr. Lennox been properly introduced as a rebuttal expert, her testimony would

have been limited to an opinion which explains, counteracts, or disproves Dr. Golubchik's opinion. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii). However, Dr. Lennox's report goes far beyond that—it discusses Wells Fargo's controls, data files, and impacts of the model. These opinions must be excluded because they are belatedly-disclosed affirmative expert opinions (and are also, as already discussed, cumulative of Dr. Courchane's opinions). (*Id.*; and *see id.*, Ex. 3, ¶¶ 57, 106.)

If Wells Fargo sought to introduce testimony about its controls, it had ample time to properly do so. The parties have been engaged in this litigation for nearly two years. This Court gave both parties until February 29, 2024, to disclose experts. (ECF No. 166.) Even so, Wells Fargo sought repeated extensions that were all denied by the Court. (ECF Nos. 185, 189. 193.) Dr. Lennox was not disclosed as an affirmative expert, despite the fact she was identified and ultimately retained before the affirmative expert witness disclosure deadline and despite the fact that the subject matter of her testimony—AI and machine learning—has been a significant part of this case since its inception. (Ellis Decl., Ex. 7 at 13:18-20; 72:16-73:25; 76:11-16.) Wells Fargo cannot now attempt to introduce affirmative expert testimony months after the Court's deadline. A party is prejudiced by such acts because it leaves the faultless party without appropriate time to depose witnesses, designate rebuttal expert witnesses, or otherwise prepare for trial. *See Int'l Bus. Mach. Corp.*, 1995 WL 115421, at *3; and *see Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1062 (9th Cir. 2005) (upholding the exclusion of supplemental expert witnesses finding that the need for the expert witness could have been reasonably anticipated). Here, Plaintiffs went through the time and expense of directing their expert, Dr. Golubchik, to prepare a rebuttal to Dr. Courchane's AI and machine learning opinions, only to be sandbagged by a new "rebuttal" expert on the same subjects whose report Dr. Golubchik was not able to respond to.

Accordingly, this Court should exclude Dr. Lennox's testimony as belatedly disclosed, cumulative, and unreliable. However, should this Court only admit a portion of her opinion (limited to proper rebuttal testimony), Dr. Lennox agrees with Dr. Golubchik's findings. Dr. Lennox confirms that the ECS model can be viewed as a supervised learning model and such models can have problems without proper controls. (Ellis Decl., Ex. 5., pp. 5-10.)

C. **Dr. Lennox's Impermissible Affirmative Testimony (Cloaked As Rebuttal Testimony) Concerns Topics Outside Her Area of Expertise.**

Plaintiffs do not dispute that Dr. Lennox—had she been timely disclosed, and were her opinions not cumulative—could be qualified to provide expert testimony on certain subjects. She holds a Ph.D. in Statistics from Texas A&M University and has documented experience in applying statistics and machine learning models. However, Dr. Lennox attempts to introduce as expert opinions a number of conclusory statements that are far from appropriate expert testimony and, moreover, are well outside the scope of her expertise and purported methodology. *Rambus Inc. v. Hynix Semiconductor Inc.*, 254 F.R.D. 597, 605 (N.D. Cal. 2008) (excluding an expert whose methodology was flawed where it was clear from his report "that he did no analysis"). An expert's opinion must rest on "facts or data in the case that the expert has been made aware of or personally observed," not merely assumptions and speculation. Fed. R. Evid. 703; *see Guidroz-Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825, 830–31 (9th Cir. 2001) (affirming the exclusion of testimony where expert opinion "was not sufficiently founded on facts"); *DePaepe v. Gen. Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998) ("[T]he whole point of *Daubert* is that experts can't 'speculate.'")

Some examples of Dr. Lennox's conclusory statements include: (1) "While there were differences between classes for these variables, there was no indication in the report that these were inappropriate variables to use for lending risk assessment"; (2) "This finding is consistent with published research on disparate impact in credit scoring"; and (3) "Dr. Golubchik's opinion [on differences in assignment to credit risk classes] neglects the fact that differences in observed scores between different classes may reflect true differences in valid explanatory variables between groups." (Ellis Decl., Ex. 5, p. 9.) Assuming, *arguendo*, that Wells Fargo had presented Dr. Lennox as a proper affirmative expert, she still could not offer these opinions because they are speculative and fall outside her area of expertise. *See* Fed. R. Evid. 702(a) (an expert may offer an opinion based on "the expert's scientific, technical, or other specialized knowledge…").

