# EXHIBIT 28

CONFIDENTIAL

```
 1              UNITED STATES DISTRICT COURT
 2             NORTHERN DISTRICT OF CALIFORNIA
 3
 4     _____
 5     In re Wells Fargo Mortgage     )Case No.
 6     Discrimination Litigation      )3:22-CV-00990-JD
 7                                    )
       _____)
 8
 9
10             -- C O N F I D E N T I A L --
11
12        VIDEOTAPED DEPOSITION OF MICHAEL WALLACE
13               Tuesday, March 26, 2024
14                     Volume I
15
16
17
18
19
20
21     Reported by:
22     KATHLEEN E. BARNEY, CSR No. 5698, RPR
23     Job No. 6608917
24
25     PAGES 1 - 132
```

Page 1

```
 1    Fargo produced data is inaccurate.
 2        Q   Remaining term or principal and interest or
 3    both?
 4        A   Both.  They're related.
 5        Q   And you did the same thing for Mr. Brown,           10:11:05
 6    yes?
 7        A   Yes.
 8        Q   Anybody else?
 9        A   Those are the ones that come to my mind --
10        Q   Okay.                                               10:11:20
11        A   -- that I can recall.
12        Q   Are you offering an expert opinion on which
13    of the putative class members were improperly denied
14    for refinance based on their race?
15        A   No.  I don't believe I was asked to form any        10:11:46
16    opinions on that, and I have not.
17        Q   Okay.  Are you offering an expert opinion on
18    which of the putative class members were improperly
19    denied a home purchase loan based on their race?
20        A   Again, I'm not offering an opinion on               10:12:00
21    discrimination.  I'm offering an opinion on damages.
22        Q   Are you offering an opinion on which of the
23    putative class members were improperly denied a home
24    equity line of credit, or HELOC, based on their
25    race?                                                       10:12:18
```

Page 40

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | A | No. |
| 2 | Q | If we can go back through your report -- |
| 3 | A | Would you mind if we took a quick break? |
| 4 | Q | Oh, sure, of course.  Five or ten minutes? |
| 5 | A | Five is plenty.                                    10:12:39 |
| 6 | | THE VIDEOGRAPHER:  The time is 10:12 and |
| 7 | | we're going off the record. |
| 8 | | (Recess.) |
| 9 | | THE VIDEOGRAPHER:  The time is 10:22 and |
| 10 | | we're back on the record.                        10:22:26 |
| 11 | BY MS. MARTINEZ: | |
| 12 | Q | Okay.  Mr. Wallace, I'd like for you to turn |
| 13 | | to paragraph 5 of your February 29th report, please. |
| 14 | A | Okay. |
| 15 | Q | Paragraph 5 says:                                10:22:35 |
| 16 | | "The economic impact of Wells |
| 17 | | Fargo's improper denial of the loan |
| 18 | | applications can be reasonably |
| 19 | | calculated on a class-wide or |
| 20 | | subclass-wide basis using generally            10:22:47 |
| 21 | | accepted financial principles for |
| 22 | | mortgage loans and common modeling |
| 23 | | techniques for measuring economic |
| 24 | | damages." |
| 25 | | Am I correct in assuming that because you       10:22:57 |

Page 41

```
1    BY MS. MARTINEZ:
2       Q   Right.  Right.  So it's the delta in approval
3    rates, essentially, between white applicants and
4    minority applicants after controlling for key
5    underwriting factors, right?                              01:14:10
6           MR. ELLIS:  Objection.  Mischaracterizes the
7    report.  Calls for speculation.
8           THE WITNESS:  It's a delta which is an output
9    of her regression model.  I don't think it's quite
10   the same as sort of a straight percentage comparison     01:14:20
11   that one might think of as a difference in approval
12   rates.
13   BY MS. MARTINEZ:
14      Q   Do you know how you would apply the delta
15   that has been calculated here by Dr. Kurzendoerfer       01:14:38
16   into your damages analysis?
17          MR. ELLIS:  Objection.  Foundation.
18          THE WITNESS:  Well, I haven't been asked to
19   do that.  I don't -- I'm not an expert at racial
20   discrimination statistics.  I also don't know           01:15:01
21   exactly what the legal standard of proof is for
22   proving discrimination.
23          So I can't tell you that I would apply these
24   percentages to my damage figures.  I think
25   ultimately the court and the trier of fact, by          01:15:19
```

Page 101

| | |
|---|---|
| 1 | examining all the evidence, will decide to what |
| 2 | extent any or all of the 119,100 putative class |
| 3 | members were discriminated against, and then my |
| 4 | figures could then be used for any or each of them. |
| 5 | BY MS. MARTINEZ:                                      01:15:41 |
| 6 |    Q   Sitting here today, you don't know or you |
| 7 | don't have an opinion as to which of those 119,000 |
| 8 | putative class members then would fall within the |
| 9 | parameters that are set forth in Dr. Kurzendoerfer's |
| 10 | report on page 5?                                     01:15:58 |
| 11 |    MR. ELLIS:  Objection.  Foundation. |
| 12 | Mischaracterizes the report.  Legal conclusion. |
| 13 |    THE WITNESS:  So I don't believe -- I'm not |
| 14 | aware, and I can't testify for Dr. Kurzendoerfer, |
| 15 | but I'm not aware that she has identified            01:16:15 |
| 16 | specifically individuals who were discriminated |
| 17 | against.  I believe she has identified the |
| 18 | probability that they would have been approved if |
| 19 | they were white, given the same circumstances for |
| 20 | each individual.  And how that will ultimately be    01:16:33 |
| 21 | applied by the court, I don't know. |
| 22 |    I have seen Ms. Irwin's use of these figures |
| 23 | in trying to combine them and apply them to my |
| 24 | analysis, so I understand that approach |
| 25 | mathematically, but I'm not offering an opinion that  01:16:54 |

Page 102

```
 1
 2
 3            I, the undersigned, a Certified Shorthand
 4     Reporter of the State of California, do hereby
 5     certify:
 6            That the foregoing proceedings were taken
 7     before me at the time and place herein set forth;
 8     that any witnesses in the foregoing proceedings,
 9     prior to testifying, were placed under oath; that a
10     record of the proceedings was made by me using
11     machine shorthand which was thereafter transcribed
12     under my direction; further, that the foregoing is
13     an accurate transcription thereof.
14            I further certify that I am neither
15     financially interested in the action nor a relative
16     or employee of any attorney of any of the parties.
17            IN WITNESS WHEREOF, I have this date
18     subscribed my name.
19
20            Dated: March 29, 2024
21
22
23            _____
24            KATHLEEN E. BARNEY
25            CSR No. 5698
```

Page 130