To determine reliability, a "district court 'must assess the expert's reasoning or methodology, using as appropriate criteria such as testability, publication in peer-reviewed literature, known or potential error rate, and general acceptance.'" *Elosu v. Middlefork Ranch Inc.*,

26 F.4th 1017, 1024 (9th Cir. 2022) (quoting *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014)).  The test is, ultimately, whether an expert's testimony is helpful to the jury. *Id.* (quoting *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) ("[T]he judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable.")).  Scientific validity requires that the expert's conclusions rest on principles and methods that display the "hallmarks of scientific rigor: peer-reviewed research, studies, or experiments." *U.S. v. Geanakos*, 2017 WL 4883294, at *3 (E.D. Cal. Oct. 30, 2017) (affirming the exclusion of expert testimony because "[t]he court's gatekeeping function requires more than simply taking the expert's word for it.") (cleaned up); *see also Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 607 (9th Cir. 2002) (affirming the exclusion of expert testimony because there was nothing but the expert's "*ispe dixit*" connecting the existing data to the opinion).  At a minimum, an expert must explain how she reached her conclusions, *Claar,* 29 F.3d at 502 (requiring more than "subjective beliefs or unsupported speculation" to admit expert testimony), which must be supported by the sources she relied on.  *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 144-47 (1997) (affirming the exclusion of expert testimony where "there is simply too great an analytical gap between the data and the opinion proffered").

In *Domingo*, plaintiff disclosed an expert opining "based on his professional experience and observations, and on several studies of the topic."  289 F.3d at 604.  The court hired a technical advisor to opine on the subject who concluded that plaintiff's expert's opinion was "not scientifically derived nor is it based on objectively verifiable and scientifically valid principles and methodology."  *Id.*  The court excluded the expert's theory finding that "there was no evidence of widespread acceptance of [the expert's] theory," and even so, his "four propositions do not lead to his conclusion." *Id.* at 606-07.  "The reasoning between steps in a theory must be based on objective, verifiable evidence and scientific methodology of the kind traditionally used by experts in the field." *Id.* (citation omitted).

To Dr. Lennox's credit, she admits that she is not an expert in assessing credit risk, racial discrimination, FICO scores, automated underwriting systems, mortgage lending, disparate impact, credit scoring, or banking industry standards.  (Ellis Decl., Ex. 7 at 60: 1-62:2; 96:19-97:22.)  Yet,

she proceeds to offer several conclusory statements about many of these topics, as demonstrated above. (*Id.*, Ex. 5, pp. 9-10.) Her "opinions" on these topics are not grounded in qualified expertise and warrant exclusion under Rule 702 and *Daubert*, just as in *Domingo*. These opinions create a substantial risk of harm and prejudice to Plaintiffs because they could lead a jury to believe that Dr. Lennox conducted a review much more thoroughly, and with far greater expertise, than she actually did.

Aside from her lack of expertise regarding subject matters on which she offers a speculative opinion, Dr. Lennox's methodology (to the extent there was a methodology) is unreliable. *See* Fed. R. Evid. 702 (requiring expert testimony to be "based on sufficient facts or data"). Dr. Lennox's report lists 51 "produced documents," labeled as such because she did not rely on them to reach her opinions. (Ellis Decl., Ex. 5, pp. 1-2; Ex. 7 at 82:24-83:6; 83:22-85:3.) Essential to a review of these data files was a programming file from a computer software known as SAS. (*Id.*, Ex. 7 at 82:16-83:21.) The SAS file contained the foundational programmatic information needed to understand not only any controls Wells Fargo had in place to monitor its ECS model's efficacy, but to understand the corresponding Excel data sheets—access to each are required for a meaningful review of the files. (*Id.*, at 82:16-85:3; 107:12-22; 110:22-111:5.)

At her deposition, Dr Lennox incredibly stated that she could not even open the files and software because she did not know how. (Ellis Decl., Ex. 7 at 82:24-83:6.) In fact, she went on to concede she did not know what was in the files, and admittedly could only understand a portion of the produced files having skipped the SAS file. (*Id.* at 84:8-85:3.) Dr. Lennox also confirmed that Wells Fargo failed to provide her with an index for the files, leaving her with no way to understand them. (*Id.*) Rather than contact Well Fargo, she proceeded by declining to conduct a meaningful review of the data in this case, the ECS model, and the controls in place. (*Id.* at 83:22-84:14.) Meanwhile, Dr. Golubchik, who had similar trouble accessing the files, did not rely on them or any associated material because they were not material to the opinions she formulated. (*Id.*, Ex. 4, pp. 7-8.) Hence, unlike Dr. Golubchik, Dr. Lennox attempts to opine on the Wells Fargo's controls (for which the documents she could not open are key materials) and goes so far as to criticize Dr. Golubchik for failing to do so (despite the fact that the documents were unusable and that Dr.

Golubchik did not need to access them to render her opinions). Such a "method" is not and cannot be grounded in science. Having never conducted an actual review of the data that Dr. Lennox concedes are material to the opinions she purports to render (*Id.*, Ex. 7 at 82:16-85:3; 107:12-22; 110:22-111:5), Dr. Lennox's statements must be excluded.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Dr. Lennox's testimony be excluded in its entirety.

DATED: July 25, 2024

ELLIS GEORGE LLP
Dennis S. Ellis

By:    */s/ Dennis S. Ellis*
Dennis S. Ellis
Interim Lead Class Counsel